Stacey Leyton (SBN 203827)
Barbara J. Chisholm (SBN 224656)
Danielle Leonard (SBN 218201)
Connie K. Chan (SBN 284230)
Colin Clemente Jones (SBN 354301)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
(415) 421-7151
sleyton@altber.com
bchisholm@altber.com
dleonard@altber.com
cchan@altber.com
cjones@altber.com

*Attorneys for Plaintiffs*

Norman L. Eisen*
Tianna Mays*
Pooja Chaudhuri (SBN 314847)
Jacob Kovacs-Goodman*
Elizabeth Westphal*
Democracy Defenders Fund
600 Pennsylvania Ave. SE #15180
Washington, DC 20003 (202) 601-8678
(202) 601-8678
norman@democracydefenders.org
tianna@democracydefenders.org
pooja@democracydefenders.org
jacob@democracydefenders.org
elizabeth-contract@democracydefenders

*Attorneys for Plaintiffs*

**Pro Hac Vice application forthcoming*

[Additional counsel and affiliations listed on signature page]

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERVICE EMPLOYEES INTERNATIONAL UNION, AFL-CIO, et al.,<br><br>*Plaintiffs,*<br>v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE, et al.,<br><br>*Defendants.* | Case No. 5:26-cv-12800 -TLT |

**DECLARATION OF STUART HOLMES**

I, Stuart Holmes, declare as follows:

1. I am a United States citizen and resident of the State of Washington. I am over the age of 18. I am familiar with the information in the statements set forth below either through personal knowledge, consultation with Office of the Secretary of State ("OSOS") staff, or from

my review of relevant documents and information. If called as a witness, I could and would testify competently to the matters set forth below.

2. I am the Director of Elections in Washington. I work for the Secretary of State, Steve Hobbs, and support him in his official capacity as the Chief Election Officer for the State of Washington. In my role, I assist him in the execution and enforcement of all state and federal laws relating to elections. I have served as the Director of Elections since November 2021. I've worked in the Elections Division of the OSOS since September 2014, and, prior to that, worked in the Benton County Auditor's Office Election Department between May 2005 and September 2014.

3. The Secretary of State is the state's Chief Election Officer, responsible for executing and enforcing all state and federal laws relating to elections within the state. *See* Wash. Rev. Code § 29A.04.230. The Elections Division is responsible for implementing the Secretary of State's responsibilities with regard to elections. Washington law charges my office with preventing disenfranchisement and ensuring that all eligible voters who want to vote are able to do so. *See* Wash. Rev. Code §§ 29A.04.206, 29A.92.005.

4. In my current role, my duties include, among other things, overseeing the elections systems in the state of Washington. I am responsible for making sure that, on a statewide basis, elections in Washington are conducted fairly, that voters have access to the means of exercising their right to vote, and that Washington's elections are conducted with a high degree of integrity and security. I also lead the Secretary of State's supervision of election administration by counties. Some of my duties include ensuring that the State's and counties' administration of elections comply with state and federal election laws. As part of these duties, I keep abreast of legal requirements and participate in national conferences on election

administration. I also generally keep abreast of other states' election administration practices and developments, particularly as it relates to vote by mail. In my role as election director, I also oversee all aspects of the Secretary of State's role as Chief Election Officer, including working with counties on election administration, creating and implementing standards and trainings governing elections, and interacting with the public to addresses voters' questions and concerns and promote voter confidence.

5. Washington and its subdivisions are collectively responsible for administering state and federal elections in Washington. These responsibilities encompass all manner of election administration, including maintaining and updating voter rolls, issuing ballots to registered voters, tabulating votes, and certifying results in all elections for state and federal office, among numerous other tasks.

6. As part of my responsibilities in administering elections, I am in constant communications with county auditors and election administrators about all aspects of election administration. Based on my work with county election administrators and my own experience, as well as the experience of my staff, I can say that this election cycle has been the most stressful and anxiety-filled cycle I have ever experienced in my more than twenty years working in elections. This extraordinary stress has been due to the relentless interference state and local election officials have experienced from the Trump Administration and the Department of Justice and the continuous and escalating threats of criminal prosecution simply for doing our jobs in accordance with state and federal law. These threats and interference from this Administration have diverted untold attention and resources away from our core duties of administering a fair, accurate, and accessible election, and has created an environment of fear and intimidation among elections administrators.

7. These threats and overreach started soon after President Trump was inaugurated. In March 2025, President Trump issued Executive Order 14,248. Among other things, this order purported to impose new restrictions on registering to vote, set aside longstanding and widespread state laws setting ballot-return deadlines, and dictate which voting machines can be federally certified. Because these requirements conflicted with state election laws and processes, Washington led a successful lawsuit to enjoin implementation of the executive order, requiring diversion of staff time to support that effort. A federal district court enjoined key aspects of that Executive Order as violating constitutional separation of powers. *Washington v. Trump*, No. 2:25-cv-00602-JHC (W.D. Wash. Jan. 9, 2026).

8. The overreach did not stop there. In September 2025, the Department of Justice demanded a copy of Washington's voter registration list, including confidential information for all Washington voters such as their social security numbers, drivers' license numbers, and other confidential information. A true and correct copy of the Department of Justice letter is attached as **Exhibit A**. Secretary Hobbs responded explaining how to request a copy of the publicly available voter registration list and explaining that federal and state law prevented him from disclosing the private confidential information for more than five million Washington voters. But he also invited the Department of Justice to provide additional information about its authority to access the confidential information. A true and correct copy of Secretary Hobbs's September 23, 2026 response is attached as **Exhibit B.**

9. The Department of Justice did not provide any additional authority that would authorize disclosure. Instead, the Department sued Secretary Hobbs, seeking the full state voter registration list. Because the request contravened Washinton law, Washington opposed that lawsuit, again requiring diversion of staff resources to support that effort. A Washington district

court later dismissed DOJ's lawsuit against Secretary Hobbs. *United States v. Hobbs*, No. C25-6078-KKE, 2026 WL 2833713 (W.D. Wash. Sept. 22, 2026). I understand that DOJ has sued 29 states and the District of Columbia to try and get their confidential voter roll lists, and every court to have decided the case has ruled against DOJ.

10. DOJ thereafter continued to send threatening letters directly to Secretary Hobbs, despite the fact that DOJ was in active litigation Secretary of Hobbs, in which he was represented by attorneys in the Washington Attorney General's Office. In July 2026, Assistant Attorney General Harmeet Dhillon sent another letter to Secretary Hobbs, making numerous threats of criminal prosecution. A true and correct copy of this letter is attached as **Exhibit C**. In that letter, Ms. Dhillon threatened that "state election officers, including the chief election officer of the state, could be criminally prosecuted for aiding and abetting the violation" of statutes prohibiting noncitizens from claiming to be a citizen to register to vote or voting in an election. Ms. Dhillon repeated that "any election officer, including the chief election officer of the state, who knowingly retains noncitizens on the state's voter registration list or facilitates noncitizens in receiving and casting ballots could be subject to criminal liability." A third time, she threatened that an "intentional act that is aimed at diluting the votes of citizens could also constitute a violation of 18 U.S.C. § 241, which makes it unlawful for two or more persons to conspire to injure any person in the exercise of that person's constitutional rights." She continued her threats by asserting that "several provisions of federal law make it unlawful for noncitizens to vote in federal elections, and an election officer could be criminally liable for aiding and abetting under 18 U.S.C. § 2 for the violation of any of these provisions or knowingly including noncitizens on the state's voter registration list." She concluded the letter by demanding that the

Secretary to respond the letter "within five days informing us how the state of Washington intends to ensure it is complying with these federal laws both at the state and local level."

11. I have never seen or heard of a similar type of threat coming from DOJ in all my years working in elections. I found this letter intimidating because of the complete imbalance of power between DOJ and state and local election workers and DOJ's demonstrated willingness to pursue legal actions that dozens of judges had explicitly and repeatedly held was unlawful. By repeating the threat of criminal prosecution six times in a single letter, I clearly understood that the purpose of this letter was to intimidate. And the threats were completely unfounded. As an election official, I know that we must act in accordance with the law and only register individuals when all state and federal registration requirements have been met. All election officials know this and, in my experience, all election officials abide by this. I have never once heard of an election worker registering someone they knew to a non-citizen. By repeating these threats of criminal prosecution over and over again, DOJ strongly insinuated that election officials could be held criminally liable simply for carrying out our legal duties. For years, I have been aware of threats from third party actors, including of potential prosecutions. Now, those same baseless threats are coming from the DOJ, making them particularly intimidating.

12. The threats did not end there. In September 2026, Secretary Hobbs received a letter from Acting Chief of the Department of Justice's Civil Rights Division Eric Neff about the subject of ongoing litigation in which Secretary Hobbs continued to be represented by attorneys at the Washington Attorney General's Office. That letter stated that Secretary Hobbs was "currently under investigation" as to the extent to which he had failed to comply with his duties under the Civil Rights Act, the National Voter Registration Act (NVRA) and the Help America Vote Act. A true and correct copy of this letter is attached as **Exhibit D**. It further demanded

Secretary Hobbs preserve records beyond the preservation periods set forth in federal law and that, if he failed to do so, he could be subject to "civil and criminal sanctions." Because of the threat, I again found this letter to be threatening and intimidating.

13. These threats were not the only interference we experienced. While all these threats were ongoing, the Administration continued to interfere with election administration at a larger scale. On March 31, 2026, the President issued Executive Order No. 14,399, entitled *Ensuring Citizenship Verification and Integrity in Federal Elections* ("EO"). I understood the EO to direct the Department of Homeland Security and the U.S. Postal Service to create voter eligibility lists that are different from state voter registration lists. I also understood it to threaten investigation and prosecution state election officials if they sent ballots to voters missing from those lists. I further understood the EO to directly interfere with mail voting by mandating that the United States Postal Service ("USPS") issue a rule requiring creation of a ballot portal for delivery of election mail and a list of voters authorized to receive election mail and directing USPS not to deliver voted ballots unless the voters were registered into the Ballot Portal and appeared on the lists.

14. USPS later published a final rule on August 26, 2026, Ballot Mail for Federal through a central Ballot Portal, less than two months before Washington State was due to mail all active registered voters in the State their mail-in ballots. The Rule imposed numerous new requirements, including design requirements for outbound and return ballot envelopes, a requirement to use trackable Intelligent Mail barcodes on such envelopments, and a requirement to obtain USPS's pre-approval of States' ballot envelope designs. The Rule also provided that USPS would not deliver mail ballots that did not comply with the Rule's requirements, including if election officials sent election mail to voters who were not enrolled in the ballot portal, or any

information missing for a particular voter in the ballot portal, or if States used envelopes that did not comply with USPS new design standards.

15. Issuing the Rule so close to the election caused chaos. Not only was staff time diverted to support the legal action to enjoin enforcement of the rule, but election administrators and public officials in Washington spent significant time and resources preparing contingency plans in case the Rule went into effect. Washington runs its election almost exclusively by mail and no longer as the infrastructure available to accommodate in-person voting at a large scale. The inability to use USPS to deliver ballots created a substantial risk that millions of Washington voters would not be able to obtain a ballot at all. And because USPS published the Rule so close to the election, counties had already purchased all their envelopes for delivery of mail ballots. Because those ballots would not comply with the requirements of the Rule, several counties rushed to order substitute ballot envelopes that accommodate the use of intelligent mail barcodes, at a cost of tens of thousands of dollars. For most counties, however, it was too late to order new ballot envelopes. Facing the dire possibility that Washington would not be able to get ballots to its over 5 million registered voters, the Secretary of State's Office spent countless hours preparing contingency plans on how the State would send millions of ballots to voters without USPS. Thankfully, courts enjoined enforcement of the Rule, and the U.S. Supreme Court denied a stay of that injunction. But a significant amount of time and resources were expended both in fighting the illegal acts by the Administration and for preparing contingency plans in case the Administration succeeded in its illegal efforts.

16. Yet again, the interference did not stop there. On the morning of October 26, 2026, I learned about that our office had received an inquiry from a member of the news media stating that the Department of Justice had announced it would be holding a press conference

at 2:00pm that day "to discuss the issue of non-citizens being registered to vote in the State of Washington." This was the first time I learned about the press conference.

17. At 11:46am on October 26, 2026, our office received an email from First Assistant United States Attorney Pete Serrano and Acting U.S. Attorney Charles Neil Floyd, who lead the two Offices of the U.S. Attorneys in Washington that included a letter saying that they would be "addressing the United States' concerns of non-citizen voting in federal election." The letter attached a PDF list of 405 names that, according to the letter, consisted of people who "are or *were* noncitizens" and that the federal government believed "was sent a vote-by-mail ballot from the State of Washington to participate in the November 2026 federal election." A true and correct copy of the letter (without the list of voters) is attached as **Exhibit E**.

18. This was the first communication that we received from the Department of Justice on this subject. In the months leading up to the election, state election officials had been meeting regularly with federal officials, including representatives from the Federal Bureau of Investigation and the U.S. Attorneys' Offices for both the Eastern and Western Districts of Washington, to discuss election related concerns and threats. At no time before receiving the October 26 letter did any representative of the United States Attorneys' Office contact the Office of the Secretary of State with a list of people who may be ineligible to vote, whether due to citizenship status or otherwise.

19. Neither the letter nor the attachment included any individualized evidence to substantiate its claims, only assertions. In addition, neither the letter nor the attachment explained the sources of information consulted or otherwise explained the methodology underlying the list. It provided no information for OSOS to be able assess the credibility or reliability of the

Department's assertions. I understand that the Department of Justice has indicated that it relied on Lexis Nexis for some part of its search.

20. The letter made two requests. First, it requested that our office review the list of names it provided "within 24 hours of receipt of this letter to determine whether United States citizens are listed." Second, it requested that, "[i]f a ballot for any individual on the list has been or subsequently is return, instruct the appropriate elections official to not verify the signature and/or tabulate the ballot until citizenship can be determined."

21. It also made threats for noncompliance. It stated that "while our offices do not enforce State law," "we do make criminal referral to our state counterparts; nonetheless, we do expect a prompt response from your office by enacting the approach above and with any further actions you deem appropriate to comply with the State or Federal laws.

22. But the letter did not even state that the individuals on the list are currently noncitizens. Having once been a noncitizen who might have naturalized, as the Department of Justice asserted, does not disqualify a person from voting. In the absence of corroborating evidence that the individuals on the list are currently noncitizens, I believe it would be illegal to remove these voters from the State's voter rolls or refuse to process their ballots.

23. To register to vote in Washington State, each registrant must swear under penalty of perjury that they are a United States citizen or present proof of citizenship as part of a transaction with another state agency. This is the proof of citizenship required by federal and state law to register to vote. As a result, every registered voter has confirmed United States citizenship, and, by law, our office must give effect to that confirmation absent proof to the contrary.

24. And based on the limited information available, our office had significant reasons to doubt the reliability and credibility of DOJ's assertions about the individuals. For example, the letter asserted the United States' "belief that each of these individuals was a sent a mail ballot from the State of Washington" for the upcoming election. This is incorrect. Based on the best information available to me, I preliminarily determined that, of the 403 unique individuals on the list, at least 62 individuals had not received ballots: 24 had a canceled voter registration, 27 had an inactive voter registration, and there were 11 names I could not find, which means that these individuals did not receive a ballot. These numbers may actually be higher or lower, depending on additional information that the federal government has not provided.

25. To further "determine whether any United States citizens are listed," as requested by DOJ's letter, I coordinated with the Department of Licensing. From the information provided by the Department of Licensing, I understand that, as part of transactions with that agency, multiple people on this list presented proof of citizenship, including United States birth certificates, United States passports, and certificates of naturalization. I further understand that the Department of Licensing does not necessarily collect or retain citizenship documentation from people who apply for non-enhanced driver licenses and identity cards. That means that the absence of citizenship documents from the information available to the Department of Licensing is not evidence that the person is a noncitizen.

26. A few hours after sending the letter, the authors of the letters held a press conference. Contrary to its statements in the letter that the individuals "are or were noncitizens," acting U.S. Attorney Floyd asserted that all individuals are currently noncitizens. In that press conference, Mr. Franz made several veiled threats. He said: "We will continue to investigate and we will criminally prosecute those who vote illegally, and those who assist others in voting

illegally." In response to a question about whether the DOJ will potentially charge state officials he said: "What I can tell you is what the law says. It is illegal under section 611 for noncitizens to vote. Anyone that assists someone in voting illegally will be also guilty of that crime, like murder or just like any other. So if you conspire, aid and abet, someone else in committing a crime, then you can be guilty of the crime too."

27. After our office conducted a preliminary review of the list, Secretary Hobbs responded to DOJ's letter. A true and correct copy of that letter is attached as **Exhibit F**. The letter explained that our preliminary investigation "confirms what your letter acknowledges: This list includes United States citizens and is not reliable." It also explained that, without individualized proof of ineligibility, "it would be both irresponsible and illegal for election officials to decline to process a registered voter's ballot." It further invited the DOJ to provide individualized proof if available "so election officials can take appropriate steps that are consistent with federal and state law."

28. While the letter threatened that if the State did not agree to DOJ's demands, that DOJ would be forced to seek emergency relief, DOJ has not filed a lawsuit against Secretary Hobbs. I understand, however, that the Department of Justice has announced that it is initiating a criminal probe of election administrators in California that have not abided by DOJ's demands to segregate and not count ballots from individuals who DOJ has claimed may be noncitizens. I fear that myself, staff members of the Secretary of State's Office, Secretary Hobbs, and election administrators around the state could become targets of a similar criminal probe.

29. This fear was heightened when I learned about additional threats made more recently. In a radio interview on October 29, First Assistant United States Attorney Serrano made comments that I understand to be targeted at election officials, including, "We will continue to

investigate and criminally prosecute . . . those who assist others in voting illegally"; "When it comes to these issues, our job is to prosecute. And when there are prosecutable issues that are brought to my office in the Eastern District of Washington, I can assure you that my people, my team and I, will utilize our full force and efforts"; "Knowingly assisting those [noncitizens] who are voting is a crime"; "what I'm trying to find out are the organizations, the people, the systems that set up illegal voting in the State of Washington." While I know that neither I nor any of my staff have violated any criminal law, these threats are intimidating.

30. The threats keep coming. This morning—October 30—I received a letter sent by Acting Deputy Attorney R. Trent McCotter. The letter began with a reminder about federal laws requiring preservation of records. I am aware of federal and state law records preservation requirements and did not need a reminder. I am not aware of the DOJ ever previously sending a similar reminder on the eve of an election. The top of the second page of the letter contains what I understand to be an additional threat to state and local election officials:

> It is a crime to willfully fail to comply with Section 20701. Such a failure is punishable by up to a year in prison and a $1,000 fine. It is also unlawful to willfully steal, destroy, conceal, mutilate, or alter these records under Section 20702.

I understand the purpose of this letter to be to intimidate state and local election officials like me with the threat of criminal prosecution.

31. Threats of criminal actions put election administrators in an untenable position. They are forced to choose between executing their duties faithfully in accordance with state or federal law or preserving their own financial interests and freedom from a baseless criminal probe. We are public servants. Many of us have made sacrifices so that we could devote ourselves to public service. Even a baseless criminal probe can threaten potential bankruptcy.

32. These threats come in the context of a frantic and ever-escalating effort by the Trump Administration to interfere with elections. I am still shocked that the greatest threat that election administrators and voters face today is interference and lawlessness by their own President and their own government. Our office has spent countless hours and many thousands of dollars on legal fees fighting against election interference from the President, the Department of Justice, and other federal agencies. We have had whole-of-government tabletop exercises to prepare for the threat of interference from the federal government. We have had to hold emergency meetings with other state agencies and county auditors to prepare for the possibility that federal agents will unlawfully seize ballots, intimidate voters, invade polling locations, or arrest election workers. Our attorneys have been forced to prepare for similar possibilities. On attorneys' fees alone, our Office has spent over hundreds of thousands of dollars fighting against federal interference with election administration.

33. The threats from the federal government also trigger escalating threats from private citizens. Since 2020, many election officials have faced threats and intimidation from third parties. For example, in December 2020, my predecessor, the then-Elections Director for the Washington Office of the Secretary of State, received a death threat online and had her home address and photograph posted online. This was part of a campaign of threats against dozens of election officials. I am also aware that local election officials have been threatened. Washington State has experienced multiple white powder incidents, including during this election cycle, and election administrators have been doxxed online.

34. This whole environment has created a recruiting crisis. Many election administrators in the State have quit amidst the increasing personal risks and harassment from private parties and from the federal government. It has become harder and harder to recruit

election workers, who perform a vital function in ensuring that elections are fair, free and accessible. These are not high-paying jobs and our democracy will not function if we cannot ensure that election administrators can do their jobs without fear or favor.

35. All across the country, large numbers of election officials have resigned or decided to not seek re-election. This creates serious challenges for successfully running elections. The threats of criminal prosecution from the Department of Justice are a new and very troubling continuation of this history of threats and intimidation.

36. The most difficult part of all this interference is that election administrators have such an important job to do, and continually decreasing funds and resources with which to do that job. Preparing for an election is a complicated and time-consuming process filled with tasks that are critical to holding a successful election.

37. Right before an election is the busiest and most critical time of the year. Time we are spending fighting off federal interference could and should be spent on the continuous process of updating voter registrations, ensuring that voting centers are working properly, addressing resource limitations, assisting voters seeking to register or cancel their registrations, answering voters' questions and conducting get-out-the-vote efforts, ensuring access to the ballot, and the monumental task of processing ballots, verifying signatures, tabulating election results, welcoming election monitors, conducting recounts, and assisting voters.

38. Washington continues to process and count ballots that are postmarked by Election Day until it certifies the election approximately three weeks after election day. This entire period is extremely busy for election administrators.

39. Diversion of our attention and resources during this critical time period harms voters and harms elections. Election administrators should not be forced to perform their critical work through a fog of fear and intimidation.

40. Washington has been suffering a fiscal crisis for years. The budget of the Secretary of State has continually been whittled down so that it now only covers core functions. Without relief from this Court, the Secretary of State's Office will likely be forced to expend additional funds to engage a criminal defense attorney to prepare for the possibility of baseless criminal actions. That is state taxpayer money that should be devoted to improving elections and helping voters, not fighting against baseless threats from the federal government.

I declare under penalty of perjury under the laws of the State of Washington and the United States of America that the foregoing is true and correct.

Executed on October 30, 2026 at Olympia Washington.

Stuart Holmes
Director of Elections
Office of the Secretary of State

# EXHIBIT A

**U.S. Department of Justice**

Civil Rights Division

*Office of the Assistant Attorney General* *Washington, D.C. 20530*

September 8, 2025

Via Mail and Email

The Honorable Steve Hobbs
Secretary of State
PO Box 40220
Olympia, WA 98504-0220
steve.hobbs@sos.wa.gov;
secretaryofstate@sos.wa.gov

Re: **Request for Complete Washington's Voter Registration List with All Fields**

Dear Secretary Hobbs:

We write to you as the chief election official for the State of Washington concerning your State's compliance with the statewide voter registration list maintenance provisions of the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20501 *et seq*., and the Help America Vote Act ("HAVA"), 52 U.S.C. § 20901, *et seq*. Please provide a copy of Washington's statewide voter registration list ("VRL") within fourteen days of the date of this letter.

The electronic copy of the statewide VRL should contain *all fields*, which means, your state's VRL must include the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number as required under HAVA[1] to register individuals for federal elections. *See* 52 U.S.C. § 21083(a)(5)(A)(i).

We request Washington's VRL to assess your state's compliance with the statewide VRL maintenance provisions of the NVRA. Our request is pursuant to the Attorney General's authority under Section 11 of the NVRA to bring enforcement actions. *See* 52 U.S.C. § 20510(a).

HAVA also provides authority for the Justice Department to seek the State's VRL via Section 401, which makes the Attorney General solely responsible for actions to enforce HAVA's

[1] In charging the Attorney General with enforcement of the voter registration list requirements in the HAVA and in the NVRA, Congress plainly intended that DOJ be able to conduct an independent review of each state's list. Any statewide prohibitions are clearly preempted by federal law.

computerized statewide voter registration list requirements. *See* 52 U.S.C. § 21111; *see also Brunner v. Ohio Republican Party*, 555 U.S. 5, 6 (2008) (*per curiam*) (finding no private right of action to enforce HAVA requirements).

In addition to those authorities, the Attorney General is also empowered by Congress to request records pursuant to Title III of the Civil Rights Act of 1960 ("CRA"), codified at 52 U.S.C. § 20701, *et seq*. Section 301 of the CRA requires state and local officials to retain and preserve records related to voter registration and other acts requisite to voting for any federal office for a period of twenty-two months after any federal general, special or primary election. *See* 52 U.S.C. § 20701.

Section 303 of the CRA provides, in pertinent part, "Any record or paper required by section 20701 to be retained and preserved shall, upon demand in writing by the Attorney General or his representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying at the principal office of such custodian by the Attorney General or his representative…" *See* 52 U.S.C. § 20703.

Pursuant to the foregoing authorities, including the CRA, the Attorney General is requesting an electronic copy of Washington's complete and current VRL. The purpose of this request is to ascertain Washington's compliance with the list maintenance requirements of the NVRA and HAVA.

To the extent there are privacy concerns, the voter registration list is subject to federal privacy protections. Section 304 of the CRA provides the answer:

> Unless otherwise ordered by a court of the United States, neither the Attorney General nor any employee of the Department of Justice, nor any other representative of the Attorney General, shall disclose any record or paper produced pursuant to this chapter, or any reproduction or copy, except to Congress and any committee thereof, governmental agencies, and in the presentation of any case or proceeding before any court or grand jury.

52 U.S.C. § 20704. HAVA specifies that the "last 4 digits of a social security number . . . shall not be considered to be a social security number for purposes of section 7 of the Privacy Act of 1974" (5 U.S.C. § 522a note); 52 U.S.C. § 21083(c). In addition, any prohibition of disclosure of a motor vehicle record contained in the Driver's License Protection Act, codified at 18 U.S.C. § 2721(b)(1), is exempted when the disclosure is for use by a government agency in carrying out the government agency's function to accomplish its enforcement authority as the Justice Department is now doing. That said, all data received from you will be kept securely and treated consistently with the Privacy Act explained at Civil Rights Division - Department of Justice - Privacy Policy[2].

Please provide the requested electronic VRL[3] to the Justice Department fourteen days from the date of this letter. The information and materials may be sent by encrypted email to

---

[2] Available at: https://civilrights.justice.gov/privacy-policy#:~:text=Our%20Statutes-,Privacy%20Act%20Statement,the%20scope%20of%20our%20jurisdiction.

[3] Containing *all fields*, which includes either the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number as required by HAVA.

voting.section@usdoj.gov or via the Department's secure file-sharing system, Justice Enterprise File Sharing ("JEFS"). If Washington would be interested in a data sharing agreement with the Civil Rights Division, please reply to voting.section@usdoj.gov prior to the expiration of the fourteen-day response window. Upon receipt, we will send you an agreement template.

Should further clarification be required, please contact Maureen Riordan at maureen.riordan2@usdoj.gov.

Regards,

Harmeet K. Dhillon
Assistant Attorney General
Civil Rights Division

cc: Stuart Holmes
Director of Elections
416 Sid Snyder Ave SW
Olympia, WA 98501
stuart.holmes@sos.wa.gov

# EXHIBIT B

WASHINGTON SECRETARY OF STATE

September 23, 2025

Harmeet K. Dhillon
Assistant Attorney General, Civil Rights Division
950 Pennsylvania Avenue NW
Washington, D.C. 20530-0001

Re: Request for Complete Washington's Voter Registration List with All Fields

Dear Ms. Dhillon:

This letter responds to your September 8, 2025, letter, which requests "a copy of Washington's statewide voter registration list." As detailed below, without further explanation of the basis for your request, I cannot provide you with some of the information you have requested without violating state and federal law.

Your letter requests an electronic copy of the statewide voter registration list that "contains *all fields*," including information that Washington law prohibits me from disclosing, such as voters' full dates of birth, driver's license numbers, and the last four digits of voters' social security numbers. This request raises serious legal and privacy concerns. As the Chief Election Officer of the State, I take very seriously the responsibility to safeguard highly personal voter information protected from disclosure under both Washington and federal law. The information that you have provided is not sufficient to allow me to release voters' personal confidential information. I welcome additional clarification of your authority, as discussed below.

Washington law requires that "current lists of registered voters . . . must be made available for public inspection and copying[.]" Wash. Rev. Code § 29A.08.720(3)(a). This disclosure, however, is limited to select data fields, including the voter's name, address, political jurisdiction, gender, year of birth, voting record, date of registration, and registration number." *See* RCW 29A.08.710. Aside from these enumerated fields, "no other information from voter registration records or files is available for public inspection or copying." *Id.* As such, many of the data fields you have requested — including the registrant's full date of birth, driver's license

number, and the last four digits of their social security number — are protected from disclosure under Washington law.

None of the statutes you cite support production of such highly sensitive voter registration information. Your letter relies on Section 11 of the NVRA, but nothing in that provision requires that States provide confidential information to the Attorney General. Your letter also relies on Section 401 of HAVA, but again, nothing in that provision requires that States provide confidential information to the Attorney General. And your letter invokes the federal Civil Rights Act of 1960. But any demand for records "shall contain a statement of the basis and the purpose therefor." 52 U.S.C. § 20703. Your letter identifies DOJ's purpose as ensuring compliance with HAVA and the NVRA, but as stated above, the cited provisions of the NVRA and HAVA provide no basis to seek confidential information.

Moreover, the CRA does not authorize collection of information for purposes not authorized under the statute. While you claim in your September 8 letter that "the purpose of this request is to ascertain Washington's compliance with the list maintenance requirements of the NVRA and HAVA," I have significant concerns that this is not the real reason for your request. Public reporting indicates that DOJ intends to use these lists to attempt to create a national voter registration database, to share information with the Department of Homeland Security to assist in immigration enforcement efforts, and for other purposes not authorized by law.[1] My concerns are underscored by DOJ's evolving explanations for requesting such information, as well as public reporting that DOJ already has or imminently plans to send a virtually identical request to all states, without citing any basis to believe that any state is failing to meet its responsibilities under the NVRA or explaining why voters' highly personal information is necessary to assess any state's list-maintenance process. DOJ has also filed lawsuits against both Oregon and Maine, in which it, again, conspicuously fails to explain how this sensitive data is needed to assess states' list maintenance programs.

---

[1] Trump Administration Quietly Seeks to Build National Voter Roll Using State Data - The New York Times

Election law experts have noted that data on individual registrants would not be particularly useful in DOJ's claimed effort to assess states' general programs.[2] Washington is more than willing to provide you with the publicly available voter registration list that we are required to make public by law, which provides each voters' name, address, and year of birth. That should be more than sufficient information to assess Washington's list maintenance efforts.

Finally, I have significant concerns that DOJ's collection of personal information on hundreds of millions of voters may violate federal law. Under the Privacy Act of 1974, any creation of a system of records must comply with specific legal requirements to safeguard against abuse. Please explain in detail how DOJ's request complies with the Privacy Act. Specifically, please explain the following:

1) A citation to the notice published in the Federal Register with all the information required under 5 U.S.C. § 552a(e)(4) about the system of records DOJ is creating;

2) Whether DOJ has transferred or plans to transfer any state voter data collected from any State outside DOJ's Voting Rights Section, including to any other law enforcement agencies, and your basis for believing that such transfer complies with the Privacy Act;

3) Why highly sensitive information, including voters' drivers' license numbers and social security numbers, is necessary to assess Washington's general program for voter list maintenance, how precisely DOJ would use such information to assess the State's list maintenance processes, and why that evaluation cannot be accomplished with voters' names, addresses, and years of birth.

4) How the system of records DOJ is establishing complies with the prohibition in 5 U.S.C. § 552a(e)(7) on maintaining records "describing how any individual exercises rights guaranteed by the First Amendment," considering that voter registration lists include party affiliation for some states and voter participation history; and

5) What, if any, measures DOJ is taking to ensure the new system of records will be

---

[2] The Trump Administration Wants Your Voter Registration Data. Why? - Democracy Docket

Legislative Building | PO Box 40220 | Olympia, WA 98504-0220
Tel: 360-902-4151 | sos.wa.gov

> maintained with "such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination." 5 U.S.C. § 552a(e)(5).

As an elected state official, I have taken an oath to obey the United States Constitution. The Constitution is clear about the power to regulate elections — the power is vested in state governments, subject only to alteration by Congress. Nowhere does the Constitution give the President or the Executive Branch independent power to control how States regulate elections or to force States to surrender their voters' highly sensitive personal information. My obligation is to support and defend the Constitution of the United States and the Constitution of the State of Washington and ensure election laws are being enforced. In addition to ensuring that Washington's voter registration list complies with all applicable federal and state laws, my obligation also includes protecting Washington voters from unnecessary and illegitimate intrusions on their privacy.

In light of these concerns, I am providing a link to where you can request a copy of the publicly available voter registration list. I welcome clarification of your authority to access confidential voter information.

Regards,

Steve R Hobbs

Steve Hobbs
Washington Secretary of State

# EXHIBIT C

**U.S. Department of Justice**

Civil Rights Division

*Assistant Attorney General*
*950 Pennsylvania Ave, NW - RFK*
*Washington, DC 20530*

July 7, 2026

***Via U.S. Mail and Electronic Mail***

The Honorable Steve Hobbs
Washington Secretary of State
Elections Division
P.O. Box 40229, Olympia, WA 98504-0229
elections@sos.wa.gov / secretaryofstate@sos.wa.gov

**Re: The State of Washington's Compliance with Federal Law Governing Voter Eligibility.**

Dear Secretary Hobbs:

This letter is sent to you as the chief election officer of the state of Washington. This letter serves as a notice of the federal laws applicable to state and local election officials to ensure free, fair, and transparent elections. Also attached to this letter is a memorandum titled, "Federal Law Requirements for State and Local Election Officials," which outlines various responsibilities for state and local election officials under federal law and the potential criminal penalties for those who fail to carry out their duties.

Federal law mandates that state and local election officials properly maintain election records and undertake certain actions to ensure that only eligible U.S. citizens cast votes in elections for federal office. This includes: (i) Title III of the Civil Rights Act of 1960 (CRA), 52 U.S.C. § 20701 *et seq.*; (ii) the Voting Rights Act of 1965 (VRA), 52 U.S.C. § 10301 *et seq.*; (iii) the National Voter Registration Act of 1993 (NVRA), 52 U.S.C. § 20501 *et seq*.; and (iv) the Help America Vote Act of 2002 (HAVA), 52 U.S.C. § 20901 *et seq*.

In addition to the Civil Rights Division's authority to seek injunctive relief for violations of these laws, we are also authorized to prosecute criminal violations. Section 12(2)(B) of the NVRA makes it a crime for "an election official" in a federal election to "knowingly and willfully deprive[], defraud[], or attempt[] to deprive or defraud the residents of a State of a fair and impartially conducted election process, by— . . . (B) the *procurement, casting, or tabulation* of ballots that are known by the [election official] to be materially false, fictitious, or fraudulent under the laws of the State in which the election is held." 52 U.S.C. § 20511. For example, knowingly retaining noncitizens on Washington's "State Voter Registration List" (SVRL) and sending such individuals ballots, and then counting such ballots, would constitute the "procurement, casting, or tabulation" of ballots that are known to be false in violation of section 12(2)(B) of the NVRA.

In addition, *any* individual who knowingly and willfully gives false information in registering to vote or in actually casting a vote in violation of 52 U.S.C. § 10307(c) of the VRA, or *anyone* who conspires with another to violate such section, can be criminally prosecuted, subject

to potential fines and imprisonment, in accordance with such section. 52 U.S.C. § 21144 (HAVA). Furthermore, any individual who knowingly commits fraud or knowingly makes a false statement with respect to the naturalization, citizenry, or alien registry of any individual in violation of 18 U.S.C. § 1015 may be criminally prosecuted and if the prosecution is successful, such persons "shall" be fined or imprisoned, or both, in accordance with 52 U.S.C. § 21144.

Moreover, while federal law obviously makes it unlawful for noncitizens to vote in federal elections, 52 U.S.C. § 21144, state election officers, including the chief election officer of the state, could be criminally prosecuted for aiding and abetting the violation of any of these provisions:

- Under 18 U.S.C. § 1015(f), it is a felony for an alien to "claim that he is a citizen of the United States in order to register to vote or to vote in any Federal, State, or local election (including an initiative, recall, or referendum);"

- Under 18 U.S.C. § 911, it is a felony for an alien to "falsely and willfully represent himself to be a citizen;" and

- Under 18 U.S.C. § 611, it is unlawful for an alien to vote in a federal election.

In conclusion, any election officer, including the chief election officer of the state, who knowingly retains noncitizens on the state's SVRL or facilitates noncitizens in receiving and casting ballots could be subject to criminal liability. An intentional act that is aimed at diluting the votes of citizens could also constitute a violation of 18 U.S.C. § 241, which makes it unlawful for two or more persons to conspire to injure any person in the exercise of that person's constitutional rights. We encourage you to contact us to discuss what steps your state should take to maintain clean voter lists as required by law.

The Department of Justice, Civil Rights Division, would like to assist your state in complying with these federal laws. Please respond to this letter within five days informing us how the state of Washington intends to ensure it is complying with these federal laws both at the state and local level and how the Department can assist in those efforts. Please send your written response within five (5) days to William F. Mohrman, Senior Counsel, at william.mohrman@usdoj.gov.

Regards,

Harmeet K. Dhillon
Assistant Attorney General
Civil Rights Division

CC:

The Honorable Nick Brown, Washington Attorney General
P.O. Box 40100, Olympia, WA 98504-0100
serviceATG@atg.wa.gov

# Federal Law Requirements for State and Local Election Officials

Multiple federal statutes place requirements on state and local election officials in conducting safe, fair, accurate, and verifiable federal elections and maintaining state voter registration lists. These include but are not limited to:

**Title III of the Civil Rights Act of 1960 (CRA),** 52 U.S.C. § 20701 et seq., requires that election officers, among other things:

- "[R]etain and preserve" for 22 months after a federal election "all records and papers which come into his possession relating to any . . . registration . . . or other act requisite to voting in such election." 52 U.S.C. § 20701. Failure to "retain and preserve" is a crime punishable by fine or imprisonment, or both. 52 U.S.C. § 20702.

- Make these records available for inspection, reproduction, and copying upon demand by the Attorney General or his representative. 52 U.S.C. § 20703.

**The National Voter Registration Act of 1993 (NVRA)**, 52 U.S.C. § 20501 *et seq.*,[1] was based on the finding that the "right of *citizens* of the United States to vote is a fundamental right" and requires election officials, among other things, to:

- Ensure that any *eligible* applicant is registered to vote in an election. 52 U.S.C. § 20507(a)(1) (emphasis added).

- Ensure that when citizens register to vote through a driver's license or mail-in application process, that application includes a statement that—
  - states each eligibility requirement (including citizenship);
  - contains an attestation that the applicant meets each such requirement; and
  - requires the signature of the applicant, under penalty of perjury. 52 U.S.C. §§ 20504(c)(2)(C) & 20508(b)(2).

- Conduct a general program that makes a reasonable effort to remove from the official lists of eligible voters the names of ineligible voters by reason of death or change in residence. 52 U.S.C. § 20507(a)(4).

---

[1] Pursuant to the NVRA, the following six states are exempted from compliance with the NVRA: Idaho, Minnesota, New Hampshire, North Dakota, Wisconsin, and Wyoming. 52 U.S.C.A. § 20503 (b).

- "[P]rovide that the name of a registrant may not be removed from the official list of eligible voters except" in four situations: (1) the request of the registrant, (2) the registrant's criminal conviction or mental incapacity, (3) the death of the registrant, and (4) the registrant's confirmed change of address. 52 U.S.C. §§ 20507(a)(3), 20507(a)(4).

- Complete, not later than 90 days prior to the date of a primary or general election for federal office, programs to systematically remove the names of ineligible voters from the official lists of eligible voters, 52 U.S.C. § 20507(c)(2), provided that the 90-day cut-off does not apply to the removal of non-citizens who were never eligible to register in the first place. *See, e.g., Bell v. Marinko*, 367 F.3d 588, 591-592 (6th Cir. 2002) ("In creating a list of justifications for removal, Congress did not intend to bar the removal of names from the official list of persons who were ineligible and improperly registered to vote in the first place."); *contra, e.g., Arcia v. Florida Sec'y of State,* 772 F.3d 1335, 1346 (11th Cir. 2014).

- Maintain for at least 2 years and make available for public inspection all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters. 52 U.S.C. § 20507(i)(1).

- Avoid depriving or defrauding the residents of a state of a fair and impartially conducted election process, by the *procurement, casting, or tabulation* of ballots that are known to be materially false, fictitious, or fraudulent under the laws of the state, 52 U.S.C. § 20511, which may include retention of noncitizens on a state's SVRL. Violation of this provision is a crime.

**The Help America Vote Act of 2002 (HAVA)**, 52 U.S.C. § 20901 *et seq*., provides minimum standards to ensure that voter registration records are accurate and updated regularly, and requires states, among other things, to:

- Implement, in a uniform and nondiscriminatory manner, a single, official, centralized, interactive computerized statewide voter registration list at the state level that contains the name and registration information of every *legally* registered voter in the state and assigns a unique identifier to each legally registered voter in the state. 52 U.S.C. § 21083(a)(1)(A).

- Perform voter list maintenance on a regular basis, including removing registrants in accordance with the NVRA, 52 U.S.C. § 21083(a)(2)(A), and removing registrants who are ineligible to vote. 52 U.S.C. § 21083(a)(4)(A).

- Reject for processing an application for voter registration for an election for federal office unless the application includes the applicant's unique identifier for purposes of the state's SVRL:
  - driver's license number;
  - if the applicant has no driver's license, then the last 4 digits of the applicant's social security number; or
  - if the applicant has neither a driver's license nor social security number, then a state-assigned number which will serve to identify the applicant for voter registration purposes. 52 U.S.C. § 21083(a)(5)(A).
- Include the following in the mail-in voter registration form developed under HAVA:
  - The question "Are you a citizen of the United States of America?" and boxes for the applicant to check to indicate whether the applicant is a citizen of the United States. 52 U.S.C. § 21083(b)(4)(a)(i).
  - The question "Will you be 18 years of age on or before election day?" and boxes for the applicant to check to indicate whether or not the applicant will be 18 years of age or older on election day. 52 U.S.C. § 21083(b)(4)(a)(ii).
  - The statement "If you checked 'no' in response to either of these questions, do not complete this form." 52 U.S.C. § 21083(b)(4)(a)(iii).
- Provide voters with an opportunity to privately and independently verify, change, or correct their ballot before it is cast and counted. 52 U.S.C. § 21081(a)(1)(A)(ii).
- Produce through the state's voting systems a permanent paper record for purposes of manual recounts and audits. 52 U.S.C. § 21081(a)(2)(B).

HAVA also provides it is illegal for anyone to provide false information or commit fraud in conjunction with a noncitizen registering to vote or casting a ballot, or conspiring with those who engage in such acts, which may include election officials who knowingly conspire with noncitizens who illegally register to vote or cast a ballot. 52 U.S.C. § 21144 (a) & (b). Violations carry criminal penalties under 52 U.S.C. § 10307(c) and 18 U.S.C. § 1015 of up to a $10,000 fine or imprisonment of up to five years. This includes election officials who knowingly conspire with noncitizens to secure false information on registrations. 52 U.S.C. § 21144 (a).

**Criminal Liability:** In addition, several provisions of federal law make it unlawful for noncitizens to vote in federal elections, and an election officer could be criminally liable for aiding and abetting under 18 U.S.C. §2 for the violation of any of these provisions or knowingly including noncitizens on the state's SVRL:

- Under 18 U.S.C. § 1015(f), it is a felony for an alien to claim that he is a citizen of the United States in order to register to vote or to vote in any federal, state, or local election (including an initiative, recall, or referendum).

- Under 18 U.S.C. § 911, it is a felony for an alien to falsely and willfully represent himself to be a citizen.

- Under 18 U.S.C. § 611, it is unlawful for an alien to vote in a federal election.

- An election officer who knowingly takes an action aimed at retaining noncitizens on the state's SVRL could be subject to criminal liability under 18 U.S.C. § 241.

**Cybersecurity**: The Department of Homeland Security designated election systems as a critical infrastructure subsector in January 2017, and state and local election officials are on the front lines to ensure that election and voting systems are secure and free from interference by foreign or domestic actors.

- The **Cybersecurity and Infrastructure Security Agency** has created the Election Security Risk Profile Tool to assess your local election system risk and ensure that technical cybersecurity assessments and services meet critical needs.

- Election officials should visit the CISA website (https://www.cisa.gov/cybersecurity-toolkit-and-resources-protect-elections) and follow all applicable guidelines to perform their duties in keeping American elections secure from cyberthreats.

# EXHIBIT D

**U.S. Department of Justice**

Civil Rights Division

*Voting Section - 4CON*
*950 Pennsylvania Ave, NW*
*Washington, DC 20530*

September 4, 2026

Via Electronic Mail

The Honorable Steve Hobbs
Washington Secretary of State
Elections Division
Olympia, WA 98504

Re: Maintenance of All Election Records in Your Possession as Chief Election Officer During Pending Litigation

Dear Secretary Hobbs:

We represent the United States in enforcing your duties as the chief election officer of the State of Washington under the Civil Rights Act of 1960 ("CRA"), codified at 52 U.S.C. § 20701, *et seq*. As you are aware, you are currently under investigation and ongoing litigation as to the extent to which you have failed to comply with your duties under the CRA as well as the National Voter Registration Act ("NVRA"), codified at 52 U.S.C. § 20501 *et seq.*, and Help America Vote Act of 2002 ("HAVA"), codified at 52 U.S.C. § 20181, *et seq*. You were initially put on notice of this investigation based on our letters to your office in 2025 and the subsequent litigation that followed. These letters notified you of your duty to preserve election records which have come into possession under the CRA for the prior 22 months, including records from the 2024 federal election.

The purpose of this letter is to notify you of your obligations to take reasonable steps to conduct a litigation hold and preserve and retain all hard copy documents and electronically stored information ("ESI"), as defined by Rule 34 of the Federal Rules of Civil Procedure, which may be relevant, or likely to lead to the discovery of admissible evidence. The duty to preserve records supersedes any statutory limitations, especially where the party "has notice that the evidence is relevant to litigation." *Thompson v. U.S. Dept. of Housing and Urban Development*, 219 F.R.D. 93, 100 (D. Md. 2003). While the CRA requires that election officials preserve election records for 22 months after an election, this Litigation Hold letter would override any argument that you would now be authorized to destroy such records related to the 2024 election. The SVRLs and other election records relevant to the 2024 election, as well as current records, are relevant to the litigation.

To fulfill your preservation obligation, you must take reasonable steps to preserve all hard copy documents and ESI which constitute Relevant Information, including, but not limited to:

(a) Suspending your document and data destruction and backup tape recycling policies;

(b) Retaining software, hardware, or other information required to access or view the ESI, such as:

1. identification codes;
2. passwords;
3. decryption applications;
4. decompression software;
5. reconstruction software;
6. network access codes;
7. manuals; and
8. user instructions;

(c) Taking special measures to ensure the preservation of:

1. archived or deleted ESI;
2. ESI stored in a database;
3. computer logs;
4. metadata, including the date ESI was created, the date ESI was last modified, the name of the individual who created the ESI as well as all other metadata fields; and

(d) Taking any other reasonable steps necessary to prevent the destruction, loss, override, or modification of relevant data, either intentionally or inadvertently, such as through modification of your document retention policy and systems.

To make this clear - All ESI must be preserved intact and without modification. The above list is not exhaustive, and you must preserve all information that is potentially relevant to any lawsuit the United States files against you.

Your failure to preserve relevant data may constitute spoliation of evidence, which may subject you to civil and criminal sanctions. We trust that you will preserve for the duration of our investigation and any subsequent litigation all Relevant Documents. In the event of a dispute arising out of your failure to preserve documents, we will rely on this letter in court as evidence of our request for litigation hold and notice of your preservation obligations.

Please direct any questions to Eric Neff, Acting Chief of the Voting Section, at Eric.Neff@usdoj.gov. Failure to preserve and then timely produce the requested records upon further request may result in the United States seeking a court order for production of such records. 52 U.S.C. § 20705.

Thank you in advance for your cooperation.

Regards,

Eric Neff
Acting Chief, Voting Section
Civil Rights Division

cc: Attorney Tera Heintz (Tera.Heintz@atg.wa.gov)

# EXHIBIT E

**U. S. Department of Justice**

*United States Attorney*
*Eastern District of Washington*
*Thomas S. Foley U. S. Courthouse, Suite 340*
*P. O. Box 1494* *(509) 353-2767*
*Spokane, Washington 99210-1494* *Fax (509) 835-6397*

October 26, 2026

Via Email

The Honorable Steve Hobbs
Secretary of State
PO Box 40220 Olympia, WA 98504-0220
steve.hobbs@sos.wa.gov;
secretaryofstate@sos.wa.gov

Re: Noncitizen Voting in the 2026 Federal Election

Dear Secretary Hobbs,

As you're aware, federal law prohibits noncitizens from voting in federal elections. *See* 18 U.S.C. § 611. The Supreme Court has also recognized that States "may not induce, encourage or promote private persons to accomplish what it is constitutionally forbidden to accomplish." *Norwood v. Harrison,* 413 U.S. 455, 465 (1973) (citation omitted). We're aware of the current litigation and correspondence surrounding Assistant Attorney General Harmeet Dhillon's request for the Washington voter roles – our request here, is separate and apart from that inquiry and litigation, as we seek your assistance to protect the integrity of the ongoing federal election.

Washington law requires the automatic mailing of voting materials to "each active registered voter of the state." Revised Code of Washington §29A.40.010. By law, ballots are to be mailed to "each voter at least eighteen days before each primary or election," and ballots for the 2026 General Election were required to be sent to voters no later than October 15, 2026. Revised Code of Washington §29A.40.070(1). Accordingly, any registered voter in the State of Washington, including noncitizens that receive ballots through Washington's vote-by-mail regime, was required to be sent a ballot no less than seven (7) days ago.

The United States is concerned with the number of noncitizen voters, both enrolled and actively voting in the State of Washington, as allowing noncitizens to vote cancels citizen votes. To combat voting by noncitizens, in violation of 18 U.S.C. § 611, the Department of Homeland Security (DHS) provided our offices a list of names of persons who are noncitizens, who, with a high level of confidence, have voted in elections as recently as the August 2026 Primary elections. Some of these individuals have voted in Washington for over a decade and have voted more than two dozen times. To be clear: through the efforts of our federal law enforcement partners, the individuals identified are or were noncitizens (i.e., they may have subsequently naturalized). Our federal partners further identified that these individuals have, with a high level of confidence, voted. It is the United States' belief that each of these individuals was sent a vote-by-mail ballot from the State of Washington to participate in the November 2026 federal election. The list of the identified individuals is attached to this letter and is comprised of over 400 individuals and over 1,500 total votes.

We advise that we anticipate imminently receiving a second list of individuals believed to be noncitizens who are registered to vote from DHS, which we will transmit ahead of the November 2, 2026, General Election with the request that you follow the protocol listed below.

To help protect the integrity of the 2026 Election our request and expectations are simple:

1. You, or your office, review the list within 24 hours of receipt of this letter to determine whether United States citizens are listed.
2. If a ballot for any individual on the list has been or subsequently is returned, instruct the appropriate elections official to not verify the signature and/or tabulate the ballot until citizenship can be determined.

We believe the requested actions will allow your office to determine whether noncitizens are voting in Washington's elections in violation of State and Federal law. As you noted in your July 7, 2026, letter to William Mohrman, Senior Counsel with the Department of Justice's Civil Rights Division, RCW 29A.04.205 provides the State's obligation and commitment "to protect the integrity of the electoral process." You further invited the Department of Justice to provide "meaningful assistance" to protect election integrity – that is our goal here. Through these efforts, specific individuals were identified, who, with high confidence, should not be registered to vote under Washington law, RCW 29A.08.370. Our request is simple; we ask that your office rectify this issue immediately. We further recognize the obligation county auditors and government agency employees providing voter registration services are under to properly carry out their duties in connection with voter registration pursuant to RCW 29A.84.110. While our offices do not enforce State law, we do make criminal referrals to our state counterparts; nonetheless, we do expect a prompt response from your office by enacting the approach above and with any further actions you deem appropriate to comply with the State or Federal laws cited.

Please ensure that the process described above to prevent noncitizens from voting in the federal election is implemented by contacting election@hq.dhs.gov and copying me at: pete.serrano@usdoj.gov by October 28 at noon PST. If you cannot implement this process by then, given the ongoing federal election, the United States will have no choice but to seek emergency relief.

The United States hopes that you share our commitment to ensure that only American citizens participate in our federal elections. Your assistance in this process will protect American citizens' votes while preventing noncitizens from violating federal law by participating in the federal election. We look forward to our collaboration as we work together to ensure free, fair and accurate elections.

Sincerely,

Charles Neil Floyd
Acting United States Attorney

Pete Serrano
First Assistant United States Attorney

cc: Stuart Holmes
Director of Elections
416 Sid Snyder Ave SW
Olympia, WA 98501
stuart.holmes@sos.wa.gov

# EXHIBIT F

September 23, 2025

Harmeet K. Dhillon
Assistant Attorney General, Civil Rights Division
950 Pennsylvania Avenue NW
Washington, D.C. 20530-0001

Re: Request for Complete Washington's Voter Registration List with All Fields

Dear Ms. Dhillon:

This letter responds to your September 8, 2025, letter, which requests "a copy of Washington's statewide voter registration list." As detailed below, without further explanation of the basis for your request, I cannot provide you with some of the information you have requested without violating state and federal law.

Your letter requests an electronic copy of the statewide voter registration list that "contains *all fields*," including information that Washington law prohibits me from disclosing, such as voters' full dates of birth, driver's license numbers, and the last four digits of voters' social security numbers. This request raises serious legal and privacy concerns. As the Chief Election Officer of the State, I take very seriously the responsibility to safeguard highly personal voter information protected from disclosure under both Washington and federal law. The information that you have provided is not sufficient to allow me to release voters' personal confidential information. I welcome additional clarification of your authority, as discussed below.

Washington law requires that "current lists of registered voters . . . must be made available for public inspection and copying[.]" Wash. Rev. Code § 29A.08.720(3)(a). This disclosure, however, is limited to select data fields, including the voter's name, address, political jurisdiction, gender, year of birth, voting record, date of registration, and registration number." *See* RCW 29A.08.710. Aside from these enumerated fields, "no other information from voter registration records or files is available for public inspection or copying." *Id.* As such, many of the data fields you have requested — including the registrant's full date of birth, driver's license

number, and the last four digits of their social security number — are protected from disclosure under Washington law.

None of the statutes you cite support production of such highly sensitive voter registration information. Your letter relies on Section 11 of the NVRA, but nothing in that provision requires that States provide confidential information to the Attorney General. Your letter also relies on Section 401 of HAVA, but again, nothing in that provision requires that States provide confidential information to the Attorney General. And your letter invokes the federal Civil Rights Act of 1960. But any demand for records "shall contain a statement of the basis and the purpose therefor." 52 U.S.C. § 20703. Your letter identifies DOJ's purpose as ensuring compliance with HAVA and the NVRA, but as stated above, the cited provisions of the NVRA and HAVA provide no basis to seek confidential information.

Moreover, the CRA does not authorize collection of information for purposes not authorized under the statute. While you claim in your September 8 letter that "the purpose of this request is to ascertain Washington's compliance with the list maintenance requirements of the NVRA and HAVA," I have significant concerns that this is not the real reason for your request. Public reporting indicates that DOJ intends to use these lists to attempt to create a national voter registration database, to share information with the Department of Homeland Security to assist in immigration enforcement efforts, and for other purposes not authorized by law.[1] My concerns are underscored by DOJ's evolving explanations for requesting such information, as well as public reporting that DOJ already has or imminently plans to send a virtually identical request to all states, without citing any basis to believe that any state is failing to meet its responsibilities under the NVRA or explaining why voters' highly personal information is necessary to assess any state's list-maintenance process. DOJ has also filed lawsuits against both Oregon and Maine, in which it, again, conspicuously fails to explain how this sensitive data is needed to assess states' list maintenance programs.

---

[1] Trump Administration Quietly Seeks to Build National Voter Roll Using State Data - The New York Times

Election law experts have noted that data on individual registrants would not be particularly useful in DOJ's claimed effort to assess states' general programs.[2] Washington is more than willing to provide you with the publicly available voter registration list that we are required to make public by law, which provides each voters' name, address, and year of birth. That should be more than sufficient information to assess Washington's list maintenance efforts.

Finally, I have significant concerns that DOJ's collection of personal information on hundreds of millions of voters may violate federal law. Under the Privacy Act of 1974, any creation of a system of records must comply with specific legal requirements to safeguard against abuse. Please explain in detail how DOJ's request complies with the Privacy Act. Specifically, please explain the following:

1) A citation to the notice published in the Federal Register with all the information required under 5 U.S.C. § 552a(e)(4) about the system of records DOJ is creating;

2) Whether DOJ has transferred or plans to transfer any state voter data collected from any State outside DOJ's Voting Rights Section, including to any other law enforcement agencies, and your basis for believing that such transfer complies with the Privacy Act;

3) Why highly sensitive information, including voters' drivers' license numbers and social security numbers, is necessary to assess Washington's general program for voter list maintenance, how precisely DOJ would use such information to assess the State's list maintenance processes, and why that evaluation cannot be accomplished with voters' names, addresses, and years of birth.

4) How the system of records DOJ is establishing complies with the prohibition in 5 U.S.C. § 552a(e)(7) on maintaining records "describing how any individual exercises rights guaranteed by the First Amendment," considering that voter registration lists include party affiliation for some states and voter participation history; and

5) What, if any, measures DOJ is taking to ensure the new system of records will be

[2] The Trump Administration Wants Your Voter Registration Data. Why? - Democracy Docket

maintained with "such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination." 5 U.S.C. § 552a(e)(5).

As an elected state official, I have taken an oath to obey the United States Constitution. The Constitution is clear about the power to regulate elections — the power is vested in state governments, subject only to alteration by Congress. Nowhere does the Constitution give the President or the Executive Branch independent power to control how States regulate elections or to force States to surrender their voters' highly sensitive personal information. My obligation is to support and defend the Constitution of the United States and the Constitution of the State of Washington and ensure election laws are being enforced. In addition to ensuring that Washington's voter registration list complies with all applicable federal and state laws, my obligation also includes protecting Washington voters from unnecessary and illegitimate intrusions on their privacy.

In light of these concerns, I am providing a link to where you can request a copy of the publicly available voter registration list. I welcome clarification of your authority to access confidential voter information.

Regards,

Steve R Hobbs

Steve Hobbs
Washington Secretary of State