Stacey Leyton (SBN 203827)
Barbara J. Chisholm (SBN 224656)
Danielle Leonard (SBN 218201)
Connie K. Chan (SBN 284230)
Colin Clemente Jones (SBN 354301)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
(415) 421-7151
sleyton@altber.com
bchisholm@altber.com
dleonard@altber.com
cchan@altber.com
cjones@altber.com

*Attorneys for Plaintiffs*

Norman L. Eisen*
Tianna Mays*
Pooja Chaudhuri (SBN 314847)
Jacob Kovacs-Goodman*
Elizabeth Westphal*
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Ave. SE #15180
Washington, DC 20003 (202) 601-8678
(202) 601-8678
norman@democracydefenders.org
tianna@democracydefenders.org
pooja@democracydefenders.org
jacob@democracydefenders.org
elizabeth-contract@democracydefenders

*Attorneys for Plaintiffs*

* *Pro Hac Vice application forthcoming*

[Additional counsel and affiliations listed on signature page]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERVICE EMPLOYEES INTERNATIONAL UNION, AFL-CIO, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE, et al.,<br><br>Defendants | Case No. 5:26-cv-12800-TLT<br><br>**EXHIBITS 21-43 TO DECLARATION OF ELIZABETH EVERS IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER** |

# Exhibit 21

**U.S. Department of Justice**

950 Pennsylvania Ave, NW
(202) 514-2000
Washington, DC 20530

October 13, 2026

Shirley N. Weber, Ph.D.
California Secretary of State
1500 11th Street
Sacramento, CA 95814

Via legalsupport@sos.ca.gov

Re: Noncitizen Voting in the 2026 Federal Election

Dear Secretary Weber:

As you are aware, federal law prohibits noncitizens from voting in federal elections. *See* 18 U.S.C. § 611. The Supreme Court has also recognized that States "may not induce, encourage or promote private persons to accomplish what it is constitutionally forbidden to accomplish." *Norwood v. Harrison*, 413 U.S. 455, 465 (1973) (citation omitted). I write to seek your help to protect the integrity of the ongoing federal election.

On July 16, Secretary Mullin made you aware that there are likely numerous noncitizens registered to vote in the federal election in California. He then asked for your cooperation to ensure the accuracy of those findings and to prevent noncitizen votes from diluting citizen votes. Your response the following week did not refute that noncitizens are registered to vote in California. Nor did it contest that noncitizens receive ballots through California's vote-by-mail regime, which automatically sends voting materials to "every registered voter." 2021 Cal. Stat. ch. 312 (codified at Cal. Elec. Code § 3000.5). Instead, you asked for more information. I am now providing you additional details.

Earlier today, we provided the Los Angeles County Registrar-Recorder / County Clerk with a password-protected thumb drive with a list of names of people the Federal Government believes are likely noncitizens who were sent a vote-by-mail ballot to participate in the November 2026 federal election. We can also provide you a digital copy of the list if you send us a secure email address.

We request that you review the list within 48 hours to determine whether any citizens are listed. For individuals whom you cannot independently confirm citizenship status, we request that you immediately instruct the appropriate elections official to segregate—not cancel—those individuals' vote-by-mail ballots until their citizenship status can be determined. If individuals on the list have not yet been sent a

vote-by-mail ballot, take all immediate and reasonable steps to not provide a ballot to those individuals until we confirm their citizenship status. If a ballot for any individual on the list has been returned, instruct the appropriate elections official to not verify the signature and/or tabulate the ballot until citizenship can be determined. This process will protect American citizens' votes while preventing noncitizens from participating in the federal election in violation of federal law.

The United States hopes that you share our commitment to ensure that only American citizens participate in our federal elections. Allowing noncitizens to vote cancels citizen votes. States are responsible for voter registration, and the Federal Government is responsible for maintaining immigration records to enable verification of citizenship. Working together, we can more effectively protect against voter dilution and promote election integrity.

Please ensure that the process described above to prevent noncitizens from voting in the federal election is implemented by contacting election@hq.dhs.gov by October 15 at noon EST. If you cannot implement this process by then, given the ongoing federal election, the United States will have no choice but to seek emergency relief.

We look forward to our collaboration as we work together to ensure free, fair and accurate elections.

Sincerely,

R. Trent McCotter
Acting Deputy Attorney General
United States Department of Justice

cc:

Bilal A. Essayli
First Assistant U.S. Attorney
Central District of California

# Exhibit 22

Shirley N. Weber, Ph.D.
California Secretary of State
1500 11th Street | Sacramento, CA 95814 | Tel 916.653.7244 | Fax 916.653.4620 | www.sos.ca.gov

R. Trent McCotter
Acting Deputy Attorney General
United States Department of Justice
950 Pennsylvania Ave, NW
Washington, DC 20530
Trent.McCotter@usdoj.gov

Via electronic mail

Re: October 13, 2026 Letter

Dear Mr. McCotter:

I am in receipt of your letter dated October 13, 2026, in which you allege that an unspecified number of individuals that "the Federal Government believes are likely noncitizens" were mailed a ballot for the November 2026 General Election. As California's chief elections official, I write to set the record straight.

On July 16, 2026, my office received a letter from DHS Secretary Markwayne Mullin alleging that over 190,000 registered voters in California "may be" non-citizens, with no further detail. I responded on July 23 expressing serious doubts about the accuracy of the claim and requested information about the underlying data and methodology so my office could attempt to verify DHS's vague and unsubstantiated allegations. I also reminded Secretary Mullin that federal law prohibits systematically cancelling voter registrations for the General Election beginning August 5, 2026. *See* 52 U.S.C. § 20507(c)(2)(A). In response, DHS officials refused to provide any information in writing and requested a call. When my office asked for the information in writing to ensure an accurate record, DHS officials insisted on a meeting and declined to address our concerns on paper. To date, DHS still has not provided any information about the underlying data or methodology requested by my office.

Your October 13 letter repeats Secretary Mullin's vague allegation that non-citizens may be registered to vote in California. You then insist my office "immediately instruct the appropriate elections official to segregate" mail ballots and "not [to] verify the signature or tabulate the ballot" of any of these individuals. And you threaten to seek "emergency relief" if we do not "implement this process" by "October 15 at noon EST."

As you fully acknowledge, ballots have already been delivered to voters and voting is well underway. Despite this, and with less than three weeks before the election, you are demanding unprecedented measures that threaten thousands of Californians' right to vote, based on unverifiable information or methodology that you still fail to explain or provide. Your letter states that you presented the Los Angeles County Registrar-Recorder/County Clerk with a list of individuals that the federal government "believes" are "likely" non-citizens. I am informed that

the list contains the names of approximately 20,000 individuals statewide (a fraction of Secretary Mullin's initial allegation) and lacks both the detail and function to be of any investigative use. Nowhere has the federal government clarified the basis for suspecting—not even confirming with any level of certainty—the listed individuals are non-citizens. And as one court recently noted, the federal government's citizenship records are "known to be unreliable." *Common Cause, et al. v. Department of Justice, et al.*, No. 1:26-cv-01352, 2026 WL 3033772, at *8 (D.D.C. Oct. 9, 2026). To give just one example, in a similar incident in the State of Nevada, DHS initially alleged that Nevada's voter roll included nearly 16,000 potential non-citizens. However, after working with the State of Nevada, DHS officials failed to establish that a single non-citizen was on the voter rolls.[1]

More remarkable still, despite failing to send the list of alleged non-citizens to my office, you demand that we request transmittal of the list, review and confirm the citizenship status of each of the approximately 20,000 individuals on the list on the eve of an election and within a mere 48 hours. This is an emergency of the DOJ's creation.

California's election administration will continue to be governed by applicable federal and state law, not by unsubstantiated claims and outrageous demands.

California administers its elections in full compliance with federal election law. For instance, in accordance with the National Voter Registration Act of 1993 (NVRA), 52 U.S.C. § 20501 *et seq.*, and Help America Vote Act of 2002 (HAVA), 52 U.S.C. § 20901 *et seq.*, California requires all voter registration applicants to attest to U.S. citizenship under oath, under penalty of perjury and by signature, Cal. Elec. Code §§ 2101, 2102(c), 2111, 2150(a)(1), 2264(a)(3), (b), and maintains robust voter list maintenance processes. *See, e.g.*, Cal Elec. Code § 2200 *et seq.*; Cal. Code Regs. tit. 2, §§ 19060–62, 19079, 19080–81, 20070, 20075, 20076. California law further provides that a person "shall not be registered" unless they are "a United States citizen." Cal. Elec. Code §§ 2100, 2101. These requirements satisfy every federal standard for establishing voters' citizenship and managing voter rolls. *See, e.g.*, 52 U.S.C. §§ 20505(a), 20507, 20508(b)(2), 21083(b)(4). They represent just a few of California's many robust safeguards for ensuring that only citizens register to vote and that any non-eligible registrants are removed from the State's voter rolls.

The extraordinary measures you demand are contrary to both federal and state law. Most critically, they strike at affected voters' "constitutionally protected right to vote . . . and to have their vote counted." *Reynolds v. Sims*, 377 U.S. 533, 537 (1964). Withholding ballots from some duly registered voters and segregating and refusing to tabulate voted ballots submitted by others, is an unprecedented suspension—and even denial—of voting rights. For the same reason, these measures threaten to violate the Voting Rights Act of 1965. *See* 52 U.S.C. § 10307(a) (officials shall not refuse to allow qualified voters to vote or willfully refuse to tabulate and report their votes). Treating the thousands of voters on DOJ's list as ineligible until proven otherwise also violates federal law prohibiting states from "systematically remov[ing] the names of ineligible voters from the official list of eligible voters" in the 90-day quiet period before a federal election. *Id.* § 20507(c)(2).

---

[1] Nick Corasaniti, *From 16,000 to 185 to Zero: Trump's Claims of Illegal Voting in Nevada Fizzle*, N.Y. Times (Sept. 24, 2026), https://www.nytimes.com/2026/09/24/us/politics/nevada-voters-homeland-security-trump.html.

The measures you demand also violate state law. In California, "[n]o right is more precious" than voting. *Canaan v. Abdelnour*, 40 Cal.3d 703, 714 (Cal. 1985). California's Constitution provides that eligible voters are entitled to vote and "have that vote counted." Cal. Const. art. II, § 2. Elsewhere, state law affirms that Californians "have the right to cast a ballot if you are a valid registered voter." Cal. Elec. Code, § 2300(a)(1)(A); *see also id.* § 2000(a). To facilitate the right to vote, a mail ballot "shall be available to any registered voter," *id.* § 3003, and local elections officials must mail those ballots to registered voters, *id.* § 3000.5(a). Once returned in accordance with state law, mail ballots must be tabulated like any other ballot. *See id.* § 15109. These obligations cannot be reconciled with your demand that elections officials arbitrarily deny registered voters mail ballots and refrain from tabulating ballots already issued.

Finally, I am concerned that your letter violates an order entered by the U.S. District Court for the District of Columbia on October 9, 2026, in *Common Cause, et al. v. U.S. Department of Justice, et al.*, Case No. 1:26-cv-01352-SLS. In that order, the court vacated the DOJ's policy of, among other things, comparing state voter roll information "against a federal database to identify purportedly ineligible voters," in collaboration with DHS, "and demanding that states remove voters from their rolls based on the results of those comparisons." It appears that your letter may utilize a policy that a federal court has already deemed unlawful.

California's elections officials work every day to ensure that only eligible voters are registered, to maintain accurate voter rolls, and to guarantee that no eligible voter is denied the opportunity to vote. If the federal government possesses proof that certain registered voters in California are ineligible, we will welcome the opportunity to review that evidence and any supporting data or methodology. In that event, once we have had an opportunity to review that information, we would take the appropriate steps in compliance with federal and state law. However, I will not disenfranchise thousands of Californians—or order any county elections official to do so—based solely upon an unsupported and likely inaccurate "belie[f]" that certain voters are "likely" non-citizens.

Sincerely,

Shirley N. Weber, Ph.D.
California Secretary of State

# Exhibit 23

**U.S. Department of Justice**

950 Pennsylvania Ave, NW
Washington, DC 20530

(202) 514-2000

October 16, 2026

Peter M. Bollinger
Assistant County Counsel
Los Angeles County Counsel's Office

Re: Response to October 15, 2026 Letter

Mr. Bollinger:

The Department of Justice has reviewed your October 15 letter responding to the federal investigative materials provided to the Los Angeles County Registrar-Recorder/County Clerk ("County ROV"). I write to address several legally untenable assertions and to make unmistakably clear the legal implications for violating 18 U.S.C. § 611.

Your letter asserts that the County ROV is "legally prohibited" from taking even minimal steps—such as temporarily segregating ballots—after receiving credible federal evidence identifying tens of thousands of individuals suspected to be noncitizens. That position is incorrect as a matter of federal law and places officials in both the California Secretary of State ("SOS") and County ROV offices at risk of knowingly facilitating violations of federal criminal statutes.

On October 13, the Department hand delivered a password-protected dataset identifying more than 20,000 individuals who federal agencies reasonably believe are likely noncitizens registered to vote in California. This list was developed through a multilayered, multiagency investigative methodology that relied upon internal immigration records, data matching, supervisory verification procedures, and more.

The legal consequences for either facilitating or ignoring a federal crime are significant. Noncitizen voting in a federal election is a federal crime—and knowingly facilitating such conduct is equally unlawful. Under 18 U.S.C. § 611(a), noncitizens are prohibited from voting in any election involving federal offices. Under 18 U.S.C. § 2, anyone who aids, abets, counsels, induces, or procures the commission of a federal offense is equally liable. If persons knowingly tabulate ballots cast by individuals identified by federal agencies as noncitizens, they risk becoming aiders and abettors to a federal crime. Your assertion that ballots must be counted simply because California's registration system relies on self-attestation does not relieve election officials of their obligations under federal law ***when they are on actual notice of noncitizen voting.*** Nor can state procedures supersede federal criminal statutes.

Your argument that the County is "not authorized" to pause or segregate ballots because California relies on attestation-based registration is immaterial. Section 611 does not excuse unlawful voting simply because a State employs a permissive registration method. The Department has not asked the County to adjudicate immigration status; it has asked the County to temporarily set aside ballots from individuals whose eligibility is credibly in question—a standard election-administration practice implemented nationwide.

Likewise, your reliance on the National Voter Registration Act's ("NVRA's") "quiet period" is misplaced. The NVRA's 90-day limitation applies only to systematic list-maintenance programs—not to targeted, individualized evidence of unlawful voting identified by federal law enforcement. The Department has not requested a purge, cancellation of registrations, or any programmatic action. We requested only temporary ballot segregation pending citizenship verification. Invoking the NVRA to justify counting ballots unlawfully cast is both legally incorrect and operationally irresponsible.

Additionally, the administrative burdens, timing constraints, or the fact that the investigative list includes individuals residing outside Los Angeles County do not permit the County to knowingly tabulate ballots that federal law prohibits. Once the United States provides credible evidence that certain ballots may be unlawful to count, election officials may not disregard that information because it is inconvenient to process. Administrative difficulty is not a defense to violating federal law or aiding or abetting a federal offense.

The Department strongly urges the County and the SOS to reconsider their positions before taking actions that risk significant federal scrutiny and legal exposure.

Sincerely,

/s/ __________
Trent McCotter
Acting Deputy Attorney General
United States Department of Justice

cc: Shirley N. Weber, Ph.D, California Secretary of State
Dean C. Logan, Los Angeles County Registrar-Recorder/County Clerk

# Exhibit 24



F.A. United States Attorney Bill Essayli
@USAttyEssayli

California on Notice: Federal agencies identified over 20,000 suspected noncitizens registered to vote in California who have already been mailed ballots. Under 18 U.S.C. §§ 611 and 2, officials who knowingly tabulate unlawful ballots risk aiding and abetting a federal offense. @TheJusticeDept urges the County and the Secretary of State to temporarily segregate the flagged ballots pending citizenship verification or face legal consequences.

U.S. Department of Justice

950 Pennsylvania Ave, NW
Washington, DC 20530

(202) 514-2000

October 16, 2026

Peter M. Bollinger
Assistant County Counsel
Los Angeles County Counsel's Office

Re: Response to October 15, 2026 Letter

Mr. Bollinger:

The Department of Justice has reviewed your October 15 letter responding to the federal investigative materials provided to the Los Angeles County Registrar-Recorder/County Clerk ("County ROV"). I write to address several legally untenable assertions and to make unmistakably clear the legal implications for violating 18 U.S.C. § 611.

Your letter asserts that the County ROV is "legally prohibited" from taking even minimal steps—such as temporarily segregating ballots—after receiving credible federal evidence identifying tens of thousands of individuals suspected to be noncitizens. That position is incorrect as a matter of federal law and places officials in both the California Secretary of State ("SOS") and County ROV offices at risk of knowingly facilitating violations of federal criminal statutes.

On October 13, the Department hand delivered a password-protected dataset identifying more than 20,000 individuals who federal agencies reasonably believe are likely noncitizens registered to vote in California. This list was developed through a multilayered, multiagency investigative methodology that relied upon internal immigration records, data matching, supervisory verification procedures, and more.

The legal consequences for either facilitating or ignoring a federal crime are significant. Noncitizen voting in a federal election is a federal crime—and knowingly facilitating such conduct is equally unlawful. Under 18 U.S.C. § 611(a), noncitizens are prohibited from voting in any election involving federal offices. Under 18 U.S.C. § 2, anyone who aids, abets, counsels, induces, or procures the commission of a federal offense is equally liable. If persons knowingly tabulate ballots cast by individuals identified by federal agencies as noncitizens, they risk becoming aiders and abettors to a federal crime. Your assertion that ballots must be counted simply because California's registration system relies on self-attestation does not relieve election officials of their obligations under federal law ***when they are on actual notice of noncitizen voting.*** Nor can state procedures supersede federal criminal statutes.

Your argument that the County is "not authorized" to pause or segregate ballots because California relies on attestation-based registration is immaterial. Section 611 does not excuse unlawful voting simply because a State employs a permissive registration method. The Department has not asked the County to adjudicate immigration status; it has asked the County to temporarily set aside ballots from individuals whose eligibility is credibly in question—a standard election-administration practice implemented nationwide.

Likewise, your reliance on the National Voter Registration Act's ("NVRA's") "quiet period" is misplaced. The NV  's 90-day limitation applies only to systematic list-maintenance programs—not to targeted, individualized evidence of unlawful voting identified by federal law enforcement. The Department has not requested a purge, cancellation of registrations, or any programmatic action. We requested only temporary ballot segregation pending citizenship verification. Invoking the NVRA to justify counting ballots unlawfully cast is both legally incorrect and operationally irresponsible.

Additionally, the administrative burdens, timing constraints, or the fact that the investigative list includes individuals residing outside Los Angeles County do not permit the County to knowingly tabulate ballots that federal law prohibits. Once the United States provides credible evidence that certain ballots may be unlawful to count, election officials may not disregard that information because it is inconvenient to process. Administrative difficulty is not a defense to violating federal law or aiding or abetting a federal offense.

The Department strongly urges the County and the SOS to reconsider their positions before taking actions that risk significant federal scrutiny and legal exposure.

Sincerely,

/s/
[illegible]
Acting Deputy Attorney General
United States Department of Justice

cc: Shirley N. Weber, Ph.D. California Secretary of State
Dean C. Logan, Los Angeles County Registrar-Recorder/County Clerk

4:18 PM · Oct 16, 2026 · 51.1K Views

207 851 2.8K 93

# Exhibit 25

**Acting Deputy Attorney General Trent McCotter**
@PADAGMcCotter

California can't keep burying its head in the sand when it comes to noncitizens voting. Willful blindness is no excuse. Proud to partner with @USAttyEssayli on this important case.

**F.A. United States Att...**
@USAttyEssayli

X.com

California on Notice: Federal agencies identified over 20,000 suspected noncitizens registered to vote in California who have already been mailed ballots. Under 18 U.S.C. §§ 611 and 2, officials who knowingly tabulate unlawful ballots risk aiding and abetting a federal offense. @TheJusticeDept urges the County and the Secretary of State to temporarily segregate the flagged ballots pending citizenship verification or face legal consequences.



5:02 PM · Oct 16, 2026 · **45.7K** Views

249 582 2.2K 34

# Exhibit 26

**Donald J. Trump**
@realDonaldTrump

They will all go to jail for a long period of time!!!

**Matt Finn**
@MattFinnFNC

X.com

NEW: In a new letter to LA County, the DOJ warns that if the County allows ballot processors to tabulate the votes of alleged non-citizens, they are opening themself to federal criminal prosecution.

"If persons knowingly tabulate ballots cast by individuals identified by federal agencies as noncitizens, they risk becoming aiders and abettors to a federal crime."

Donald J. Trump
@realDonaldTrump · Oct 16

U.S. Department of Justice

950 Pennsylvania Ave, NW
Washington, DC 20530

(202) 514-2000

October 16, 2026

Peter M. Bollinger
Assistant County Counsel
Los Angeles County Counsel's Office

Re: Response to October 15, 2026 Letter

Mr. Bollinger:

The Department of Justice has reviewed your October 15 letter responding to the federal investigative materials provided to the Los Angeles County Registrar-Recorder/County Clerk ("County ROV"). I write to address several legally untenable assertions and to make unmistakably clear the legal implications for violating 18 U.S.C. § 611.

Your letter asserts that the County ROV is "legally prohibited" from taking even minimal steps—such as temporarily segregating ballots—after receiving credible federal evidence identifying tens of thousands of individuals suspected to be noncitizens. That position is incorrect as a matter of federal law and places officials in both the California Secretary of State ("SOS") and County ROV offices at risk of knowingly facilitating violations of federal criminal statutes.

On October 13, the Department hand delivered a password-protected dataset identifying more than 20,000 individuals who federal agencies reasonably believe are likely noncitizens registered to vote in California. This list was developed through a multilayered, multiagency investigative methodology that relied upon internal immigration records, data matching, supervisory verification procedures, and more.

The legal consequences for either facilitating or ignoring a federal crime are significant. Noncitizen voting in a federal election is a federal crime—and knowingly facilitating such conduct is equally unlawful. Under 18 U.S.C. § 611(a), noncitizens are prohibited from voting in any election involving federal offices. Under 18 U.S.C. § 2, anyone who aids, abets, counsels, induces, or procures the commission of a federal offense is equally liable. If persons knowingly tabulate ballots cast by individuals identified by federal agencies as noncitizens, they risk becoming aiders and abettors to a federal crime. Your assertion that ballots must be counted simply because California's registration system relies on self-attestation does not relieve election officials of their obligations under federal law ***when they are on actual notice of noncitizen voting.*** Nor can state procedures supersede federal criminal statutes.

Your argument that the County is "not authorized" to pause or segregate ballots because California relies on attestation-based registration is immaterial. Section 611 does not excuse unlawful voting simply because a State employs a permissive registration method. The Department has not asked the County to adjudicate immigration status; it has asked the County to temporarily set aside ballots from individuals whose eligibility is credibly in question—a standard election-administration practice implemented nationwide.

Likewise, your reliance on the National Voter Registration Act's ("NVRA's") "quiet period" is misplaced. The NV 's 90-day limitation applies only to systematic list-maintenance programs—not to targeted, individualized evidence of unlawful voting identified by federal law enforcement. The Department has not requested a purge, cancellation of registrations, or any programmatic action. We requested only temporary ballot segregation pending citizenship verification. Invoking the NVRA to justify counting ballots unlawfully cast is both legally incorrect and operationally irresponsible.

Additionally, the administrative burdens, timing constraints, or the fact that



the investigative list includes individuals residing outside Los Angeles County do not permit the County to knowingly tabulate ballots that federal law prohibits. Once the United States provides credible evidence that certain ballots may be unlawful to count, election officials may not disregard that information because it is inconvenient to process. Administrative difficulty is not a defense to violating federal law or aiding or abetting a federal offense.

The Department strongly urges the County and the SOS to reconsider their positions before taking actions that risk significant federal scrutiny and legal exposure.

Sincerely,

/s/
Trent McCotter
Acting Deputy Attorney General
United States Department of Justice

# Exhibit 27

2026 | LIVE Updates 11m ago | Polls | The Race for Congress | Early Vote Tracker | When to Vote in Your State | Ask Us Anything | Primary Results

ADVERTISEMENT

Start Chatting 1:1 in Minutes
An Expert Will Solve it in Minutes. Ask a Question, Get a Resolution ASAP.
JustAnswer
Open

# *California Says D.O.J. System for Identifying Noncitizens Is Sloppy*

State and local officials said that they received thousands of names lacking key identifying information, and that many of the names were paired with addresses over which they had no jurisdiction.

Listen · 7:10 min | Share full article



Election Day for the primary in Huntington Beach, Calif., in June. Gabriela Bhaskar/The New York Times




**By Shawn Hubler and Nicholas Nehamas**
Shawn Hubler reported from Los Angeles, and Nicholas Nehamas from Washington.

Oct. 16, 2026

California election officials looking into Trump administration demands to verify the citizenship or block the votes of suspected noncitizens said on Friday that the government had sent them lists so sloppily compiled, and on such short notice, that it was difficult, if not impossible, to comply.

Officials said that they received thousands of names lacking critical identifying information like Social Security numbers, and that many of the names were paired with California addresses over which they had no jurisdiction.

"It was basically a data dump," said Mike Sanchez, a spokesman for Los Angeles County's registrar's office.

The method by which the federal government transmitted the list — a thumb drive with a sticky note containing a password — also initially threatened the security of voter rolls, and made elections officials reluctant to use it, Mr. Sanchez said.

ADVERTISEMENT



**Estate Sale Liquidation**

Senior Downsizing Experts for families realtors & probate attorneys

OPEN

The government later sent a spreadsheet that was an unsubstantiated jumble, he said.

A Justice Department spokeswoman did not immediately respond to a request for comment.

The top federal prosecutor in Los Angeles, Bill Essayli, defended the government's demands, saying that the names had been "confirmed from a review of federal databases."

**Editors' Picks**

**Tiny Love Stories: 'Turn Off That Dirge!'**

“The data has been provided to California, and they are free to check the work,” he posted on X on Friday. “But that suggests California is actually interested in complying with federal election laws.”

The complaints from California officials follow a lawsuit filed Thursday by the Trump administration seeking to temporarily pre-empt California, a heavily Democratic state, from counting mail ballots submitted by people it says may not be U.S. citizens, and are thus ineligible to vote in the midterm elections on Nov. 3. The suit names the top voting official in Los Angeles County as well.

The administration has conducted a series of escalating — and largely unsuccessful — legal fights with election officials across the country, aiming to demonstrate a pattern of large-scale illegal voting in U.S. elections. The federal government, by law, plays a limited role in U.S. elections, which state and local authorities supervise and handle.

ADVERTISEMENT



But the Trump administration has pushed to assume far greater authority over the management of state voter rolls, basing its arguments on allegations of mass voting by noncitizens, despite evidence that it is very rare.

Reviews by election officials and criminal investigators have found small numbers of people voting illegally in each election cycle, but not at anything approaching an election-determining scale. And previous claims by the administration about large numbers of noncitizens voting in states like Nevada have collapsed when scrutinized.

**Get updates when new midterm election polls are added to our poll trackers.** When new polling data drops we’ll send an update straight to your inbox. Get it sent to your inbox.

Big Izakaya Energy Comes to SoHo

‘Sigma’ Is Only the Tip of an Inane Male-Hierarchy Iceberg

PAID POST: IWC Ingenieur
The Timeless Timepiece

The suit filed this week involves a court order being sought by the Justice Department to prevent the counting of votes by about 20,000 people identified by the Department of Homeland Security "until their citizenship status can be determined." The roster is a minute fraction of the more than 23 million registered voters in the state, where voting is already underway.

The lawsuit was filed two days after prosecutors wrote to the California secretary of state, Shirley Weber, and Los Angeles County's top election official, Dean Logan, demanding that they verify the citizenship of the people on the list within 48 hours or prevent their votes from being counted. California officials called that an impossible timeline.

Ms. Weber responded that the demands and deadline "threaten thousands of Californians' right to vote," that they were "based on unverifiable information" and that the federal government had offered no basis for suspecting that the people on the list were noncitizens and no methodology for its assumptions.

ADVERTISEMENT




She added that the list, which is drawn from across the state, was not even sent to her office, but only to Los Angeles County, which has no jurisdiction over voters in the state's 57 other counties.

In court filings, the Justice Department laid out how the Trump administration compiled the California list by comparing a public, commercially available version of the state's voter roll to federal immigration records. They also state that the government used unnamed "third-party software" to help.

The filings describe a process that has led to mistakes in other states, in part because public voter rolls do not include Social Security numbers or similar unique identifiers.

Also, federal immigration records can be outdated and do not necessarily capture when immigrants become citizens. And a Homeland Security Department whistle-blower said criminal investigators had sometimes reviewed the cases of alleged noncitizen voters in as little as 12 minutes as part of a wider push.

A Department of Homeland Security spokesperson on Friday defended its methods, saying federal officials had used multiple data sources in addition to the public voter data they pulled to further verify the identity of registrants and eliminate false positives. The additional data included government data and "commercial third-party data," according to the spokesperson. The spokesperson also denied that the agency had used third-party software, contradicting what the Justice Department said.

ADVERTISEMENT




Rob Bonta, the California attorney general, said the state would not comply with the demands, but rather would respond in court. Gov. Gavin Newsom called the lawsuit "a sad, desperate attempt by Trump to use his politicized Justice Department to try to suppress California voters just three weeks before Election Day."

In Los Angeles County, voting officials said they had started to examine an Excel spreadsheet federal prosecutors transmitted later with what appeared to be the same list of more than 20,000 names that was said to be on thumb drive.

Mr. Sanchez said the list was from all over the state, not just Los Angeles County, "and there was no sortation by county, city, ZIP code or source verification."

That spreadsheet, he said, is being examined by county officials to determine how many people on it, if any, are registered voters in Los Angeles. The Justice Department, he added, "made no attempt to engage, other than dropping off the letter" less than 48 hours before the response deadline, and then filing the lawsuit a day after sending the spreadsheet.

"The message we're trying to put out is, we don't want this to be a distraction or deter people from voting," Mr. Logan, the Los Angeles County registrar-recorder, said in an interview.

The government's demands, he added, seem to be "largely performative, and a lot of legal questions remain up in the air that we believe will be best addressed through the litigation. Our focus is in conducting a fair, accurate and transparent election over the next 18 days."

Devlin Barrett and Madeleine Ngo contributed reporting.

**Shawn Hubler** is The Times's Los Angeles bureau chief, reporting on the news, trends and personalities of Southern California.

**Nicholas Nehamas** is a Washington correspondent for The Times, focusing on the Trump administration and its efforts to transform the federal government.

A version of this article appears in print on Oct. 19, 2026, Section A, Page 13 of the New York edition with the headline: D.O.J. List of Names Is Missing Details, California Says. Order Reprints | Today's Paper | Subscribe

See more on: U.S. Politics, U.S. Justice Department, Donald Trump

Share full article

## More on California

- **The Rise of Nithya Raman:** The Democratic Socialist running for Los Angeles mayor has drawn comparisons to Mayor Zohran Mamdani in New York. She has mounted a strong challenge to the incumbent, Karen Bass.
- **Billionaire's Fight Wealth Tax:** Eighty or so donors have provided more than $333 million to Building a Better California, state records show, in an effort to fight Proposition 40.
- **Berkeley Public Bank:** Berkeley voters will consider a ballot measure that would tax property owners to create a public bank that would offer low-interest loans to community projects in the East Bay region of Northern California.
- **California Ballot Case:** By a 2-1 vote, a federal appeals court panel denied the Trump administration's request that it immediately order the state to set aside 20,000 mail-in ballots.

# Exhibit 28

archive.today
webpage capture
Saved from https://www.reuters.com/world/us/trump-threatens-california-officials-with-i
search
17 Oct 2026 13:26:14 UTC
no other snapshots from this url
All snapshots from host www.reuters.com
Webpage Screenshot
share download .zip report bug or abuse Buy me a coffee

Exclusive news, data and analytics for financial market professionals LSEG



# Trump threatens California officials with imprisonment over stance on mail ballots

By Jasper Ward

October 17, 2026 2:15 AM UTC · Updated ago

Aa




A voter drops off their election ballots at a drive-through ballot drop box outside the registrar of voters' office during the California primary election in San Diego, California, U.S., June... Purchase Licensing Rights Read more

Summary

- Warnings come less than three weeks before US midterm elections
- Justice Department suing to block state from counting ballots from alleged noncitizens
- Voting by noncitizens remains uncommon, according to studies

WASHINGTON, Oct 16 (Reuters) - The US Justice Department on Friday warned Los Angeles County and California election officials they could be liable as abettors of a federal crime if they count mail ballots returned by more than 20,000 people the Trump administration says are probably noncitizens.

The warning to the Los Angeles County Assistant Counsel Peter Bollinger came less than three weeks before the November 3 midterm elections and days after the department gave California 48 hours to review a list of alleged noncitizen voters or face legal action. On Thursday, the Justice Department sued California to block the state from counting the ballots.

Sign up here.

"Noncitizen voting in a federal election is a federal crime — and knowingly facilitating such conduct is equally unlawful," Trent McCotter, the acting US deputy attorney general, wrote in a letter released on Friday. McCotter called on the county and California's secretary of state to reconsider their refusal to take steps that the Trump administration argues are needed to deter voter fraud.

US President Donald Trump shared the letter on Truth Social with the comment: "They will all go to jail for a long period of time!!!"

California Secretary of State Shirley Weber and Los Angeles County Registrar-Recorder Dean Logan were copied on McCotter's letter.

The county's counsel office did not immediately respond to a request for comment.

Weber's office referred Reuters to an earlier statement in which she said the Justice Department's attempts to "unlawfully gain access to states' protected voter data and purge voter rolls serve only to cause chaos and fuel public distrust in our elections."

An earlier letter that McCotter sent on Tuesday to Weber and Logan said the Justice Department provided officials in Los Angeles County with a "password-protected thumb drive" with the names of people the federal government "believes are likely noncitizens" that were sent mail-in ballots from California.

Los Angeles County Counsel Dawyn R. Harrison said on Thursday the county cannot comply with the Justice Department's requests because the Trump administration did not explain how the list was made. Friday's letter from McCotter said the Justice Department used "internal immigration records" and data matching.

In July, Trump said his administration had uncovered evidence of more than 275,000 non-citizens registered to vote, but it was not clear how many had actually voted.

In some previous cases, systems intended to verify citizenship have mistakenly flagged some naturalized US citizens as noncitizens. Studies have found that noncitizens casting actual ballots is exceedingly uncommon.

Since July, the Justice Department has ramped up prosecutions of people accused of illegally voting while not holding US citizenship. The White House has also pushed federal agencies to accelerate their review of at least 47 state voter rolls obtained by the Department of Homeland Security, according to an internal email seen by Reuters.

Reporting by Jasper Ward in Washington; Editing by Sergio Non and Tom Hogue

Our Standards: The Thomson Reuters Trust Principles.

Suggested Topics: United States | Judiciary | U.S. Election Security

Purchase Licensing Rights

Jasper Ward
Thomson Reuters

Jasper Ward is a breaking news reporter in Washington. She primarily covers national affairs and U.S. politics. Jasper was previously based in The Bahamas where she covered the collapse of FTX and the subsequent arrest of its founder Sam Bankman-Fried. She was a part of the Reuters team that won the Gerald Loeb Award for breaking news for its FTX coverage.

## Read Next

United States
Trump faults aides as Republican midterm prospects dim

Sustainability
Exotic species appear off California thanks to an unusually strong El Niño

World
White House fires Katie Zacharia after less than a week

Unitec
Teacl
parer
Orege

# Exhibit 29

ADVERTISEMENT

AD NERDWALLET




Best High Yield Savings Accts

Find the best online savings account for your needs. Compare & save more.

OPEN

# *Justice Dept. Demands That California Counties Help Identify Noncitizen Voters*

Election officials across the state received letters from the agency saying if they fail to comply, they "risk significant federal scrutiny."

Listen · 5:55 min

Share full article



A ballot processing center in Industry, Calif., last year. California elections rely heavily on mail voting. Philip Cheung for The New York Times




By Laurel Rosenhall and Shawn Hubler

Oct. 23, 2026

**See more of our coverage in your search results.**
Add The New York Times as a preferred source on Google ›

The Department of Justice sent letters on Friday to local election officials across California demanding that they help identify potential noncitizens on their voter rolls and set aside their ballots.

The letter — sent to every county in the state, according to a spokesman for the U.S. attorney's office in Los Angeles — also said local officials would "risk significant federal scrutiny" if they failed to comply with the Justice Department's demands.

Dispatched a week and a half before the midterm elections, the threat arrived as the Trump administration has begun a blitz of initiatives aimed at unearthing evidence of noncitizen voting or stalling election processes in states where it has dubiously claimed that large numbers of noncitizens were registered to vote or were regularly voting.

Last week, the Trump administration sued California, a heavily Democratic state, seeking to temporarily pre-empt the counting of more than 20,000 mail ballots sent to people it said were suspected of registering to vote for the Nov. 3 election, even though they were not U.S. citizens. A federal judge has scheduled a hearing next week on the lawsuit, but the Justice Department on Friday filed papers urging an appeals court to decide the issue this weekend.

ADVERTISEMENT



McKenna Audi

California elections rely heavily on mail voting, which President Trump claims is rife with fraud, even though evidence shows only a handful of one-off cases. The Justice Department claims that California's practice of sending a ballot to every registered voter could result in voting by noncitizens who are on the voter rolls even though only American citizens can vote in federal elections.

On Friday, Kiersten Pels, a spokeswoman for the Justice Department, said the agency's request to the local officials is a way to "ensure the most secure election in California history."

In a news conference in Los Angeles on Monday, federal prosecutors framed the Trump administration's extraordinary move as a responsible effort to safeguard the election.

"We don't care who you vote for," said Craig Missakian, the U.S. attorney for California's Northern District. "What we care about is making sure that every legitimate vote is counted, that we ensure a level playing field for all Americans."

California officials, however, have denounced the effort as politically motivated and legally questionable. Critics and judges have said that the Trump administration has generated its lists of names from error-filled data, endangering the rights of eligible voters.

ADVERTISEMENT



McKenna Audi

On Monday, federal prosecutors announced that they had charged 28 of the state's more than 23 million registered voters with allegedly casting ballots illegally in elections. In a separate federal case, a judge in Oakland on Wednesday blocked the Homeland Security Department from carrying out most field operations focused on uncovering voter fraud in nine states, citing issues with the government's methodology for determining who was eligible to vote.

**Get updates when new midterm election polls are added to our poll trackers.** When new polling data drops we'll send an update straight to your inbox. Get it sent to your inbox.

The letter served on Friday in California says it included a list of people who the Justice Department believes are illegally registered to vote. It describes them as a subset of the 20,000 people throughout California whom the agency identified last week as possible noncitizens who may have received ballots.

The local officials have 48 hours to work with the federal government "to identify who on the accompanying list is a citizen and who is not," the letter said.

For those whose "citizenship status cannot be confirmed, we request that you immediately instruct the appropriate elections official to segregate — not cancel — those individuals vote-by-mail ballots until their citizenship status can be determined," the letter said.

Contra Costa County, east of San Francisco, received a letter with an accompanying list of 407 names. But the county will continue to process ballots as normal and has no plans to set any aside, said Dawn Kruger, a spokeswoman for the county's elections department.

ADVERTISEMENT



McKenna Audi

"It's 11 days from Election Day, and this is just not in line with regular precedents," she said.

The head of elections in Santa Cruz County said that she received a list with 81 names and that she was still reviewing the information. A letter to San Bernardino County said its list included 1,133 names.

In rural Inyo County, along the Nevada border, the registrar of voters said the list she was sent included just two people, and neither of them had been issued ballots. Danielle Sexton, the registrar, said her records showed they had never voted anywhere in California.

And in Mendocino County, a rugged stretch on the north coast, the registrar said the list she received was completely wrong.

"It's not our voters that were listed," said Katrina Bartolomie, the Mendocino clerk-recorder. "It's from another county."

In an email sent on Friday to members of the California Association of Clerks and Election Officials, the Los Angeles County registrar, Dean Logan, called the Justice Department dispatch a "posture of intimidation."

ADVERTISEMENT



McKenna Audi

The letter, he wrote, "misrepresents the facts of their own actions, attempts to tarnish the secretary of state and Los Angeles County, and threatens local election officials" days before the election.

But Bill Essayli, the top federal prosecutor in Southern California, said the federal government will enforce the law to ensure that only American citizens vote.

"The letters speak for themselves," he said in a statement. "Any election official who knowingly processes the ballot of a noncitizen is opening themselves to legal jeopardy."

Devlin Barrett contributed reporting.

**Laurel Rosenhall** is a Sacramento-based reporter covering California politics and government for The Times.

**Shawn Hubler** is The Times's Los Angeles bureau chief, reporting on the news, trends and personalities of Southern California.

A version of this article appears in print on Oct. 25, 2026, Section A, Page 21 of the New York edition with the headline: D.O.J. Demands Help Sussing Out Noncitizen Voters. Order Reprints | Today's Paper | Subscribe

See more on: U.S. Justice Department, Donald Trump, U.S. Politics

Share full article

## More on California

- **The Rise of Nithya Raman:** The Democratic Socialist running for Los Angeles mayor has drawn comparisons to Mayor Zohran Mamdani in New York. She has mounted a strong challenge to the incumbent, Karen Bass.
- **Billionaire's Fight Wealth Tax:** Eighty or so donors have provided more than $333 million to Building a Better California, state records show, in an effort to fight Proposition 40.
- **Berkeley Public Bank:** Berkeley voters will consider a ballot measure that would tax property owners to create a public bank that would offer low-interest loans to community projects in the East Bay region of Northern California.
- **California Ballot Case:** By a 2-1 vote, a federal appeals court panel denied the Trump administration's request that it immediately order the state to set aside 20,000 mail-in ballots.

Police Say

Hated by Homeowners, Loved by Chefs: How the Black Walnut Gained Fans and Foes

The Best Cities to Retire in 2026

Hegseth Fires General He Accused of Leaking Information to the News Media

These Patients Struggle With Runaway Bones. Finally There's Hope.

Late Night Teases Trump Over His Invite to Mar-a-Lago

A Sailor Jumped From the U.S.S.

I Can Hear Everything

Ted Bundy Is Linked to 1974 Death

# Exhibit 30

**F.A. United States Attorney Bill Essayli**
@USAttyEssayli

It's simple. California does not verify citizenship status. We did the work for them. We obtained the registered voter list and told them who we believe are noncitizens on their rolls. Knowingly processing noncitizen ballots is a federal crime under 18 U.S.C. §§ 611 and 2. We will hold election officials accountable. No one is above the law.

> **Sara Libby** @SaraLibby · Oct 23
>
> BREAKING: In an escalation from the DOJ, prosecutors sent demand letters to individual registrars across California, giving them 48 hours to sequester the ballots of suspected noncitizen voters. sfchronicle.com/politics/artic...

5:49 PM · Oct 23, 2026 · **237K** Views

570 3.5K 15K 415

# Exhibit 31

**U. S. Department of Justice**

*United States Attorney*
*Eastern District of Washington*
*Thomas S. Foley U. S. Courthouse, Suite 340*
*P. O. Box 1494* *(509) 353-2767*
*Spokane, Washington 99210-1494* *Fax (509) 835-6397*

October 26, 2026

Via Email

The Honorable Steve Hobbs
Secretary of State
PO Box 40220 Olympia, WA 98504-0220
steve.hobbs@sos.wa.gov;
secretaryofstate@sos.wa.gov

Re: Noncitizen Voting in the 2026 Federal Election

Dear Secretary Hobbs,

As you're aware, federal law prohibits noncitizens from voting in federal elections. *See* 18 U.S.C. § 611. The Supreme Court has also recognized that States "may not induce, encourage or promote private persons to accomplish what it is constitutionally forbidden to accomplish." *Norwood v. Harrison,* 413 U.S. 455, 465 (1973) (citation omitted). We're aware of the current litigation and correspondence surrounding Assistant Attorney General Harmeet Dhillon's request for the Washington voter roles – our request here, is separate and apart from that inquiry and litigation, as we seek your assistance to protect the integrity of the ongoing federal election.

Washington law requires the automatic mailing of voting materials to "each active registered voter of the state." Revised Code of Washington §29A.40.010. By law, ballots are to be mailed to "each voter at least eighteen days before each primary or election," and ballots for the 2026 General Election were required to be sent to voters no later than October 15, 2026. Revised Code of Washington §29A.40.070(1). Accordingly, any registered voter in the State of Washington, including noncitizens that receive ballots through Washington's vote-by-mail regime, was required to be sent a ballot no less than seven (7) days ago.

The United States is concerned with the number of noncitizen voters, both enrolled and actively voting in the State of Washington, as allowing noncitizens to vote cancels citizen votes. To combat voting by noncitizens, in violation of 18 U.S.C. § 611, the Department of Homeland Security (DHS) provided our offices a list of names of persons who are noncitizens, who, with a high level of confidence, have voted in elections as recently as the August 2026 Primary elections. Some of these individuals have voted in Washington for over a decade and have voted more than two dozen times. To be clear: through the efforts of our federal law enforcement partners, the individuals identified are or were noncitizens (i.e., they may have subsequently naturalized). Our federal partners further identified that these individuals have, with a high level of confidence, voted. It is the United States' belief that each of these individuals was sent a vote-by-mail ballot from the State of Washington to participate in the November 2026 federal election. The list of the identified individuals is attached to this letter and is comprised of over 400 individuals and over 1,500 total votes.

We advise that we anticipate imminently receiving a second list of individuals believed to be noncitizens who are registered to vote from DHS, which we will transmit ahead of the November 2, 2026, General Election with the request that you follow the protocol listed below.

To help protect the integrity of the 2026 Election our request and expectations are simple:

1. You, or your office, review the list within 24 hours of receipt of this letter to determine whether United States citizens are listed.
2. If a ballot for any individual on the list has been or subsequently is returned, instruct the appropriate elections official to not verify the signature and/or tabulate the ballot until citizenship can be determined.

We believe the requested actions will allow your office to determine whether noncitizens are voting in Washington's elections in violation of State and Federal law. As you noted in your July 7, 2026, letter to William Mohrman, Senior Counsel with the Department of Justice's Civil Rights Division, RCW 29A.04.205 provides the State's obligation and commitment "to protect the integrity of the electoral process." You further invited the Department of Justice to provide "meaningful assistance" to protect election integrity – that is our goal here. Through these efforts, specific individuals were identified, who, with high confidence, should not be registered to vote under Washington law, RCW 29A.08.370. Our request is simple; we ask that your office rectify this issue immediately. We further recognize the obligation county auditors and government agency employees providing voter registration services are under to properly carry out their duties in connection with voter registration pursuant to RCW 29A.84.110. While our offices do not enforce State law, we do make criminal referrals to our state counterparts; nonetheless, we do expect a prompt response from your office by enacting the approach above and with any further actions you deem appropriate to comply with the State or Federal laws cited.

Please ensure that the process described above to prevent noncitizens from voting in the federal election is implemented by contacting election@hq.dhs.gov and copying me at: pete.serrano@usdoj.gov by October 28 at noon PST. If you cannot implement this process by then, given the ongoing federal election, the United States will have no choice but to seek emergency relief.

The United States hopes that you share our commitment to ensure that only American citizens participate in our federal elections. Your assistance in this process will protect American citizens' votes while preventing noncitizens from violating federal law by participating in the federal election. We look forward to our collaboration as we work together to ensure free, fair and accurate elections.

Sincerely,

Charles Neil Floyd
Acting United States Attorney

Pete Serrano
First Assistant United States Attorney

cc: Stuart Holmes
Director of Elections
416 Sid Snyder Ave SW
Olympia, WA 98501
stuart.holmes@sos.wa.gov

# Exhibit 32

Keaton Denlay | County Clerk-Recorder
Hall of Records | Elections Division
155 Nelson Avenue, Oroville, CA 95965-3411
Tel: 530-552-3400 | Toll Free in Butte County: 1-800-894-7761 | Fax: 530-538-6853

October 26, 2026

**Statement from Keaton Denlay, Butte County Clerk-Recorder/Registrar of Voters**

In the interest of transparency amidst all the rumors and uncertainty, this is an account of what has taken place in Butte County regarding the demands the Department of Justice made of California Elections Officials.

On Friday October 23rd at approximately 3:30pm, an individual identifying himself as a Homeland Security Agent hand delivered paperwork to the Clerk-Recorder's Office. This agent handed me a Department of Justice demand letter addressed to "Mr. Danlay," two declarations, and a two-page list of names.

The list allegedly contained 47 names of individuals that the Department of Justice "reasonably believe" are active voters, were sent a ballot, and are "likely" to be non-citizens.

The letter demands that I segregate ballots submitted by the 47 individuals on the list. According to the letter, if I failed to do so DOJ could charge me with federal crimes. I was given 48 hours to comply.

Upon inspection of the list of names, it appeared to be a print screen of a poorly formatted excel spreadsheet with missing and jumbled information. I personally reviewed the list of names.

The two-page list was just two copies of the same list. Although the DOJ letter allegedly identified 47 names, the list only contained 46 names; one of which was a duplicate. Of the 45 names on the list, 32 of the individuals are not on Butte County's active voter rolls. These 32 individuals were not sent ballots from this office.

Seven of the names did not have sufficient information for me to match to our voter list with confidence. This is because the list contained partial names, partial addresses, no date of birth, and/or no driver's license numbers or last four digits of social security numbers.

This left six names out of the alleged 47 that may, according to DOJ, be ineligible to vote. Per California law, in order to challenge a voter's eligibility, "the challenger shall have the burden of establishing extraordinary proof of the validity of the challenge at the time the challenge is made." (California Elections Code §15106).

Given the overall inaccuracy of the list provided and its lack of specificity, I believe the Department of Justice has not met that burden. There will be no further action taken at this time.

I remain dedicated to ensuring the fair, accurate and accessible elections that Butte County voters know and expect. I will continue to assist with good faith efforts to maintain that status quo in our elections.

Thank you and happy voting,

Email: Elections@buttecounty.ca.gov | Website: ButteVotes.ca.gov | Twitter: @ButteVotes

# Exhibit 33

U.S. The New York Times GIVE THE TIMES Account

2026 LIVE Updates 2h ago Polls The Race for Congress Early Vote Tracker When to Vote in Your State Competitive Races Primary Results

ADVERTISEMENT




McKenna Audi

# *The New Worst-Case Scenario for Election Officials: Federal Interference*

State and local plans for Election Day include how to react to potential ICE raids, misbehavior by federal election monitors and attempts to seize votes or machines.

Listen · 10:28 min Share full article 1.1K




State and local election officials across the country have been redoubling training efforts to prepare for the potential for federal interference. John Locher/Associated Press



By Richard Fausset, Zolan Kanno-Youngs and David W. Chen

Oct. 27, 2026

State and local elections officials regularly plan for floods, fires and computer glitches.

This year, they are teaching poll workers what to do if immigration enforcement officers show up. They are drilling them about the statute that bars federal agents from voting places. They are

running through the limits of what federal monitors may and may not do on Election Day.

Much of the preparations for Nov. 3 can be distilled into one overarching concern — that the Trump administration will somehow attempt to meddle with the voting process or the results. The tricky part, officials said, is predicting what shape that interference might take while also recognizing that it might not materialize at all.

“This is the first time ever that we have had to engage in scenario planning to safeguard against potential federal interference in elections,” said Shenna Bellows, the secretary of state in Maine. “It seems like the federal government is now adversarial to the states.”

It remains to be seen whether any of these scenarios will play out. Many federal officials have dismissed the idea that agents or soldiers could be sent to the polls, and the courts have blocked most of President Trump’s efforts to insert the federal government into state and local election administration.

ADVERTISEMENT

And some of the country’s most prominent voting advocates have sought to assure the public that election administrators are well-prepared to protect the vote. David Becker, a former voting rights lawyer for the Justice Department, said the most chilling possibilities are unlikely to come to pass because the courts would likely block them.

“But election officials feel more comfortable to know they’ve thought about this, and discussed it,” said Mr. Becker, who runs the Center for Election Innovation and Research, a nonpartisan group that works to support election officials in both parties.

Even so, the Trump Administration has already taken significant steps to try to shape the voting process this year. Mr. Trump has sought to sow doubt about the security of elections. His administration has demanded that states turn over voter lists, and has tried unsuccessfully to change mail voting rules. Last week, the Justice Department filed a lawsuit in Alaska seeking to pre-emptively block the certification of the Senate race there if the Republican candidate loses by a narrow margin.

With one week until Election Day, officials around the country say that they are bracing for even more unwanted and potentially undemocratic federal intervention — even as they can't be sure what, if anything, the Trump Administration might do. To prepare, secretaries of state and other state and local officials have met with lawyers and local law enforcement agencies, trained poll workers and held meetings to consider what could come next.

Among their top concerns: that Mr. Trump's attacks on the integrity of American voting systems could form the basis for challenging the legitimacy of the results. Along with that unease comes the worry that any federal intervention could further undermine public confidence in elections and cause voters to stay home.

ADVERTISEMENT

The next step is a guessing game, they said.

Could federal officials try to seize ballots, as they did earlier this year in Fulton County, Ga., as part of a criminal investigation that thus far hasn't resulted in any charges?

Could Mr. Trump deploy Immigration and Customs Enforcement personnel or other federal agents to polling sites, even though his homeland security chief has said I.C.E. will not patrol polling stations and would be deployed to such an area only to investigate "specific threats?"

Might he invoke the Insurrection Act and somehow summon the military in connection with the election? Mr. Trump has refused to rule out the possibility.

"We really are shadowboxing here, because we don't know when or if the blow is going to land," said Steve Simon, the Minnesota secretary of state. "We don't know the character of, or content of, what might be headed our way."

ADVERTISEMENT

Mr. Trump, who has long claimed without proof that U.S. elections are rigged, sought to overturn his 2020 election loss. Earlier this year, he said the federal government should "get involved" in elections, even though the Constitution empowers the states and Congress — not the executive branch — to govern elections.



President Trump has falsely claimed that mail voting is rife with fraud, undermining confidence in the practice. Alyssa Pointer/Reuters

Ms. Bellows and Mr. Simon are Democrats. But Republican election officials have also planned for the possibility of federal intervention. Deidre Henderson, the lieutenant governor of Utah and a Republican, recently said that while she did not "necessarily expect" such interference, officials in her state were still planning for it.

In a statement, Lauren Bis, a White House spokeswoman, said the bipartisan concerns about election interference were unfounded.

**Get updates when new midterm election polls are added to our poll trackers.** When new polling data drops we'll send an update straight to your inbox. Get it sent to your inbox.

"The only 'worries' about election security are caused by radical Democrats who refuse to enact basic election security measures, supported by the majority of Americans, including voter ID and citizenship verification to ensure only Americans are electing America's leaders," Ms. Bis said. "President Trump has done more than any other President to ensure we have free and fair elections."

Several voting advocacy groups have offered training and advice to election officials to help them get ready. One organization, the Government Counsel and Election Officials Network, explains to [illegible]
case of federal action, whether civil or criminal, such as the seizure

of machines or documents.

ADVERTISEMENT

The group's website provides samples of what federal grand jury subpoenas and search warrants look like. It also advises how to respond to a federal investigation, including what to do when agents show up with a search warrant.

"Step 1," the site says: "Stay calm."

Tina Barton, the co-chairwoman of the Committee for Safe and Secure Elections, said her team has helped run about 140 training sessions for officials with local government and law enforcement this year, up from 67 such sessions in 2024.

Some of those officials, including law enforcement leaders in Northern Virginia, said they were concerned about how immigration enforcement might affect the election process. Although Mr. Trump's homeland security chief has said ICE will not patrol polling stations, Some congressional officials nonetheless expressed concern about the possibility. She said she helped lead a training scenario in which ICE enforcement was near a polling location.

Ms. Bellows, the Maine secretary of state, said her team introduced a new slide this year into its training presentation for law enforcement. It provides the text of the federal statute that bars armed federal agents from polling places.

"It's sad that we're in this posture," Ms. Bellows said in a phone interview. "But it's just the way it is in 2026, given the administration's rhetoric, and their actions."

ADVERTISEMENT




Barb Byrum, the clerk in Ingham County, Michigan, used to worry about tornadoes affecting elections. Now, she said, "it's unethical, inappropriate interference by the federal government." Jose Juarez/Associated Press

Barb Byrum, the clerk of Ingham County, Mich., said she was already concerned by some actions of the Trump administration, including the Justice Department's deployment of federal election monitors to her county during the August primary. She said it was the first such deployment of federal monitors to her county in her nearly 14 years as clerk.

"The feds suggested that there were long lines, voters were not offered provisional ballots and clerks and precinct workers failed to use the qualified voter file to check voters," she said. "All of which is simply not true."

After the primary, Ms. Byrum put her election workers through additional training on what federal monitors were and were not permitted to do under state law.

"They can watch the process," Ms. Byrum said. "They can't touch anything, they can't ask any questions. They can literally just watch — monitor."

ADVERTISEMENT

Ms. Byrum said she found it disheartening that she now considered the federal government a potential threat to the election.




A federal monitor with the Justice Department flashes his badge to a poll worker in Detroit during Michigan's primary election in August. Rebecca Cook/Reuters

Justin Levitt, a law professor at Loyola Marymount University, formerly worked on voting rights for the Biden administration. He said nearly everywhere across the country, Justice Department observers must adhere to the same rules of behavior at polling places as any other member of the public.

Earlier this week, Dana Nessel, the Michigan attorney general, said the Justice Department's civil rights division had sent notices to seven Michigan municipalities that election monitors from the department would come to their polling places on Election Day. In a statement, Ms. Nessel, a Democrat, sought to quell anxiety about the plans.

"It's important for residents to know that D.O.J. monitors are a standard part of our election process, and we anticipate they will comport with state and federal law," she said.

ADVERTISEMENT

Some officials are hesitant to share granular details of their preparations, for fear of giving the federal government a tactical advantage if legal skirmishes arise.

For Democrats, the politics of discussing preparations are also complicated. By having an open discussion about pre-election planning, they said, they show their constituents that they are taking the threats seriously. But they also recognize that such discussions could intimidate voters from going to the polls.



Asked how concerned he was about threats to the Nov. 3 election on a scale of one to 10, Keith Ellison, the attorney general of Minnesota, said: “I’m at a seven. It’s as high as it’s ever been for me.” Jenn Ackerman for The New York Times

In an interview, Keith Ellison, Minnesota’s attorney general and a Democrat, said he and Mr. Simon, the secretary of state, have been working in tandem to prepare for election threats.

Asked how concerned he was about the threats to the Nov. 3 election on a scale of 1 to 10, Mr. Ellison said: “I’m at a seven.” He added: “It’s as high as it’s ever been for me.”

ADVERTISEMENT

During a recent online forum, Lisa Lyons, the clerk and registrar of deeds in Kent County, Mich., said her staff regularly communicated with her government's legal team about potential troubles.

"We're going to follow the law," she said. "We're going to follow the Constitution. We're going to protect our election equipment."

**Richard Fausset** is a national correspondent for The Times who writes about the way Americans live in a polarized country.

**Zolan Kanno-Youngs** is a White House correspondent for The Times, covering President Trump and his administration.

**David W. Chen** is a Times reporter focused on state legislatures, state level policymaking and the political forces behind them.

A version of this article appears in print on Oct. 28, 2026, Section A, Page 1 of the New York edition with the headline: U.S. Meddling Worries States Ahead of Vote. Order Reprints | Today's Paper | Subscribe

See more on: Donald Trump, U.S. Justice Department, Homeland Security Department

READ 1,097 COMMENTS

Share full article 1.1K

ADVERTISEMENT

# Exhibit 34

# Trump administration asks Washington to set aside ballots from 400 voters it says may be noncitizens

*The Associated Press*

Elections

President Donald Trump talks to reporters before boarding Air Force One, at Joint Base Andrews, Md., Monday, Oct. 26, 2026, en route to a campaign rally in Mississippi. (AP Photo/Jacquelyn Martin)



SEATTLE (AP) — The Trump administration on Monday asked Washington state to set aside any ballots received from more than 400 people it alleges registered to vote without U.S. citizenship, less than two weeks after making a similar demand in California.

The announcement is the latest sign of the administration's attempts to sow doubts about the election or its outcome in states with races that will help determine control of the U.S. Senate and House.

In a letter to Washington Secretary of State Steve Hobbs, the Justice Department said it had identified 1,500 votes cast by the more than 400 people in prior elections. It asked the state to set aside any ballots they might cast in next month's midterm until state officials can confirm they are legally

eligible to vote. The state has more than 5 million registered voters, and the state issues mail ballots to all of them.

### One listed voter last cast a ballot in 1994

At a news conference, Neil Floyd, the acting U.S. attorney in Seattle, said he believed the 405 voters identified so far represented "the tip of the iceberg."

"Because of limitations the state has placed on our investigation, we've only been able to uncover a fraction of the total number," he said.

Hobbs said he was reviewing the DOJ's request. His office noted that the data shared by the department included the last time each of the 405 people voted. One was in 1994.

"The timing of this request — one week before the General Election — is no doubt intended to cast unfounded suspicion on the results," Hobbs said.

Much of the list was built based on "recent contacts" with suspected noncitizens, Floyd said, because federal officers are now routinely checking to see if the people they interact with are registered to vote.

### Lack of state cooperation a problem, DOJ says

Without access to those state records, proving someone illegally voted will be difficult, Floyd said. The Justice Department has demanded information including addresses, dates of birth, driver's license numbers and partial Social Security numbers.

The effort is the latest by the administration to identify noncitizen voters, even though noncitizen voting is exceptionally rare. President Donald Trump has repeatedly sought to undermine public confidence in elections.

Meanwhile, Washington officials have noted that changes in U.S. Postal Service operations have disenfranchised thousands of legitimate voters.

### Voting is underway

The Washington request marks the third time this month that the Justice Department has brought a direct state challenge as voting is underway. All three states — Washington, California and Alaska — have House or Senate races that will help determine the balance of power in the nation's Capitol.

The race for Washington's 3rd Congressional District is one of the most competitive in the country in this year's midterm elections. Democrats are counting on Rep. Maria Gluesenkamp Perez winning reelection as crucial to their strategy of retaking the majority in the U.S. House. She has won twice in

a district that also has supported Trump each time he's been on the ballot.

The Justice Department sued in California as part of a similar attempt to require the state to set aside mail ballots from up to 20,000 people the federal government suspects may not be citizens. Another lawsuit filed in Alaska last week seeks to delay certification of the vote if the Republican incumbent doesn't win.

In California, a panel of federal appellate judges heard rare Sunday arguments and questioned the timing, constitutionality and authority of the Justice Department's demand. On Monday, they declined to rule on the expedited timeline the DOJ requested and sent it back to a lower court.

The Elections Clause of the U.S. Constitution gives state legislatures the power to set the time, place and manner of congressional elections.

## Prior allegations have been overstated

Los Angeles County Assistant Registrar-Recorder Monica Flores said in a court filing that her staff went through a sample of 200 records from the Trump administration's list. They found the sample included canceled or inactive registrations, people with no voting history and voters who appeared to have been born in the United States.

The Justice Department told Washington it anticipates sending the state an additional list of people it suspects are not citizens prior to Election Day. It also noted that some of the people it suspects registered without citizenship may have since become naturalized.

Investigations into prior allegations of noncitizen voters have revealed far fewer instances than the Trump administration has claimed. In Nevada, Trump's administration alleged there were 1,500 potential noncitizen voters on the rolls but subsequent investigation found zero.

In Maricopa County, which includes Phoenix, the county recorder, who is a Trump supporter, announced that there were 207 possible noncitizens on the county's rolls. The Republican County Attorney determined there were actually eight.

——

Boone reported from Boise, Idaho.

# Exhibit 35

The New York Times Account

# *Here Are the U.S. Attorneys Who Are Carrying Out Trump's Grievance Agenda*

Together, they have pursued cases against the president's enemies and protesters and amplified false claims of widespread election fraud, often citing thin evidence.



Francis Chung/Politico, via AP Images; Tierney L. Cross/The New York Times; Eva Marie Uzcategui/Getty Images; and E. Jason Wambsgans/Chicago Tribune, via AP Images

Share full article 229

By Devlin Barrett
Devlin Barrett covers the Justice Department and the F.B.I.

Oct. 28, 2026

President Trump's success in demolishing the traditional wall between the White House and the Justice Department is apparent at the helm of the agency, now led by his former personal lawyer, Todd Blanche.

Mr. Trump's reach can also be seen in the network of U.S. attorneys across the country who are flexing their power to pursue the president's political agenda.

ADVERTISEMENT


McKenna Audi

At least eight current U.S. attorneys have played prominent roles in pushing Mr. Trump's grievances, often citing thin evidence that has subsequently led many of their cases to collapse. Three of those are running their offices without Senate confirmation.

Two have taken up investigations that the president explicitly told them to pursue. In one previously unreported episode, Mr. Trump privately urged the U.S. attorney in Minnesota, Daniel Rosen, to prosecute Representative Ilhan Omar, who is now under investigation for potential immigration violations.

Taken together, the events and decisions have deepened what current and former officials describe as the stark politicization of a department that had long prided itself on operating with independence in prosecuting politically sensitive cases. The president and Mr. Blanche say they are ending Biden-era "weaponization" of the Justice Department against conservatives, while current and former department lawyers decry what they say is a reckless lowering of standards to pursue Democrats and other political targets.

The actions reflect a radically altered Justice Department, one in which longstanding rules about ethics, investigative procedure and legal standards are changing. The president has asserted sweeping authority to fire career prosecutors and investigators at will, despite years of court precedent meant to prevent such actions.

A Justice Department spokeswoman, Emily Covington, said U.S. attorneys have successfully driven down violent crime at a record rate, a key priority of the president, calling their work "a massive success story."

"These attorneys and their offices are on the front lines every day crushing gangs, violent crime, drugs, human smugglers, illegal immigration and terrorism," she said in a statement, praising them for "working productively and successfully with state and local law enforcement."

The U.S. attorneys serving as Mr. Trump's field commanders have taken up his grievance agenda principally on three fronts:

**RETRIBUTION**

Editors' Picks


Science Fiction Is the Constant in LeVar Burton's Reading Life


Where the Design Parents Are Shopping


The Truth About 'True Vintage'


PAID POST: PNC
The Culinary Art of Time and Attention to Detail

Pursuing investigations and prosecutions of Mr. Trump's perceived enemies, from grudges that date to the 2016 presidential race to recent battles with the Federal Reserve.

PROTESTS

Charging protesters of his immigration crackdown with violent crimes against federal agents. Many of those cases have fallen apart upon scrutiny from the courts.

ELECTION FRAUD

Amplifying Mr. Trump's false claims about widespread fraud in U.S. elections.

---

MINNESOTA

## Daniel N. Rosen

RETRIBUTION PROTESTS

Mr. Rosen has aggressively pursued cases against people in Minneapolis who protested the administration's immigration policies and has helped oversee the investigation into Ms. Omar, a Minnesota Democrat whom Mr. Trump has vowed to deport.



Ellen Schmidt/Associated Press

In early January, Mr. Rosen, a longtime commercial litigator who had never been a prosecutor, stood with dozens of fellow U.S. attorneys at the White House to meet the president. Mr. Trump complained that as a group, they weren't doing enough for him, according to people familiar with the private event.

"Where's the U.S. attorney from Minnesota?" the president asked. When Mr. Rosen identified himself, Mr. Trump congratulated him for "prosecuting the fraud," a reference to the multitude of cases of benefits fraud that the office has been pursuing there for several years.

The president then added: "And prosecute Ilhan Omar," according to people familiar with the exchange. Some of those who heard the remark chuckled, taking it as something of a joke. A person familiar with the matter, speaking on condition of anonymity because they were not authorized to discuss it, said Mr. Rosen did not take the comment as an order and did not take any

investigative step as a result of the president's remark.

Lauren Bis, a White House spokeswoman, described the account as "false talking points" and noted that the Justice Department first opened an investigation into Ms. Omar years ago. She added that "any suggestion that this administration initiated it for political purposes is therefore demonstrably false and absurd."

Federal authorities did begin scrutinizing the immigration history of Ms. Omar over a decade ago. And prosecutors in the Biden administration examined her finances and interactions with a foreign citizen, as The Times previously reported.

But that case appeared to have stalled. And in the months after Mr. Trump's encounter with Mr. Rosen, federal investigators intensified an effort to identify whether Ms. Omar or members of her family may have lied on immigration forms.

A few weeks ago, federal immigration agents, as part of an investigation overseen by Mr. Rosen's office, executed a search at Ms. Omar's home in Washington.

Mr. Rosen has also focused his office on scrutinizing demonstrators who protested the administration's immigration crackdown in Minneapolis.

After an ICE agent shot and killed a local woman, Renee Good, senior Justice Department officials pushed for a criminal investigation of her widow. That demand led to the departures of six prosecutors in the office, including Mr. Rosen's top deputy, who had played a key role in leading anti-corruption prosecutions in the state. More resignations would follow, as Mr. Rosen sought to satisfy the administration's demands while also keeping enough lawyers to keep the office functioning.

Judges handling the crush of cases grew increasingly frustrated with how often the prosecutors in Mr. Rosen's office failed to adhere to court orders — nearly 100 times, by one judge's count, and about the quality of the evidence in some of the criminal cases filed against protesters.

What happened in Minnesota's federal court "created a grave threat to the rule of law," Judge Patrick J. Schiltz later told The New York Times. The judge said most of the violations seemed to be due to incompetence and staffing shortages, but added that the Justice Department had not taken their corrosive effect seriously enough.

ADVERTISEMENT



McKenna Audi

Mr. Rosen had to personally appear before judges to argue he should not be held in contempt for the way his office was handling — or not handling — pressing immigration cases.

Federal prosecutors were brought in from other jurisdictions to help ease some of the workload, and others were hired to fill the ranks, but the administration found new clashes with judges.

When a magistrate judge in Minnesota declined to approve criminal charges against the former CNN anchor Don Lemon for his presence at an anti-ICE protest in a church, Mr. Rosen immediately sought to get another judge to overrule the decision.

The Justice Department eventually succeeded in securing a grand jury indictment against Mr. Lemon, who covered the protest and has said he was there as a independent journalist.

Mr. Rosen's staff also issued subpoenas to the offices of the governor and local officials, Democrats who had criticized the administration's immigration policies. The subpoenas sought a wide range of records related to those offices' policies on immigration enforcement.

Judge Schiltz quashed those subpoenas, finding their main purpose was improper — "to coerce Minnesota officials into assisting the federal government with enforcing civil immigration law and to harass and retaliate against them for failing to do so."

Mr. Rosen's office has taken no public actions to investigate the killings of Ms. Good and Alex Pretti, two U.S. citizens shot dead by federal immigration agents in Minneapolis. The local county prosecutor said the federal government continues to withhold key evidence she needs to make a charging decision in those cases.

---

ALBANY

## John A. Sarcone III

RETRIBUTION

John A. Sarcone III has led efforts to investigate New York's attorney general, Letitia James, on the theory that she violated the civil rights of Mr. Trump by pursuing cases against him and his companies after he left office in 2021.



Cindy Schultz/Reuters

Mr. Sarcone, who leads the U.S. attorney office in Albany, N.Y., opened the James investigation last year, when his office issued a pair of subpoenas, the first related to a civil fraud case Ms. James had brought against Mr. Trump accusing him of exaggerating his net worth to defraud lenders. The second subpoena was focused on her long-running case against the National Rifle Association.

Ms. James challenged the subpoenas on the grounds that Mr. Sarcone was not lawfully serving as an acting U.S. attorney. The Trump administration has used a novel interpretation of federal rules for temporary federal officials to put Mr. Sarcone and others in charge of U.S. attorney offices without Senate confirmation. It first designated them as interim appointments, which have an expiration date, then declared them special attorneys.

ADVERTISEMENT



McKenna Audi

The administration has used that method in some states with two Democratic senators, essentially working around the longstanding tradition in which home state senators have an important say in selecting the top prosecutor.

Judges have repeatedly ruled against the administration's efforts to work around the federal law regarding vacancies in Senate-confirmed positions. In Mr. Sarcone's case, a federal judge blocked him in January from overseeing the investigation into whether Mr. Trump's civil rights were violated by Ms. James.

But Mr. Sarcone's office has continued in its quest. Earlier this year, prosecutors in Louisiana, prompted by lawyers in the Albany office, filed charges against Ms. James's hairdresser for identity theft and bank fraud, according to people familiar with the matter who spoke on condition of anonymity.

Since then, federal prosecutors from Albany, working with federal agents, have repeatedly tried to get her to provide evidence against Ms. James about financial transactions involving her campaign, according to people familiar with the matter who spoke on condition of anonymity. The hairdresser has pleaded not guilty and so far has not cooperated with prosecutors.

**Q&A**
Times journalists answer questions about our polls, our campaign reporting and more.



Answers to Your Questions About Our Midterm Election Coverage
Oct. 29, 2026

NORTH CAROLINA

## Dan Bishop

ELECTION FRAUD

Dan Bishop has been tasked to pursue election integrity cases across the country as part of the administration's hunt for evidence of mass voter fraud in the 2020 election.



Kenny Holston/The New York Times

Mr. Bishop had never worked as a prosecutor before becoming the U.S. attorney in Greensboro, N.C. As a member of Congress, he voted against certifying Joseph R. Biden Jr.'s 2020 presidential election victory.

ADVERTISEMENT



McKenna Audi

In early 2026, the Justice Department gave Mr. Bishop authority to investigate election integrity issues across the country, a vast portfolio that could allow him to play a key role in the administration's approach to the coming midterm elections.

Earlier this year, the Justice Department intensified its investigation into the 2020 vote in Fulton County, Ga. Shortly after Mr. Trump declared that "people will soon be prosecuted" for actions taken in that election, F.B.I. agents descended on election offices in Atlanta, seizing hundreds of boxes of ballots. The execution of the search warrant, which was approved by a federal judge, has set off a long-running legal fight over the justification for the search and possession of the six-year-old ballots.

Under Mr. Bishop's direction, F.B.I. agents have also scrutinized past election results in Arizona, Texas, Ohio and Wisconsin. In some instances, the agents have been tasked with re-examining allegations that have already been disproved.

---

LOS ANGELES

## Bill Essayli

RETRIBUTION PROTESTS ELECTION FRAUD

Bill Essayli has pushed to charge cases against anti-Trump protesters, many of which fell apart in court. He also carried out a direct order from Mr. Trump to open an investigation of voting in the state.



Ronaldo Bolaños/Los Angeles Times, via Getty Images

"Do me a favor," Mr. Trump said in early June when he called Mr. Essayli, the head of the U.S. attorney's office in Los Angeles. The president wanted the federal prosecutor to open an investigation into California's primary. "They are trying to steal that election," Mr. Trump said, according to his own account of the conversation.

Mr. Essayli immediately opened an investigation. And he gave interviews suggesting voter fraud had occurred, even as votes were still being counted in the state, where tabulating mail ballots can take weeks.

The prosecutor predicted in an interview with the conservative radio host Glenn Beck that criminal charges would follow. "It will be election fraud charges," he said.

Mr. Essayli's public statements about his investigation represented a major departure from past Justice Department practice, particularly on the sensitive subject of investigating election issues while votes were still being counted. In Mr. Trump's first term, most department officials recoiled at the ways in which the president tried to direct law enforcement activity to promote and pursue his unfounded claims of mass voter fraud.

ADVERTISEMENT

McKenna Audi

About two weeks before the midterm elections, after ballots had been mailed out to California voters, Mr. Essayli's office announced criminal charges against 13 green-card holders he said had either voted or registered to vote illegally. The Justice Department has also sued the state of California, demanding they set aside, at least temporarily, any ballots from roughly 20,000 people in the state that the administration says it suspects are noncitizens.

In addition, Mr. Essayli has directed federal law enforcement resources at Mr. Trump's critics. When the press office of Gov. Gavin Newsom of California wrote on social media that Kristi Noem, then the homeland security secretary, was going to "have a bad day today," the U.S. attorney referred the governor to federal agents for a "threat assessment," declaring he had "zero tolerance for direct or implicit threats against government officials."

He has also pushed to prosecute protesters against administration policies, even in cases when his staff said the evidence did not support charges.

In one instance, according to people familiar with the matter, Mr. Essayli insisted on charging a man who had provided face shields to anti-ICE protesters, despite objections from some members of his staff. Mr. Essayli's office eventually did file charges against the man over the masks, which were thrown out weeks later.

MIAMI

## Jason A. Reding Quiñones

RETRIBUTION

Jason A. Reding Quiñones has overseen a centerpiece of Mr. Trump's retribution campaign, what the president's allies have cast as a "grand conspiracy" by officials in the Biden and Obama administrations to pursue Mr. Trump. The case has been noteworthy not for bringing indictments, but for ending the prosecutorial careers of many of the lawyers assigned to it.

Joe Raedle/Getty Images

Mr. Reding Quiñones is at least the third U.S. attorney in the Trump administration tasked with investigating the “grand conspiracy” — a catchall term used by Trump loyalists to describe the effort to file criminal charges against former Obama administration officials, intelligence veterans and Democratic operatives for allegedly misusing their positions to harm Mr. Trump.

The first two U.S. attorneys were forced out, having displeased senior Trump administration officials by concluding criminal charges were not warranted against figures such as former F.B.I. director James B. Comey.

In Mr. Reding Quiñones, the Justice Department found a prosecutor willing to pursue the investigation further, with the help of a judge who had proven herself amenable to Mr. Trump’s legal arguments: Judge Aileen M. Cannon in Fort Pierce, Fla.

But the investigation has not fared much better. A career Justice Department official in Miami who oversaw the case concluded there was not sufficient evidence to support criminal charges against John O. Brennan, the former C.I.A. director, and was subsequently removed from the case.

The administration brought in an octogenarian former prosecutor, Joseph DiGenova, who proceeded to slowly retrace the previous investigations. Senior administration officials grew frustrated with what they viewed as the snail’s pace of Mr. DiGenova’s work, and he left under pressure in September.

In October, the Justice Department filed new charges in Washington — without a grand jury indictment or a judge’s signature — against Mr. Comey, alleging he directed a leak of classified information to a New York Times reporter in 2016. Mr. Comey has denied the accusation and is seeking to have the case dismissed.

ADVERTISEMENT



McKenna Audi

DISTRICT OF COLUMBIA

## Jeanine Pirro

**RETRIBUTION**

Jeanine Pirro has pursued indictments of the president's critics and others invoking his ire, even when some of her prosecutors say the evidence does not support charges.

Eric Lee for The New York Times

"This is a case," Ms. Pirro declared in early July, "with tremendous evidence." Speaking at a news conference, she announced the indictment of David Hearn, a former Olympic athlete, for felony destruction of property.

Ms. Pirro, the U.S. attorney for the District of Columbia, claimed Mr. Hearn ripped a piece of sealant from the bottom of the Lincoln Memorial Reflecting Pool by "forcefully and violently pulling up and removing" the liner.

Weeks later, Ms. Pirro abandoned her indictment of Mr. Hearn, acknowledging that there was substantial evidence showing the liner of the pool fell apart as a result of shoddy installation work. The embarrassing retreat, one which sharply undercut Mr. Trump's claims that the only problem with his rushed pool renovation project was vandalism by leftists, led to a heated meeting in the Oval Office of Mr. Trump, Ms. Pirro and Interior Secretary Doug Burgum, whose agency she blamed for misleading her office.

In dropping the case, Ms. Pirro's office claimed that Department of Interior officials withheld key details that would have changed prosecutors' view of the evidence. However, she and her investigators knew even before they went into the grand jury that there was at least one significant evidentiary flaw in their case and barreled ahead anyway, according to court filings by Mr. Hearn's lawyers.

ADVERTISEMENT

At least a day before the grand jury presentation, Ms. Pirro's office received a report from Interior Department officials that found there had been widespread damage to the pool liner more than a week before Mr. Hearn's arrest, according to defense filings.

After Mr. Hearn was indicted, Ms. Pirro went to the pool herself and confronted a defense expert hired to inspect the liner.

During the awkward exchange, Ms. Pirro's staff urged her not to question him about his inspection of the liner, yet she repeatedly pressured the expert to explain what he was doing, according to a complaint filed to the inspector general by one of Mr. Hearn's lawyers.

ADVERTISEMENT

Ms. Pirro also pushed forward with a series of cases meant to punish the president's perceived enemies. Her office tried unsuccessfully to convince a grand jury to indict a half-dozen Democratic lawmakers who made a video reminding military officers of their duty not to follow unlawful orders. The grand jury rejected the case.

A federal judge also roundly rejected her efforts to subpoena Jerome H. Powell, the previous chairman of the Federal Reserve, over a construction project, saying Ms. Pirro's office had offered "no evidence whatsoever" that he had "committed any crime other than displeasing the president."

---

NORTH CAROLINA

## W. Ellis Boyle

RETRIBUTION

W. Ellis Boyle has brought criminal charges against Mr. Comey, the former F.B.I. director, for posting a photo of seashells arranged to form the numbers "86 47."



Ethan Hyman/The News & Observer, via Getty Images

Of all the retribution-tinged indictments and investigations that have marked the second Trump term, none has more alarmed or angered longtime Justice Department officials than the one over the seashells photo.

Senior Trump administration officials tried and failed in mid-2025 to find a prosecutor willing to charge Mr. Comey with threatening the president, arguing that the "86" was mafia lingo that meant kill, and "47" was a reference to Mr. Trump, the 47th president. Mr. Comey has said that he understood "86" meant "eject," from restaurant jargon for removing a dish from the menu.

Federal prosecutors in Virginia, as well as agents at the F.B.I. and the Secret Service, looked at the matter and quickly closed their investigation in 2025, despite intense pressure from senior Trump administration officials to pursue criminal charges, according to people familiar with the matter.

ADVERTISEMENT



McKenna Audi

Mr. Trump was so keen to pursue the case against Mr. Comey that he insisted federal agents immediately send him a summary of their interview with Mr. Comey about the incident, according to court filings.

Mr. Boyle, the U.S. attorney in Raleigh, N.C., was willing to take the case. His investigators went so far as to interview Sammy Gravano, a famous mob turncoat known as the Bull, whose evidence helped convict his boss John Gotti.

Mr. Boyle eventually obtained an indictment against Mr. Comey over the photo of seashells, a case which is set to go to trial next year.

Mr. Boyle, a former Army captain who was sworn into his prosecutor job by his father, a federal judge in the same district, has denied he was pushed by anyone above him to bring the charges against Mr. Comey.

"In making the determination, I did not feel pressured, coerced or motivated in any way from any individual," Mr. Boyle said in a court affidavit.

---

CHICAGO

## Andrew S. Boutros

PROTESTS

Andrew Boutros has overseen a tumultuous period at the U.S. attorney's office in Chicago, one marked by the collapse of high-profile cases against people who clashed with immigration agents.




Scott Olson/Getty Images

Operation Midway Blitz, an immigration crackdown begun by the Trump administration in Chicago in September 2025, spurred a series of confrontations between federal agents and local residents. Inside the government, Customs and Border Protection agents frequently pushed for prosecutors in Mr. Boutros's office to file federal assault charges based on dubious claims of criminal

wrongdoing, and sometimes before lawyers had a chance to review government videos of the incidents, according to current and former law enforcement officials.

As a profession, federal prosecutors pride themselves on rarely losing a case. When it comes to the assault cases related to Midway Blitz, the Chicago record has been extremely poor. Of more than 30 criminal cases filed against people for crimes like assaulting a federal agent or resisting a federal agent during the operation, more than two dozen have fallen apart, according to court records, current and former officials, and public reporting. One of the most aggressive efforts involved a case against participants in an anti-ICE protest who were charged with interfering with a federal agent. Mr. Boutros's office tried and failed twice to get a grand jury to indict some of the protesters.

ADVERTISEMENT

At the second failed presentation, one grand juror bluntly told prosecutors, "I heard this case like last week, and I thought it was a crock," adding an expletive, according to the transcript. "And I still think it is."

In a third attempt, Mr. Boutros addressed the grand jury himself. While he got an indictment, a federal judge eventually found the office had mishandled the case and dismissed the charges. The lead prosecutor, Sheri H. Mecklenburg, was reassigned, and she later accused Mr. Boutros of pushing her to seek an unwarranted felony charge.

"You sent an officewide email laying responsibility at my feet for a felony prosecution that you personally directed over my objection that the case was better suited to misdemeanor charges," Ms. Mecklenburg wrote in a letter to Mr. Boutros when she retired, defending her conduct in the case. Justice Department officials have denied her account.

More than 100 former lawyers in the office signed a public letter denouncing Mr. Boutros's leadership, saying he had "tarnished the reputation" of the office.

Mr. Boutros has dismissed such criticism as the product of predecessors who underperformed. He has said that the office was in "last place" among U.S. attorney offices in many key categories and that since his arrival, it has significantly increased productivity and the number of indictments. Officials have said the failure rate of Midway Blitz cases reflects the confusion and long

hours of the initial days of the operation, which coincided with a federal government shutdown, and came before prosecutors realized they had to be more skeptical of the claims made by federal immigration agents. Once Mr. Boutros's prosecutors changed their approach, the office rejected roughly 90 percent of the cases proposed by the agents.

Produced by Gray Beltran and Jenni Lee.

**Devlin Barrett** covers the Justice Department and the F.B.I. for The Times.

See more on: Donald Trump, U.S. Justice Department, U.S. Politics, James B Comey, Ilhan Omar, New York

READ 229 COMMENTS

Share full article 229

## More on California

- **The Rise of Nithya Raman:** The Democratic Socialist running for Los Angeles mayor has drawn comparisons to Mayor Zohran Mamdani in New York. She has mounted a strong challenge to the incumbent, Karen Bass.
- **Billionaire's Fight Wealth Tax:** Eighty or so donors have provided more than $333 million to Building a Better California, state records show, in an effort to fight Proposition 40.
- **Berkeley Public Bank:** Berkeley voters will consider a ballot measure that would tax property owners to create a public bank that would offer low-interest loans to community projects in the East Bay region of Northern California.
- **California Ballot Case:** By a 2-1 vote, a federal appeals court panel denied the Trump administration's request that it immediately order the state to set aside 20,000 mail-in ballots.

and that since his arrival, it has significantly increased productivity and the number of indictments. Officials have said the failure rate of Midway Blitz cases reflects the confusion and long

# Exhibit 36



**F.A. United States Attorney Bill Essayli**
@USAttyEssayli

Today, a federal grand jury began returning indictments against noncitizens registered to vote in California.

Three Los Angeles County noncitizens were indicted on federal election fraud charges:

Sulema De Leon, a Mexican national, illegally registered in 2013, voted in 2020, and falsely denied claiming U.S. citizenship.

Butleng Taing, a Cambodian national, illegally registered in 2021, voted in 2022 and 2024, and falsely denied prior citizenship claims.

Rouzbeh Seyamaknejad, a Canadian national, illegally registered in 2018 and falsely denied claiming U.S. citizenship.

Every illegal vote by a noncitizen cancels out an American citizen's lawful vote. Election integrity is nonnegotiable. We will hold accountable anyone who unlawfully participates in our elections and those who aid them.

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

March 2026 Grand Jury

UNITED STATES OF AMERICA,
Plaintiff,
v.
BUTLENG TAING,
Defendant.

No.

I N D I C T M E N T

[18 U.S.C. § 1015(a): False Statement Under Oath on Naturalization Application]

The Grand Jury charges:

COUNT 1

[18 U.S.C. § 1015(a)]

On or about August 27, 2025, in Los Angeles County, within the Central District of California, defendant BUTLENG TAING, did knowingly make false statements under oath in a matter relating to naturalization and citizenship on Form N-400, Application for Naturalization, in that he declared under penalty of perjury that he had never claimed to be a United States citizen in any way, and that he never registered to vote in any Federal, state, or local election in the United States, which he then and there knew was false, in

that, in truth and in fact, on July 6, 2021, he registered to vote in the State of California falsely stating under oath that he was a United States citizen, and then on November 8, 2022, and November 5, 2024, in Los Angeles County, he voted in the general election; all in violation of Title 18, United States Code, Section 1015(a).

A TRUE BILL

/s/

Foreperson

TODD BLANCHE
Attorney General

BILAL A. ESSAYLI
First Assistant United States Attorney

5:13 PM · Oct 28, 2026 · **181.2K** Views

299 · 2.1K · 7.4K · 179

# Exhibit 37

Bloomberg Law

Practice smarter.
Work faster. Know first.

REQUEST A DEMO



Listen
Print
Email
Share To:
Facebook
LinkedIn
X

EXCLUSIVE

# DOJ Orders Criminal Probes of California Officials on Voting (2)

Oct. 29, 2026, 12:29 PM PDT; Updated: Oct. 29, 2026, 2:00 PM PDT

Ben Penn
Senior Reporter




Photographer: David Paul Morris/Bloomberg

Justice Department leadership directed top federal prosecutors in California to pursue criminal subpoenas of state and local officials regarding their roles administering allegedly illegal voting, according to two people familiar with the situation.

The directive, which federal prosecutors in Los Angeles and at least one other California district began carrying out Thursday, marks a major escalation in the Trump administration's pre-midterms push to scrutinize the integrity of state-run elections.

An initial batch of subpoenas went out to California officials Thursday, said another person who asked not to be identified due to the sensitivity of the matter.

The Los Angeles US attorney's office led by President Donald Trump ally Bill Essayli has been eager to criminally investigate the officials — including California's secretary of state, said one of the individuals, who like others spoke anonymously about sensitive investigations.

Pressure from the deputy attorney general's office for grand jury subpoenas came shortly after a federal judge rejected the department's attempt to force California to set aside up to 20,000 ballots — a move the judge called a threat to democracy.

Names of politicians and election officials being targeted and what criminal charges the department will pursue isn't immediately known.

But the subpoenas come as DOJ leaders have suggested California officials may be liable for aiding and abetting criminal activity if they don't comply with the department's order to review mail-in ballots that DOJ suspects were cast by noncitizens.

"The Department of Justice does not comment on leaks about alleged grand jury subpoenas," a department spokeswoman said in a statement. "But to be clear, the district court judge explained that voting unlawfully results in criminal exposure. Consistent with this, California also wrote in its filing that the remedy for unlawful voting is through criminal prosecution. Thus, while DOJ maintains that a civil remedy is still available, all agree that noncitizen voting is properly addressed through criminal law."

A spokeswoman for California Secretary of State Shirley Weber, who oversees her state's elections apparatus, didn't provide a comment.

Leadership in the state's four federal districts have been grappling with how to handle the directive from Justice Department headquarters. Some of the offices have objected to a mandate that seeks to interfere with the Nov. 3 election, the two people said.

Recipients would have the ability to file motions to quash the subpoenas, which would likely trigger litigation that could extend past the midterms.

—With assistance from Chris Strohm, Bloomberg News

(Updates with additional detail on subpoena timing in third paragraph.)

**See Breaking News in Context**

Bloomberg Law provides trusted coverage of current events enhanced with legal analysis.

Learn more

**Already a subscriber?**

Log in to keep reading or access research tools and resources.

Log In

Bloomberg Law

**Practice smarter. Work faster. Know first.**

REQUEST A DEMO

**Related Stories**

Judge Says US Bid to Block 20,000 Votes Would 'Wreak Havoc' (4)
Oct. 28, 2026, 8:09 PM PDT

California High Court Says Sheriff Must End Ballot Inquiry (1)
Sept. 24, 2026, 10:38 AM PDT

California Democrats Rush Bills to Block Election Interference
Aug. 26, 2026, 2:03 PM PDT

California Justices Race to Weigh Ballot Fight Before Midterms
Aug. 21, 2026, 2:00 AM PDT

State Officials Could be Prosecutors' Targets: States of Play
July 23, 2026, 11:32 AM PDT

More Stories (1)

Search by **Topic**

Grand Juries
Aiding And Abetting
Subpoenas
Election Administration

# Exhibit 38

# *Justice Dept. Pressures California With Expanded Election Investigation*

The department has issued grand jury subpoenas to local election officials as part of a widening effort to prove unsubstantiated claims about large numbers of illegal voters in the state.

Listen · 5:36 min




**By Devlin Barrett and Shawn Hubler**

Devlin Barrett reported from Washington, and Shawn Hubler from Los Angeles.

Oct. 29, 2026

The Trump administration has widened a criminal investigation in its intensifying campaign to prove thousands of noncitizens are on California's voter rolls, issuing federal grand jury subpoenas to local election officials, according to people with knowledge of the matter and copies of subpoenas obtained by The New York Times.

The move escalates the Justice Department's pressure on the most populous state as the administration seeks to tighten its grip on the midterm elections by making unsubstantiated claims that large numbers of illegal voters are on the rolls. A day earlier, a federal judge resoundingly rejected the Trump administration's bid to block the state from counting the votes of some 20,000 people it says are likely noncitizens, even though studies have found such fraud is very rare.

The new subpoenas are part of the administration's broader effort to portray elections in Democratic states as rigged against Republicans. Justice Department officials have repeatedly suggested they would investigate and prosecute local election officials who did not accede to federal demands to set aside ballots of people that the administration had claimed were likely noncitizens.

The people with knowledge of the matter spoke on the condition of anonymity to discuss sensitive legal matters.

At least two employees of Los Angeles County Registrar-Recorder's office received grand jury subpoenas last week for a proceeding scheduled for Nov. 4, on the morning after the election, according to records obtained by The Times through the state's public records law. Federal marshals served one county employee at home, despite having already served that employee at the registrar's office and issuing a notification of counsel, according to officials familiar with the incident.

Already, the Trump administration has sought records on individuals whom prosecutors appeared to suspect lacked the citizenship status required to cast ballots. The new round of subpoenas appear directed at election officials themselves, seeking copies of all internal communications about the Justice Department's demands to county officials and the California secretary of state. They also ask for all records involving the agency's "methods for screening for unlawful voting by aliens" and "efforts to prevent noncitizen votes from being counted in any election."

Using criminal justice processes like grand jury subpoenas may allow the administration to gain access to records that it has so far failed to acquire through a lawsuit and menacing letters. Such a subpoena does not mean that the person who receives one is under investigation; the Justice Department rarely subpoenas individuals it intends to charge with a crime.

Dean Logan, the Los Angeles County registrar, denounced the subpoenas as "intimidation."

"At every step, the U.S. Department of Justice has taken a confrontational, adversarial approach," he said in a statement. "Election officials are acting in accordance with state and federal law."

Shirley Weber, the California secretary of state, declined to comment on the subpoenas.

A Justice Department spokeswoman also declined to comment but noted that California officials and a federal judge have recently emphasized that issues of unlawful voting should be addressed through criminal prosecution.

The administration has repeatedly signaled that it would escalate its fight with the state.

Last week, Justice Department officials notified local election officials in a letter that they would "risk significant federal scrutiny" if they did not help identify potential noncitizens on their rolls and set aside their ballots. Bill Essayli, the top federal prosecutor in Los Angeles, where the new subpoenas were issued, also suggested that election officials could be prosecuted. "Any election official who knowingly processes the ballot of a noncitizen is opening themselves to legal jeopardy," he said.

The Trump administration's lawsuit this month seeking to block the state from counting the votes of some 20,000 people opened a new front in its clash over California's voter rolls. State officials have said that the federal data that generated a list of names is unreliable and that the demand comes at a time when officials are not supposed to make significant changes to voter rolls or rules.

In his ruling this week, Judge David O. Carter rebuked Mr. Essayli for continuing to claim in court that state and county officials who failed to comply with federal demands could be charged with aiding and abetting criminal offenses. "The court reiterates what it said yesterday; these threats must stop," the judge wrote.

Mr. Essayli has been at the forefront of the Justice Department's efforts to force California to comply with the administration's demands.

In June, President Trump ordered Mr. Essayli to open an investigation into the state's primary election. After a district judge ruled against the Justice Department on Wednesday, Mr. Essayli described the current standoff with the state as an "ongoing emergency" and noted that because California is a vote-by-mail state, ballots are already being processed every day by election officials.

Justice Department lawyers have appealed the judge's decision, and Mr. Essayli said this week that he anticipated the question would be decided by the Supreme Court.

Devlin Barrett covers the Justice Department and the F.B.I. for The Times.

Shawn Hubler is The Times's Los Angeles bureau chief, reporting on the news, trends and personalities of Southern California.

---

A version of this article appears in print on , Section A, Page 1 of the New York edition with the headline: U.S. Broadens Voting Inquiry In California

# Exhibit 39

UF **Election Lab**

Home > **2026 Early Voting**

# 2026 Early Voting

Welcome to the UF Election Lab's early voter tracker, maintained by Dr. McDonald.

If you're constantly checking here, as many do, you may need to do a hard refresh on your browser to get the latest data. The map below is color-coded blue to identify states with an update today. Some states do not provide daily updates. Click on a state to see available detailed statistics for that state.

Where possible links are provided to the original data sources. In some cases data are compiled from data obtained directly from state election officials and are not in the public domain.

These statistics are disseminated under a **Creative Commons Attribution-NonCommercial-NoDerivatives 4.0 International License**. If you use these statistics you MUST provide reasonable attribution and cannot use these data for commercial purposes — such as placing it behind a paywall — without permission.

Some programming for this dashboard was generated using Claude via VSCode.

# Past Early Voting

# Trackers

## Presidential Elections

2020 General

2024 General

## Midterm Elections

2022 General

---

If you want to show your appreciation for this work consider giving online to the non-profit University of Florida Foundation's **Election Science Group Fund**. You can use a credit card and all proceeds go to support University of Florida education and research in election science.

DONATE

---

If you're a graduating senior — high school or college — consider applying to the University of Florida and join our Election Data Science Lab and become one of our many **successful alumni**! We often provide support to both undergraduate and graduate students, funded by your **kind charitable donations**. If you are interested in our graduate program visit the webpages of the **political science graduate program** and our **MA campaigning program**.

# National Statistics

Total early votes
48,544,109

In-person early votes
26,178,568

Mail ballots returned
22,488,344

Mail ballots requested
60,856,325

Last updated: Oct 30, 2026 @ 4:09pm Eastern Time

## Click on a state to display state statistics

Reporting Status

No data yet Votes reported earlier

Votes reported today Updated again




Download image

**Color map by:**

Reporting Status

2026 Total Early Vote

2026 Early Vote to 2022 Total Turnout Ratio

## Detailed Statistics

Total Voted | In-Person Early | Mail Ballots | Fast Stats

## Total Voted by Party Registration

Reporting states with party registration data: **AZ**, **AR**, **CA**, **CO**, **CT**, **DE**, **FL**, **ID**, **IA**, **KS**, **KY**, **LA**, **ME**, **MD**, **NE**, **NV**, **NJ**, **NM**, **NC**, **OK**, **OR**, **PA**, **RI**, **SD**, **UT**, **WV**, **WY**

| Party | Total Voted | Percent |
|---|---|---|
| **Democrat** | 10,164,350 | 43.7 % |
| **Republican** | 7,326,594 | 31.5 % |
| **TOTAL** | 23,261,732 | 100 % |

| Party | Total Voted | Percent |
|---|---|---|
| **None/Minor** | 5,770,788 | 24.8 % |
| **TOTAL** | 23,261,732 | 100 % |




Note: Party registration statistics are for states that have party registration. These statistics are not actual votes. By federal law, election officials do not begin counting ballots until Election Day, although they may start the process of preparing ballots for counting in advance.

# Total Voted by Age

Reporting states with age data: **CO**, **CT**, **DE**, **GA**, **ID**, **IA**, **KS**, **MI**, **NV**, **NC**, **OK**, **PA**, **RI**, **VT**

| Age | Total Voted | Percent |
|---|---|---|
| **18-25** | 606,143 | 5.5 % |
| **26-40** | 1,331,502 | 12.1 % |
| **41-65** | 4,033,218 | 36.7 % |
| **Over 65** | 5,007,582 | 45.6 % |
| **TOTAL** | 10,978,445 | 100 % |




# Total Voted by Gender

Reporting states with gender data: **CO**, **GA**, **ID**, **KS**, **LA**, **MI**, **NC**, **WA**

| Gender | Total Voted | Percent |
|---|---|---|
| **Female** | 5,731,686 | 54.2 % |
| **Male** | 4,653,232 | 44.0 % |
| **Unknown** | 188,520 | 1.8 % |
| **TOTAL** | 10,573,438 | 100 % |




# Total Voted by Race and Hispanic Ethnicity

Reporting states with race and Hispanic ethnicity data: **GA**, **LA**, **NC**, **SC**

| Race | Total Voted | Percent |
|---|---|---|

| Race | Total Voted | Percent |
|---|---|---|
| Non-Hisp White | 3,238,646 | 59.6 % |
| Non-Hisp Black | 1,500,356 | 27.6 % |
| Hispanic | 162,876 | 3.0 % |
| Non-Hisp Asian American | 109,540 | 2.0 % |
| Non-Hisp Native American | 26,557 | 0.5 % |
| Other/Multiple/Unknown | 393,682 | 7.2 % |
| TOTAL | 5,431,657 | 100 % |




College of Liberal Arts and Sciences

## Contact the Election Lab

Michael McDonald

# Exhibit 40

# Tracker of Justice Department Requests for Voter Information

*Kaylie Martinez-Ochoa, Eileen O'Connor, Patrick Berry*

Since May 2025, the Justice Department has demanded that nearly every state and Washington, DC, hand over election-related records and data, such as full copies of statewide voter registration lists and ballots from previous elections, as well as access to voting equipment. The federal government has sued 30 states and Washington, DC[link-1], for not complying. Twenty-seven of those lawsuits have been dismissed.

The requests cover sensitive, private information such as driver's license numbers and partial Social Security numbers. Its collection by the federal government raises serious privacy[link-2] and security[link-3] concerns and may violate state and federal laws[link-4].

These demands by the Trump administration are unprecedented and a clear encroachment on states' power to run elections as outlined in the Constitution[link-5]. The effort is part of the administration's concerted campaign[link-6] to interfere with future elections[link-7].

# Demands for Statewide Voter Registration Lists

At least **48 states and Washington, DC, have received requests** for their complete voter registration lists. Most states have provided a publicly available version (which does not include Social Security numbers and driver's license numbers) or have not provided the voter registration lists at all. The DOJ has **sued Washington, DC, and 30 states** for refusing to provide their statewide voter registration lists with driver's license and Social Security numbers, and **courts have dismissed 27 of those cases.** DOJ's cases against Arizona, California, Colorado, Connecticut, Georgia, Illinois, Kentucky, Maine, Maryland, Massachusetts, Michigan, Minnesota, Nevada, New Hampshire, New Jersey, New Mexico, New York, Oregon, Pennsylvania, Rhode Island, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, and Washington, DC have been dismissed. The Sixth Circuit Court of Appeals has affirmed the Michigan district court decision. The DOJ entered into a settlement agreement with and dismissed its case against Oklahoma.

At least **16 states** have provided complete statewide voter registration lists, including driver's license and Social Security numbers: Alabama, Alaska, Arkansas, Florida, Indiana, Iowa, Louisiana, Mississippi, Nebraska, Ohio, Oklahoma, South Carolina, South Dakota, Tennessee, Texas, and Wyoming. Montana provided a voter file that included partial Social Security numbers for voters who registered without providing their license number. The DOJ has asked states to agree to a "confidential memorandum of understanding[link-8] (MOU)" in connection with handing over their full voter files. That agreement reveals[link-9] both the DOJ's plans to interfere with the states' authority to run elections and how dangerously insecure the sensitive data will be in the department's hands. Alaska[link-10] and Texas[link-11] signed the agreement when they gave their full voter files to the DOJ. South Carolina[link-12] signed a different version of the MOU, which provided that the state would independently confirm voters' ineligibility before removing them from the voter roll. Mississippi, South Dakota, and Tennessee refused to sign the agreement when they provided their voter rolls.

Over the past year, DOJ has made conflicting statements[link-13] regarding plans to share the voter roll data it collects with the Department of Homeland Security. But in a March hearing[link-14] in the DOJ's case seeking Rhode Island's voter file, the Acting Chief of the Voting Section of the Civil Rights Division stated that the agency planned to run the voter roll

data it collects "against DHS's SAVE [Systematic Alien Verification for Entitlements] database." The Civil Rights Division has a Memorandum of Understanding with DHS to use SAVE[link-15] for voter registration and voter list maintenance. Internal correspondence from the summer of 2026 confirmed that DOJ is disclosing voter records to the DHS and that DHS is using those records to attempt to conduct immigration enforcement with the assistance of Palantir's [link-16]ELITE app.

Common Cause and four of its members sued[link-17] DOJ on April 21, 2026, to block the creation of a national voter database and prevent voter data from being run through the SAVE program, which they argue could result in the purging of eligible voters. On October 9, 2026, the judge granted[link-18] partial summary judgment, ruling[link-19] that the DOJ's policy of requesting statewide voter registration lists to compare them against SAVE "violates voter privacy and illegally intrudes on states' authority over elections."

# Demands for Other Election Records or Access to Equipment

The Trump administration has made other demands[link-20] for election records or access to voting equipment.

In Colorado[link-21] and Missouri[link-22], individuals affiliated with the first or second Trump administration have sought access to voting equipment. Election officials in both states refused the requests.

The FBI has obtained, either through the execution of a search warrant or the issuance of a subpoena, records related to the 2020 election in Fulton County, Georgia and Maricopa County, Arizona. The FBI has also reportedly[link-23] sought information from Nevada regarding specific voters, as part of an investigation into the 2020 election.

In addition, the Trump administration, acting through DOJ or DHS, has reportedly[link-24] sought records related to the 2020 election, same-day voter registration, specific voters, or local voter registration groups, from election officials in Arizona, Colorado, Connecticut, Ohio, Minnesota, Nevada, Ohio, and Texas. The DOJ is now also seeking records from Wayne County, Michigan related to the 2024 election, as well as the identities of every person who served as an election worker in Fulton County, Georgia during the 2020 presidential election.

The Brennan Center is tracking these requests, states' responses, and lawsuits. The map below shows which states have been contacted based on public reporting and public records requests made by the Brennan Center, and which states have been sued. Summaries of the correspondences are also included. **Click on a state to see what's happened in the state.**

# Exhibit 41

JUST IN

DOJ subpoenas California election officials as part of voter fraud probes

Trending: Viral S.F. confrontation | Ex-mayor guilty | Kratom victim ID'd | El Niño planning | BART housing




U.S. & WORLD // CALIFORNIA

# DOJ subpoenas California election officials as part of ballooning voter fraud probes

By **Sara Libby**, **Raheem Hosseini**, Staff Writers

Oct 29, 2026

Gift Article



San Francisco Chronicle e-Edition Account

Bill Essayli, the top federal prosecutor in Los Angeles, stands after holding a Justice Department news conference on Aug. 13, 2026.

Allen J. Schaben/TNS

Listen Now:
**DOJ subpoenas California election officials as part of ballooning voter fraud probes**
About 5 Minutes
1x
Everlit

The Department of Justice has subpoenaed local election officials in at least four California counties, the latest development in its unprecedented effort to usurp the state's authority and prove allegations of widespread voter fraud in the runup to the midterm election.

The Chronicle obtained subpoenas sent to election officials in Los Angeles and Orange counties seeking possible instances of noncitizen voting and unredacted

information about certain voters, including their registration, address, voting history and citizenship status. Santa Clara County confirmed it had also received subpoenas and inewsource reported that San Diego County officials received them as well. The subpoenas were sent as part of criminal investigations into alleged fraudulent voting by noncitizens.

One of the subpoenas was received as recently as Oct. 29. Others were sent in September.

ADVERTISEMENT
Article continues below this ad




The subpoenas reviewed by the Chronicle were sent before a federal judge in a separate case gave a stern warning to First Assistant U.S. Attorney Bill Essayli, who

has spearheaded the agency's attempts to force California to surrender its authority to administer its own elections, to stop threatening local election officials.

At a hearing on Tuesday, U.S. District Judge David O. Carter told Essayli: "This court believes it would be wise that any threats to state and county elected employees cease immediately." He repeated the message in a ruling Wednesday denying Essayli's attempt to force California to sequester 20,000 ballots the DOJ has said could have been sent to noncitizens. "The court reiterates what it said yesterday: these threats must stop," Carter wrote.

The subpoenas do not mean that the election officials who received them are themselves under investigation. But the DOJ has separately threatened many of the same officials by giving them 48 hours to review lists of alleged noncitizen voters, and threatening them with criminal prosecution if they do not comply.

Los Angeles County Registrar Dean Logan said Carter's warning was timely, and important. His office was at the center of the Trump administration's unsuccessful effort to sequester 20,000 ballots.

ADVERTISEMENT
Article continues below this ad

"Judge Carter's admonishment about threats directed at election officials on Tuesday was well placed and appreciated," he said in a statement. "At every step, the U.S. Department of Justice has taken a confrontational, adversarial approach. Election officials are acting in accordance with state and federal law. Clear court rulings at both the U.S. District Court level and the Court of Appeals have confirmed that. Threats and intimidation have no place in elections. We will take whatever steps necessary to ensure the safety of our employees and to remain focused on serving the voters of Los Angeles County so they can exercise their voting franchise."

His office received three federal grand jury subpoenas last week from Essayli and agents with Homeland Security Investigations, the unit the Trump administration has tasked with leading criminal investigations into suspected voter fraud. The subpoenas ask individual election officials to turn over any information that "tends to indicate an alien has voted in a federal election" and that indicates "someone has aided and/or abetted an alien voting in a federal election."

The subpoenas also cast a wide net for any communications regarding the back-and-forth between the Justice Department and California secretary of state's office about the administration's downgraded claims of fraud in the state. After initially claiming more than 190,000 noncitizens were potentially registered in California, the federal government went silent for three months before claiming that 20,000

were improperly registered. Federal prosecutors then charged only 28 California residents with citizen-related voter fraud, five of whom are not accused of voting.

The subpoenas also seek the registrar's office's methods for preventing voting by noncitizens.

The most recent subpoena to Orange County, sent Oct. 23 and received Thursday, according to a date stamp, asks for the unredacted voter records for some 60 individuals from January 2017 through the present.

In L.A. County, officials were directed to appear with the requested materials at the federal courthouse in Santa Ana on Nov. 4, one day after the election. In Orange County, the appearance date is Nov. 18.

In total, Orange County has been hit with four subpoenas requesting unredacted voter registration information for a total of 80 possible registrants, though Registrar Bob Page noted there has been overlap in the names the federal government has provided.

The county also received three subpoenas in September requesting unredacted voter registration material. Page said his office had complied with them.

“The Registrar of Voters provided responsive documents requested in the three September subpoenas,” he said in an email. “We plan to provide responsive documents for the subpoena delivered to us today.”

A spokesperson for Santa Clara County said its registrar of voters received two federal subpoenas in September, but did not immediately provide copies.

Carter said in his Wednesday ruling that taken together, the DOJ's actions in California represent "a broad, ongoing pattern of attempted election interference by federal officials."

Election law experts quickly condemned news of the subpoenas.

"These efforts must be called what they are: a blatant attempt by a politicized and weaponized Justice Department to serve a desperate president's political agenda," Center for Election Innovation and Research Executive Director David Becker, a former DOJ attorney, said in a statement.

Citing Carter's demand that federal officials cease threatening local election workers, Becker added, "In response, the DOJ has doubled down."

Oct 29, 2026

# Exhibit 42

# Days before midterms, DOJ sends another warning of criminal prosecution to election officials

*By Jessica Huseman | October 30, 2026, 9:18am PDT*

*Votebeat is a nonprofit news organization reporting on voting access and election administration across the U.S. Sign up for our free weekly newsletter to get the latest.*

The Justice Department has sent yet another round of letters to state election officials warning them that they could face criminal prosecution for violating federal election laws, this time reminding them that they must preserve ballots, voter-registration records, and other election materials for 22 months after a federal election.

Multiple state election offices confirmed to Votebeat that they received identical letters dated Oct. 29 and signed by acting Deputy Attorney General Trent McCotter. Officials familiar with the correspondence said the letters appear to have been sent to all 50 states.

"It is a crime to willfully fail to comply with Section 20701," the letter said, according to a copy provided to Votebeat. Votebeat also viewed letters sent to other states, which were identical. "Such a failure is punishable by up to a year in prison and a $1,000 fine." The letter also warns that it is unlawful to willfully steal, destroy, conceal, mutilate, or alter election records.

The letters, dated Thursday, Oct. 29, came two days after a federal judge in California verbally admonished the Trump administration for threatening election officials with criminal prosecution in a separate dispute over ballots cast by suspected noncitizens.

"This court believes it would be wise that any threats to state and county elected employees cease immediately," U.S. District Judge David O. Carter said during Tuesday's hearing.

In a written ruling Wednesday, Carter rejected the DOJ's attempt to force California to set aside ballots from roughly 20,000 voters and reiterated his warning: "These threats must stop."

Justin Levitt, a former Justice Department official and White House voting rights adviser under President Joe Biden, said he was unaware of any precedent for sending such a reminder to election officials nationwide.

"Election officials know that they have an obligation to comply with this law — they know that real, real well — and this certainly looks like it's meant to intimidate rather than to inform," Levitt said.

Votebeat asked the Justice Department why the letters were sent just days before Election Day, why McCotter personally signed them, and whether similar reminders had been issued before previous

federal elections. The department had not responded as of publication.

## Another round of DOJ warnings

The letters are the latest in a series of warnings from the Trump administration to state election officials. A July mailing warned officials they could face prosecution for knowingly allowing noncitizens to vote, while September letters threatened civil or criminal penalties for failing to preserve records from the 2024 election.

Elections are under pressure. We help you understand what's at stake.

Your guide through complex systems and key decisions shaping elections. Delivered weekly.

The July letters were signed by Harmeet Dhillon, the assistant attorney general overseeing the Justice Department's civil rights division. The September letters, signed by Eric Neff, the acting chief of the division's voting section, directed 29 states and Washington, D.C., to preserve records in connection with ongoing litigation over access to voter-registration data. Dhillon described those notices at the time as standard litigation practice rather than threats.

The October letters, by contrast, cite an existing preservation requirement dating to 1960 without identifying a particular violation or pending investigation. They were also signed by a more senior official: McCotter, the acting deputy attorney general and the department's second-highest-ranking official, who assumed the role in August.

McCotter has recently played a direct role in the Justice Department's election-related litigation. Earlier this month, he signed letters to California officials, including Secretary of State Shirley Weber and Los Angeles County Registrar Dean Logan, demanding that they investigate a federal list of suspected noncitizens who had received mail ballots. He gave officials 48 hours to review the list and instructed them to set aside ballots from voters whose citizenship could not be confirmed, warning that the Justice Department would seek emergency court intervention.

The Justice Department subsequently sued California, asking a judge to bar the state from counting the ballots of voters on the list. State and county officials disputed the accuracy of the federal government's data, saying it included U.S. citizens and people who were not registered to vote. Carter rejected the department's request Wednesday, finding that the proposed intervention could disrupt voting and prevent eligible citizens from having their ballots counted. The Justice Department appealed, and has since issued grand jury subpoenas to California election officials.

## Experts question the timing and purpose

Levitt said there was nothing inherently improper about the Justice Department reminding officials of

their legal obligations, but such reminders are typically prompted by concerns about compliance or understanding of the law.

"It is not itself improper," Levitt said. "But it's super weird that the deputy sent this letter, and it's super weird he sent the letter to everybody."

Joshua Douglas, an election law professor at the University of Kentucky, also questioned the timing, particularly when election officials are occupied with preparations for Election Day.

"I have never seen the DOJ send this kind of letter across the country in the days before the election," Douglas said.

The letters impose no new legal requirements, Douglas said, but create another issue for election officials to deal with during an already demanding period.

"At least they aren't targeting based on politics, but it feels very unnecessary and creates confusion," he said.

The nationwide mailing also comes as federal courts scrutinize other Justice Department demands to states. On Thursday, a federal judge in Washington ordered the department by noon today to disclose which states had received letters demanding that ballots from suspected noncitizens be set aside.

*Votebeat reporters Natalia Contreras, Carter Walker, Alexander Shur, Dion Nissenbaum, Hayley Harding, and Sasha Hupka contributed.*

*Jessica Huseman is Votebeat's editorial director and is based in Dallas. Contact Jessica at jhuseman@votebeat.org.*

# Exhibit 43

SECRETARY MARKWAYNE MULLIN

Search

U.S. Department of Homeland Security

# DHS Secretary Markwayne Mullin Sends Letters to Secretaries of State Warning About Non-Citizens on Voter Rolls

**Release Date:** July 17, 2026

WASHINGTON – The United States Department of Homeland Security (DHS) Secretary Markwayne Mullin sent letters to the secretaries of state in four states warning them about tens of thousands of non-citizens who are illegally on the states' voter rolls.

Secretary Mullin sent letters to California Secretary of State Shirley Weber, New Jersey Secretary of State Dale Caldwell, Nevada Secretary of State Francisco Aguilar, and Pennsylvania Secretary of State Al Schmidt.

*"Election security is national security,"* said **DHS Secretary Markwayne Mullin.** *"As President Trump announced last night, DHS has identified over 250,000 potential non-citizens illegally registered to vote in just 4 U.S. states. Only Americans should be electing American leaders."*

Through preliminary reviews of the four states' records, DHS found that there may be as many as:

- 190,832 non-citizens registered to vote in California.
- 35,152 non-citizens registered to vote in New Jersey.
- 15,903 non-citizens registered to vote in Nevada.
- 14,576 non-citizens registered to vote in Pennsylvania.

Secretary Mullin called on the secretaries of state to respond within two weeks and confirm their intentions to collaborate with DHS in order to ensure free, fair, and honest elections.

In recent weeks, DHS has taken additional steps to safeguard the integrity and security of American elections. These measures include:

- The Federal Emergency Management Agency (FEMA) requiring grant recipients to take several key actions (/news/2026/07/10/dhs-requires-states-adopt-common-sense-election-security-measures-receiving-federal) on election integrity.

- DHS directing U.S. Immigration and Customs Enforcement (ICE) to enforce stricter penalties, including deportation (/news/2026/06/09/dhs-directs-ice-deport-aliens-who-vote-american-elections) , for aliens who illegally vote in American elections.

# # #

## Topics

ELECTION SECURITY (/TOPICS/ELECTION-SECURITY)

HOMELAND SECURITY ENTERPRISE (/TOPICS/HOMELAND-SECURITY-ENTERPRISE)

## Keywords

ELECTION SECURITY (/KEYWORDS/ELECTION-SECURITY)

SECRETARY MARKWAYNE MULLIN (/KEYWORDS/SECRETARY-MARKWAYNE-MULLIN)

NATIONAL SECURITY (/KEYWORDS/NATIONAL-SECURITY) PRESIDENT TRUMP (/KEYWORDS/PRESIDENT-TRUMP)

Last Updated: 07/17/2026