Stacey Leyton (SBN 203827)
Barbara J. Chisholm (SBN 224656)
Danielle Leonard (SBN 218201)
Connie K. Chan (SBN 284230)
Colin Clemente Jones (SBN 354301)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
(415) 421-7151
sleyton@altber.com
bchisholm@altber.com
dleonard@altber.com
cchan@altber.com
cjones@altber.com

*Attorneys for Plaintiffs*

Norman L. Eisen*
Tianna Mays*
Pooja Chaudhuri (SBN 314847)
Jacob Kovacs-Goodman*
Elizabeth Westphal*
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Ave. SE #15180
Washington, DC 20003 (202) 601-8678
(202) 601-8678
norman@democracydefenders.org
tianna@democracydefenders.org
pooja@democracydefenders.org
jacob@democracydefenders.org
elizabeth-contract@democracydefenders

*Attorneys for Plaintiffs*

* *Pro Hac Vice application forthcoming*

[Additional counsel and affiliations listed on signature page]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERVICE EMPLOYEES INTERNATIONAL UNION, AFL-CIO, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE, et al.,<br><br>Defendants. | Case No. 5:26-cv-12800-TLT<br><br>**SUPPLEMENTAL DECLARATION OF KASSRA A.R. OSKOOII** |

**Supplemental Expert Report of Kassra A.R. Oskooii**

## A. Background and Qualifications

1. I, Kassra A.R. Oskooii, am over 18 years of age and am competent to testify.

2. On October 20, 2026, I submitted an expert report in support of Proposed Intervenor-Defendants' Opposition to the federal government's motion for temporary restraining order, ECF No. 37-2. I submit this as a supplement to that report.

3. On October 27, 2026, I received Declaration #2 of Nicolas Bartell in Support of United States's *Ex Parte* Application for Temporary Restraining Order, ECF No. 107-2, and Declaration #2 of Eric McLoughlin in Support of United States's *Ex Parte* Application for Temporary Restraining Order, ECF No. 107-3.

4. These declarations do not alleviate any of the concerns I expressed in my initial report.

5. First, Mr. McLoughlin still does not fully address the provenance of the version of the California voter file that HSI used. He states that "[o]n or about March 19, 2026, HSI received what appeared to be the California voter list from a DHS senior counselor. The list appeared to be credible, in part, because it was accompanied by a document showing the list was obtained from the California Secretary of State's Office." Second McLoughlin Decl. ¶ 5. However, this does not state how the DHS senior counselor received the file nor from whom, meaning that the accuracy of the file is still unknown. Furthermore, the date that the file was received is redacted from the attached exhibit. It is therefore impossible to know how current the version of the voter file HSI used was, even if it at one point was an accurate version of California's voter rolls.

6. Next, Mr. Bartell's second declaration does not change my conclusion that USCIS's matching protocol is likely to be unreliable.

7. Mr. Bartell states that "USCIS enhances [California's] voter data through Lexis Nexis's Accurint Service (Accurint). USCIS isolates the following data fields from California

voting records and sends them to Accurint: First Name, Middle Name or Initial, Last Name, Street Address, City and State. Accurint uses this information to find additional information related to the individual, to include, when available: First Name, Middle Name or Initial, Last Name (if additional names or aliases exist), Social Security Numbers, Dates of Birth, Dates of Death (if applicable), phone numbers, associated addresses with City, State and zip code." Second Bartell Decl. ¶ 15.

8. This demonstrates that USCIS does not use "date of birth or age" in attempting to match individuals from the California voter file to Accurint's database, although that information is available on the voter file. *Id.* Using only name and address information from the voter file is likely to yield a higher percentage of false positives or mismatches as only two (name and address), rather than the three available, variables were used.[1] There further is no information provided on which particular address fields must match for Accurint and USCIS to link an individual on the voter file to an SSN (*e.g.*, street address, city, zip code) and how a partial match with a subset of address fields and name is treated. This is of particular importance given the lack of use of date of birth as an additional match criterion.

9. There is also no explanation of how Accurint uses the supplied information to match it to Social Security Numbers (SSNs), such as what Accurint does if the fields provided are not an exact match to Accurint's own database, how Accurint itself has obtained SSNs and ensured their accuracy, whether Accurint supplies any kind of data quality checks or metrics to assess the likelihood that its matches are accurate, and what methodology Accurint uses to create their database in the first place. Furthermore, on Accurint's own "Locating People Using Advanced Person Search" page, it suggests that even matching based on SSNs, which is not available on the publicly accessible version of the California voter file, is "not 100 percent dependable because some records may not contain a subject's SSN."[2] That is, even in best case scenarios, Accurint may have difficulty matching individuals reliably.

[1] Among other issues, this rudimentary matching criteria could introduce false positives in mixed status households, where, for example, a father and son share a name and address but have different citizenship statuses.

[2] *See Locating People Using Advanced Person Search*, Accurint, https://perma.cc/TTC4-35UZ (last visited Oct. 27, 2026).

10. Accurint's own terms and conditions appear to disclaim the accuracy of its data.[3] For example, Accurint customers appear to have to "acknowledge[] and agree[] that LN obtains its data from third party sources, which may or may not be completely thorough and accurate, and that Customer shall not rely on LN for the accuracy or completeness of information supplied through the LN Services." LexisNexis Master Terms and Conditions ¶ 5. In addition, the disclaimer of warranties states: "Due to the nature of public record information, the public records and commercially available data sources used in the LN Services may contain errors. Source data is sometimes reported or entered inaccurately, processed poorly or incorrectly, and is generally not free from defect." *Id.* ¶ 13. These contractual terms further indicate to me that Accurint contains some data that may be unreliable and could introduce the possibility of false positives.

11. Based on my initial literature review, given the time constraints of the supplemental report, it appears that little research exists regarding the accuracy of Accurint in matching individuals across databases. The research I have found suggests that it can misclassify individuals based on names and addresses (Mancini *et al.*, 2021), can return unverifiable SSNs for individuals (Qiao *et al.*, 2023), and can fail to accurately identify state of residence when individuals have left the state (Woolpert *et al.*, 2021). These reports and studies also suggest that biases in Accurint's data sources produce less complete or accurate results for certain sociodemographic groups (Woolpert *et al.*, 2021; Mancini *et al.*, 2021; Qiao *et al.*, 2023). For example, one study found that, among other groups, Black and Hispanic individuals, as well as those born outside the United States or living in poorer census tracts, "were more likely to not have LexisNexis matches, or to not have SSNs returned." (Qiao *et al.*, 2023).

12. Any mismatch caused by faulty matches from Accurint inherently casts doubt on any subsequent citizenship determinations. Mr. Bartell states that this data is then "paired with an internal USCIS alien number that may be the same individual." Second Bartell Decl. ¶

---

[3] There appear to be multiple versions of Accurint available, and Mr. Bartell does not disclose which version of Accurint USCIS uses. The terms and conditions I reviewed are linked from the Accurint website and are the LexisNexis Master Terms & Conditions, available at https://perma.cc/S76L-C5XT (last visited Oct. 27, 2026).

16. Given that subsequent citizenship determinations may rely on (1) an error-prone matching system, and (2) the assignment of an alien number that only “may be” the same individual, Mr. Bartell’s declaration does not change my conclusion that the USCIS’ matching protocol is likely to be unreliable.

13. Furthermore, neither of the additional declarations reveal any information about HSI’s “enrichment” process once USCIS passes its data to HSI described in Mr. McLoughlin’s first declaration. *See* ECF No. 22-3 ¶¶ 16-18.

14. Nor do the additional declarations provide any information about the accuracy or currency of the citizenship data used.

15. My work in this matter is ongoing, and I reserve the right to modify, update, or supplement my report, particularly as additional information is made available to me.

16. Pursuant to 28 U.S.C. § 1746, I, Kassra A.R. Oskooii, declare under penalty of perjury that the foregoing is true and correct.

Executed by:

Dr. Kassra A.R. Oskooii

Dated: October 27, 2026

**Work Cited:**

Qiao, B., Austin, A. A., Musco, J., Insaf, T., & Schymura, M. J. (2023). Using LexisNexis to Improve Social Security Number Information in the New York State Cancer Registry. Journal of Registry Management, 50(4), 138.

Mancini, S., Lang, K., & Wu, C. C. (2021). Mismatched and Mistaken. https://justiceinaging.org/wp-content/uploads/2021/04/SSADataReport.pdf

Woolpert, K. M., Ward, K. C., England, C. V., & Lash, T. L. (2021). Validation of LexisNexis® Accurint® in the Georgia Cancer Registry's Cancer Recurrence and Information Surveillance Program. Epidemiology (Cambridge, Mass.), 32(3), 434.