Stacey Leyton (SBN 203827)
Barbara J. Chisholm (SBN 224656)
Danielle Leonard (SBN 218201)
Connie K. Chan (SBN 284230)
Colin Clemente Jones (SBN 354301)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
(415) 421-7151
sleyton@altber.com
bchisholm@altber.com
dleonard@altber.com
cchan@altber.com
cjones@altber.com

*Attorneys for Plaintiffs*

Norman L. Eisen*
Tianna Mays*
Pooja Chaudhuri (SBN 314847)
Jacob Kovacs-Goodman*
Elizabeth Westfall*
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Ave. SE #15180
Washington, DC 20003 (202) 601-8678
(202) 601-8678
norman@democracydefenders.org
tianna@democracydefenders.org
pooja@democracydefenders.org
jacob@democracydefenders.org
elizabeth-contract@democracydefenders

*Attorneys for Plaintiffs*

* *Pro Hac Vice application forthcoming*

[Additional counsel and affiliations listed on signature page]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERVICE EMPLOYEES INTERNATIONAL UNION, AFL-CIO, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE, et al.,<br><br>Defendants. | Case No. 3:26-cv-12800<br><br>**DECLARATION OF MATT MORELES** |

# DECLARATION OF MATT MORELES

I, MATT MORELES, declare:

1. I am a resident of the State of California, and I am over the age of 18 years. I make this declaration in support of Plaintiffs' motion for a temporary restraining order. I am competent to testify as to the matters in this declaration, and make it based on my personal knowledge, as well as my review of relevant business records.

2. I serve as the Registrar of Voters for the County of Santa Clara ("Santa Clara County"). I assumed the duties of the Registrar of Voters on June 9, 2025, and have worked in the Office of the Registrar of Voters ("ROV") conducting elections in Santa Clara County for 22 years. I am also a Certified Election and Registration Administrator, a member of the Board of Directors of the California Association of Clerks and Election Officials, a member of the National Association of Election Officials, and an appointed member of the California Secretary of State's Voter's Choice Task Force. I have devoted my career to administering elections and protecting the integrity of our election system. I am committed to empowering every eligible voter to access the voting assistance they need to cast their ballot.

3. The ROV is responsible for administering the November 3, 2026, General Election for Santa Clara County, a county with over 1 million registered voters. These responsibilities include operating secure in-person vote centers, processing and counting ballots, and conducting significant voter outreach and education efforts.

4. I am aware that California generally—and Santa Clara County specifically—has recently received demands from the federal government concerning its voter registration and election management procedures. Below are the most recent demands of which I am aware.

5. I am aware of reports that on October 13, 2026, U.S. Department of Justice (DOJ) officials sent a letter to the California Secretary of State (SOS) and County of Los Angeles, asking those entities to review, within 48 hours, a list of approximately 20,000 people the federal government "believe[d] are likely noncitizens who were sent a vote-by-mail ballot to participate in the November 2026 federal election," and that the letter requested that the recipients segregate the ballots of any people whose citizenship could not be verified and not tabulate their ballot "until

citizenship can be determined."[1]

6. I am aware that on October 15, 2026, DOJ sued the State of California, SOS, and Los Angeles County, seeking "a preliminary and permanent injunction enjoining California from tabulating in federal elections vote-by-mail ballots received from individuals identified by the Federal Government as likely noncitizens until those individuals' citizenship status can be verified." Compl. ¶ 63, *United States v. California et al.*, Case No. 2:26-cv-12025 (N.D. Cal. Oct. 15, 2026).

7. I am aware that on October 23, 2026, two Homeland Security Investigations (HSI) agents hand-delivered a letter to Santa Clara County—first stopping at the ROV main office, then ultimately delivering the letter to the Office of the County Counsel. The letter was addressed to me and claimed that 902 noncitizens were on Santa Clara County's voter rolls. The letter demanded that ROV (1) produce confidential, "nonpublic" voter registration information for those 902 individuals, and (2) "segregate" the ballots of those individuals until such time as their citizenship is confirmed (presumably by DOJ, although the letter did not specify).

8. The DOJ's October 23, 2026, letter stated that the "unmistakably clear … legal implications" of refusing to comply with DOJ's demands—which the DOJ referred to as "facilitating or ignoring federal crimes"—would be "significant." Specifically, the letter explicitly threatened that failure to comply with DOJ's demands created the risk that election staff would be guilty of aiding and abetting a federal crime. A true and correct copy of the DOJ's October 23, 2026, letter to me, excluding that letter's attachments, is attached hereto as **Exhibit A**.

9. On October 25, 2026, the Office of the County Counsel responded to DOJ with a letter stating that DOJ's request demanded ROV take unlawful actions, that the ROV was complying and would continue to comply with applicable state and federal laws, and that the ROV would not be complying with DOJ's demands. A true and correct copy of the Office of the County County's October 25, 2026, letter is attached hereto as **Exhibit B**.

---

[1] Ciaran McEvoy, *United States Sues California After Determining More Than 20,000 Likely Noncitizens Are Registered to Vote in the Golden State*, United States Attorney's Office for the Central District of California (Oct. 15, 2026), https://www.justice.gov/usao-cdca/pr/united-states-sues-california-after-determining-more-20000-likely-noncitizens-are.

10. Throughout this year, including recently, President Trump, Secretary of Homeland Security Mullin, and other DOJ officials made numerous false claims and threats related to various states' voter rolls, including California's.

11. For example, I am aware of reports that the Assistant Attorney General for the DOJ Civil Rights Division sent a letter on July 7, 2026 to election officials in every state asserting that "any election officer, including the chief election officer of the state, . . . could be subject to criminal liability" if they do not remove noncitizens from voter rolls, and that the DOJ also sent letters to several local governments stating that federal election monitors would be in those areas for the primary election.[2] I am also aware of reports that just ten days later, on July 17, 2026, Secretary Mullin claimed on July 17, 2026, that DHS had "identified 250,000 noncitizens registered to vote" across several states, including California.[3] But, as I understand subsequent events to have borne out, and courts to have found, Secretary Mullin and DHS's list was based on incomplete, inaccurate, and unreliable data. I am also aware that, despite these developments, Secretary Mullin has threatened state election officials with prison time for failing to act on DHS's information.

12. Specifically, I am aware of reports that Secretary Mullin gave a speech on July 17, 2026, where he stated the following: "If the election officials, once we gave them the information they need to secure their elections, and they chose not to, then those individuals can also be held accountable by fines, by penalties, and even, depending on how far it goes, prison time."[4]

13. I am also aware of news reports that on October 23, 2026, First Assistant U.S. Attorney for the Central District of California Bilal Essayli made a public statement that elections officials who did not comply with the DOJ's demands, and who "knowingly process[] the ballot of a

---

[2] Nick Corasaniti, *Justice Department Threatens Top Election Officials Over Noncitizen Voting*, N.Y. Times (Jul. 7, 2026), https://www.nytimes.com/2026/07/07/us/politics/justice-department-elections-noncitizen-voting.html.

[3] Gabe Cohen, *Trump Officials Touted a Voter Fraud Bombshell. Their Data Hasn't Proved It.*, CNN (Aug. 21, 2026), https://www.cnn.com/2026/08/21/politics/markwayne-mullin-voter-fraud-nevada.

[4] Rebecca Shabad, *Homeland Security Secretary Markwayne Mullin threatens states over elections*, NBC News (July 17, 2026), https://www.nbcnews.com/politics/elections/homeland-security-secretary-markwayne-mullin-threatens-states-election-rcna588002.

noncitizen," are "opening themselves to legal jeopardy."[5] I interpret this statement to mean that DOJ views failure to comply with the demands of DOJ's letter as "knowingly" processing the ballots of noncitizens.

14. These public statements and actions are very concerning to me, especially because the ROV will not be complying with the demands in DOJ's October 23, 2026 letter.

15. Most recently, I am aware of reporting that DOJ has now ordered a "criminal probe" of California state and local elections officials, including reporting that at least two elections staff in another California county have been served with subpoenas in a federal criminal grand jury investigation.[6] According to these reports, one county staff person was served by federal agents at their home.

16. The federal government's conduct has had and continues to have a severe chilling effect on my staff and me. They and I are worried about retaliation and harassment—including through civil litigation and criminal prosecution—for simply carrying out our jobs. Relatedly, I have had to issue written and verbal guidance to all ROV employees and election volunteers about what to do if federal agents appear at a voting location, ballot drop box, or ballot processing location. Additionally, I have had to issue written and verbal guidance to all ROV employees and election volunteers about what to do if federal agents attempt to take possession of ballots, voter records, or election equipment, or attempt to access secure election systems or storage areas. Training for election workers and volunteers had to be updated to address de-escalation and safety protocols in the event of a disruption caused by law enforcement or federal agent activities in or around a vote center. Similarly, the topic of federal disruptions has been a focal point of internal discussions around contingency planning and emergency response for this election. To my knowledge, this is the

---

[5] Safiyah Riddle, *California election officials frustrated, rattled by DOJ demand to sequester 'noncitizen' ballots*, PBS News (Oct. 25, 2026), https://www.pbs.org/newshour/amp/politics/california-election-officials-frustrated-rattled-by-doj-demand-to-sequester-noncitizen-ballots.

[6] Ben Penn, *DOJ Orders Criminal Probes of California Officials on Voting*, Bloomberg Law (Oct. 29, 2026), https://news.bloomberglaw.com/us-law-week/doj-orders-criminal-probes-of-california-officials-over-ballots; Devlin Barrett & Shawn Hubler, *Justice Dept. Pressures California With Expanded Election Investigation*, New York Times (Oct. 29, 2026), https://www.nytimes.com/2026/10/29/us/trump-doj-california-voter-rolls-midterms.html.

Docusign Envelope ID: 071F7DB4-233F-8077-8031-D341366E6E39

first time our office has issued such strong guidance about such extreme scenarios.

17. My office and staff are therefore preparing for further interference in our election process as November 3 approaches. Such interference is likely to prove immensely disruptive to county election procedures, including the timely tabulation and certification of results. My staff work extremely hard with limited resources to conduct honest, fair, and efficient elections for the people of Santa Clara County, but further federal interference may strain those efforts beyond their breaking point. Moreover, the very threat of such imminent interference has caused further strain and burden on my staff, who are already fearful of retaliatory measures from DOJ and other federal agencies.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 30, 2026 at Santa Clara County, California.

DocuSigned by:
[signature]
79F629F733C7420...

MATT MORELES

# Exhibit A

to Declaration of Matt Moreles ISO Plaintiffs' Motion for Preliminary Relief, *Service Employees International Union, AFL-CIO, et al., v. United States Department of Justice, et al.*, No. 3:26-cv-12800 (N.D. Cal.)

*United States Attorney*
*Northern District of California*

*11th Floor, Federal Building*
*450 Golden Gate Ave., Box 36055*
*San Francisco, CA 94102-3495*

*(415)436-7200*

*FAX: (415)436-7234*

October 23, 2026

Matt Moreles
Registrar of Voters
Santa Clara County
1555 Berger Drive, Building 2
San Jose, CA 95112

Re: Notice of Suspected Likely Aliens on the Santa Clara County Voter Roll

Dear Mr. Moreles:

As you're aware, federal law prohibits noncitizens from voting in federal elections. *See* 18 U.S.C. § 611. It is also unlawful to deprive the residents of California of a fair and impartially conducted federal election process by casting or tabulating ballots that are known by the person to be materially false, fictitious, or fraudulent under the laws of California. *See* 52 U.S.C. 20511(2)(B). And it is unlawful for those not entitled to vote in an election to fraudulently vote or attempt to vote. *See* Cal. Elec. Code § 18560(a). The Supreme Court has also recognized that States "may not induce, encourage or promote private persons to accomplish what it is constitutionally forbidden to accomplish." *Norwood v. Harrison*, 413 U.S. 455, 465 (1973) (citation omitted). I write to seek your help to protect the integrity of the ongoing federal election.

On July 16, the Secretary of the Department of Homeland Security (DHS) made the California Secretary of State aware that there are likely numerous noncitizens registered to vote in the federal election in California. He then asked for her cooperation to ensure the accuracy of these findings and to prevent noncitizen votes from diluting citizen votes. The Secretary's response the following week did not refute that noncitizens are registered to vote in California. Nor did it contest that noncitizens receive ballots through California's vote-by-mail regime, which automatically sends voting materials to "every registered voter." 2021 Cal. Stat. ch. 312 (codified at Cal. Elec. Code § 3000.5). Instead, the Secretary of State asked for more information. The Department of Justice provided those details to the Secretary on October 13, which included a list of more than 20,000 names with accompanying personal identifying information for suspected aliens who are registered to vote in California. I am now providing you with a subset of that list specific to Santa Clara County that contains 902 likely aliens. Earlier this week, the Department charged 28 aliens for unlawful voting and registration offenses, each

of whom was on the list provided to the California Secretary of State.[1]

Within 48 hours, we ask that you commit to working with DOJ and DHS to identify who on the accompanying list is a citizen and who is not. That means sending us the nonpublic information associated with each suspected alien's registration, which includes everything in your possession from the following: a social security number, a copy of a state ID or driver's license or the information that appears on it, a copy of the voter registration application supporting the registration, and a copy or list of documents that were presented by the registrant at the time the person registered to vote or obtained their driver's license if registered as part of motor voter. By comparing the accompanying list with the requested information you provide, together we can quickly assess these specific suspected aliens registered to vote in your County.

For individuals whom citizenship status cannot be confirmed, we request that you immediately instruct the appropriate elections official to segregate—not cancel—those individuals' vote-by-mail ballots until their citizenship status can be determined. If a ballot for any individual on the list has been returned, instruct the appropriate elections official to not process the ballot until citizenship can be determined. This process will protect American citizens' votes while preventing noncitizens from participating in the federal election in violation of federal law.

A substantially similar letter to this one was sent to the Los Angeles County Registrar-Recorder/County Clerk. Instead of committing to working with the Department to prevent aliens from voting in the upcoming federal election, it sent a letter declining to review the evidence presented to it and resisting our civil lawsuit to compel segregation of those ballots until citizenship could be verified.

I write to make unmistakably clear the legal implications of continuing to send vote-by-mail ballots to those people on the list or tabulating ballots cast by them until citizenship can be verified.

This list was developed through a multilayered, multiagency investigative methodology at DHS that relied upon internal immigration records, data matching, supervisory verification procedures, and more. I am also attaching two declarations that detail this process that support the civil lawsuit filed last week.

The legal consequences for either facilitating or ignoring federal crimes are significant. An alien voting in a federal election is a federal crime—and knowingly facilitating such conduct is equally unlawful. Under 18 U.S.C. § 611(a), aliens are prohibited from voting in any election involving federal offices. This is also a state offense in California. *See* Cal. Elec. Code § 18560(a). And under 52 U.S.C. 20511(2)(B), knowingly violating that state statute in a federal election is also a federal offense. Further, under 18 U.S.C. § 2, anyone who aids, abets, counsels, induces, or procures the commission of a federal offense is equally liable. If persons knowingly tabulate ballots cast by individuals identified by federal agencies as noncitizens, they risk

---

[1] https://www.justice.gov/opa/pr/justice-department-charges-28-foreign-nationals-california-election-crimes

becoming aiders and abettors to a federal crime. Any assertion that ballots must be counted simply because California's registration system relies on self-attestation of citizenship does not relieve election officials of their obligations under federal law ***when they are on actual notice of noncitizen voting.*** Nor can state procedures supersede federal criminal statutes.

These federal statutes do not excuse unlawful voting simply because the State employs a permissive registration method. The Department is not asking Santa Clara County to adjudicate immigration status; it is asking it to temporarily set aside ballots from individuals whose eligibility is credibly in question—a standard election-administration practice implemented nationwide.

Others have pointed to the National Voter Registration Act's ("NVRA's") "quiet period." That is misplaced. The NVRA's 90-day limitation applies only to systematic list-maintenance programs—not to targeted, individualized evidence of unlawful voting identified by federal law enforcement. The Department is not requesting a purge, cancellation of registrations, or any programmatic action. We request only temporary ballot segregation pending citizenship verification. Invoking the NVRA to justify counting ballots unlawfully cast is both legally incorrect and operationally irresponsible.

Once the United States provides credible evidence that certain ballots may be unlawful to count, election officials may not disregard that information because it is inconvenient to process. Administrative difficulty is not a defense to violating federal law or aiding or abetting a federal offense.

The Department strongly urges you and your agency to work with the Department of Justice to ensure the integrity of California's federal elections before taking actions that risk significant federal scrutiny and legal exposure.

Sincerely,

CRAIG H. MISSAKIAN
United States Attorney

# Exhibit B

to Declaration of Matt Moreles ISO Plaintiffs' Motion for Preliminary Relief, *Service Employees International Union, AFL-CIO, et al., v. United States Department of Justice, et al.*, No. 3:26-cv-12800 (N.D. Cal.)

**OFFICE OF THE COUNTY COUNSEL**
**COUNTY OF SANTA CLARA**

County Government Center
70 West Hedding Street
East Wing, 9th Floor
San José, California 95110-1770

(408) 299-5900
(408) 292-7240 (FAX)

Tony LoPresti
**COUNTY COUNSEL**

Kavita Narayan
**CHIEF ASSISTANT COUNTY COUNSEL**

Robert M. Coelho
Michaela L. Lewis
Steve Mitra
Elizabeth G. Pianca
Relic Sun
Gita C. Suraj
**ASSISTANT COUNTY COUNSEL**

October 25, 2026

BY ELECTRONIC MAIL

Craig H. Missakian
U.S. Attorney's Office
Northern District of California
11th Floor, Federal Building
450 Golden Gate Ave., Box 36055
San Francisco, CA 94102
craig.missakian@usdoj.gov

Re: DOJ Demand Letter Dated October 23, 2026

Dear Mr. Missakian:

This letter acknowledges County of Santa Clara Registrar of Voters Matt Moreles's (ROV) receipt of the U.S. Department of Justice's (DOJ) letter dated October 23, 2026, hand delivered to the Office of the County Counsel for the County of Santa Clara in San José at approximately 12:39 p.m. PDT. The letter was accompanied by a printout of what the letter describes as a list of "902 likely aliens."

Your letter demands that the ROV "[w]ithin 48 hours . . . commit to working with DOJ and DHS to identify who on the accompanying list is a citizen and who is not" by sending DOJ confidential, "nonpublic" voter registration information—including Social Security numbers, state ID and/or driver's license information, voter registration applications, and a copy of any documents presented during voter registration—for all 902 people on the list. It also demands that, on the basis of a printed spreadsheet of names and addresses, the ROV "segregate" and not count the ballots of these 902 people.

The ROV is legally prohibited from taking the actions requested in the letter and is, therefore, unable to comply with the requests. As a preliminary concern, the letter does not provide specific, actionable information regarding the source or accuracy of the allegations that each of the 902 reported county residents is a "likely" noncitizen. The letter is accompanied by declarations from two individuals who state they helped create the list of alleged noncitizens.

The declarations make clear that DOJ's analysis—which started with "what appeared to be the California voter roster" that "appeared credible enough"—has relied in large part on unknown "third party commercial data" and the federal government's notoriously inaccurate citizenship records.[1] The problem of the reliability of federal records hardly needs to be explained to DOJ: Less than forty-eight hours before your letter was delivered, a federal court in the Northern District of California enjoined the federal government from conducting certain election-related field operations in California based on records generated by its "reliance on admittedly flawed and incomplete data," including "data that is widely known to inadvertently include U.S. citizens." *California Nurses Association, et al. v. Mullin, et al.*, No. 4:26-cv-10680-AMO, 2026 WL 3166149, at *1–2, 8–10 (N.D. Cal. Oct. 21, 2026).

The fact that your letter requests confidential voter information in order to confirm DOJ's unsubstantiated allegations against County residents is further proof that the list of 902 individuals is just that—unsubstantiated.[2] In fact, Acting Deputy Attorney General Trent McCotter has publicly admitted that there may be errors in these lists, and that has proven true. Los Angeles County's investigation into the list that was provided to it indicates that such errors are rampant. Of the individuals in the sample Los Angeles reviewed, over 40% have canceled registrations, and over a third were born in the United States, automatically making them citizens. And a spot check of a sample of the list sent to Santa Clara County also reveals significant errors. None of the names checked has any history of a successfully counted ballot. Roughly a third of the sample were canceled voter registrations, some of which were canceled as far back as 2019. On the first page alone, one name appears three times, with the same date of birth and address in all three instances, suggesting there may be further duplicates throughout the list.

Notably, DOJ has not presented the County with a judicial warrant for the confidential information it seeks. DOJ certainly knows how to obtain a judicial warrant and could have done so if it had a sufficient evidentiary basis for the allegations in the letter. But as DOJ counsel represented to the Ninth Circuit in oral argument in *U.S. v. California* just this afternoon: these

---

[1] As another federal court also very recently noted, the federal government's citizenship records are "known to be unreliable." *Common Cause, et al. v. Department of Justice, et al.*, No. 1:26-cv-01352, 2026 WL 3033772, at *8 (D.D.C. Oct. 9, 2026); *see also* U.S. Social Security Administration, *Social Security Corrects Tens of Millions of Files in the Social Security Number Database Improving the Integrity of Vital Records* (Oct. 20, 2026), https://www.ssa.gov/news/en/press/releases/2026-10-20.html ("SSA is currently in the process of correcting an additional 8.5 million records with inaccurate citizenship status."); Jen Fifiefl & Zach Despart, The Texas Tribune, *A federal tool to check voter citizenship keeps making mistakes. It led to confusion in Texas.* (Feb. 13, 2026), https://www.texastribune.org/2026/02/13/save-voter-citizenship-tool-mistakes-confusion/; Clint Swift & Jiamin Huang, *The 'SAVE' Tool Could Disenfranchise U.S. Citizens* (August 2025), https://protectdemocracy.org/wp-content/uploads/2025/09/SAVE_DOGE-Full_graphics.pdf.

[2] As evidence that DOJ's demands are justified, you note that DOJ "charged 28 aliens for unlawful voting and registration offenses, each of whom was on the list provided to the California Secretary of State." But as you know, criminal charges or arrests are not a basis for voter registration cancellation—or any other ROV action—under either state or federal law.

inaccurate, unsubstantiated lists are "all the evidence we have." In short, it is clear that DOJ's lists are deeply flawed, and the County will not be bullied into participating in DOJ's fishing expedition for more definitive information.

Your letter cites no statutory or other legal authority that would allow DOJ to direct a county's administration of ballots. The opposite is true: DOJ is demanding that the ROV engage in an unlawful course of conduct. The ROV will not do so. It intends to carry out its constitutional mandate ethically and soundly.

First, federal and state law support and require voter registration when eligibility requirements are met by attestation from an applicant. 52 U.S.C. §§ 20501 *et seq.*, 20504; Cal. Elec. Code §§ 2102–03, 2105–06. For voter registration purposes, a person may prove they are a citizen by their certification under penalty of perjury on the affidavit of registration. Cal. Elec. Code § 2111. Such attestation shall be deemed evidence of citizenship for voting purposes only. Cal. Elec. Code § 2114. As such, the ROV is required to register voters when eligibility requirements are met by the voter's own attestation of citizenship and associated identification information that is verified through the California statewide voter registration database maintained and regulated by the California Secretary of State, in addition to a number of other voter eligibility criteria reviewed and managed by other agencies. The ROV does not, nor is it authorized to, independently investigate an applicant's citizenship status. Any investigation regarding a registered voter's eligibility must be based on individualized evidence that would be referred to and handled by other enforcement and investigative agencies, such as the California Secretary of State or the California Attorney General. But even more problematically, your letter demands that, less than two weeks away from Election Day and without any identified authority, the ROV segregate and not process ballots for individuals on the list until "their citizenship status can be determined." The letter does not explain who would make such a determination, how, or when—much less whether such a determination would occur prior to the legal close of the voting period. The ROV is not authorized to treat any registrant's ballot differently, withholding it for an unspecific amount of time including past the mandatory vote counting deadline, on the basis that it is awaiting word from an unspecified authority that the registrant's vote may be counted.

Second, under 52 U.S.C. section 10307(a), "[n]o person acting under color of law shall fail or refuse to permit any person to vote who is entitled to vote . . . or is otherwise qualified to vote, or willfully fail or refuse to tabulate, count, and report such person's vote." Notice of unverified and uncorroborated allegations of voter ineligibility does not authorize the ROV to violate this federal law. Indeed, a failure to register voters as required by federal and state law can subject the ROV to civil enforcement and a private right of action. 52 U.S.C. § 20510; Cal. Elec. Code § 2142.

Third, you offer no legal authority for the proposition that the ROV can produce unredacted confidential voter information without a subpoena or warrant. California law prohibits the disclosure of the information you request, absent some form of court order or a

confidentiality agreement. *See, e.g.*, Cal. Gov't Code §§ 7921.505(c)(5), 7924.000, 7924.005; Cal. Elec. Code § 2194(b). Unlawfully distributing confidential voter information can also subject the ROV to a private right of action. Cal. Elec. Code § 2194(d). The ROV cannot and will not disclose the confidential information of almost 1,000 reported county residents in response to an unsubstantiated letter. The requested action would be unlawful and a breach of voters' trust of the highest order.

As you acknowledge in your letter, the federal National Voter Registration Act (NVRA) does indeed safeguard against systematic removals of ineligible voters ahead of a federal election. You reference "targeted, individualized evidence of unlawful voting," but you have simply provided a list of names unsupported by evidence. We understand that your goal is to have California (through its counties) withhold the ballots of all 20,000 registrants until such time as DOJ conclusively proves that those individuals are noncitizens, requiring voter registration cancellation. Splitting the DOJ's list of more than 20,000 California registrants into county-by-county lists does not transform a systematic effort into an individualized one. At this stage, while you may not be demanding cancellation—a request that would be patently premature in light of the total lack of evidence presented in your letter—DOJ's action as described in the letter and attached declarations can only be described as "systematic." You present no individualized evidence, which would ultimately be required for the ROV to take any action as to any of the registrants on your list.

Based on the foregoing, the ROV is unable to comply with DOJ's demands. Be aware that we consider DOJ's efforts to threaten California election officials with criminal sanctions for following federal and state law to be an effort to unlawfully intimidate both election officials and California voters. The County reserves its rights to pursue all legal remedies against DOJ for its unlawful intimidation of election officials and California voters. The ROV will continue to comply with federal and state laws while it conducts free and fair elections in this county.

Very truly yours,

DocuSigned by:
Tony LoPresti
CBB7207010D449D...

TONY LOPRESTI
County Counsel