UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERVICE EMPLOYEES INTERNATIONAL UNION, AFL-CIO, et al.,<br>Plaintiffs,<br>v.<br>UNITED STATES DEPARTMENT OF JUSTICE, et al.,<br>Defendants. | Case No. 26-cv-12800-TLT<br>**QUESTIONS FOR THE HEARING**<br>Re: Dkt. No. 33 |

This action commenced on October 29, 2026, five calendar days prior to the election. ECF 1. This matter was initially assigned to Judge P. Casey Pitts who filed an order of recusal on October 30, 2026. ECF 9. Thereafter, the matter was reassigned to this department. ECF 12. Plaintiffs filed a motion for temporary restraining order on the same day, October 30, 2026. ECF 17. Plaintiffs subsequently filed a series of exhibits on the docket over the next few hours. The Court issued a Temporary Restraining Order ("TRO") the same evening. ECF 26.

Defendants ask this Court to stay TRO the pending appeal, or, in the alternative, consider their motion as one made as a "motion to dissolve" under Fed. R. Civ. P. 65(b)(4) and issue only an indicative ruling thereunder so as to preserve Defendants' jurisdiction in the Court of Appeals. As a preliminary matter, the Court acknowledges some errors in its October 30, 2026 TRO. For example, the Court issued its Order prior to all of Plaintiffs' exhibits being uploaded on the docket, issued relief pursuant to the Administrative Procedures Act ("APA") without including its analysis of Plaintiffs' APA claims, and the TRO was set to expire 17 days, rather than 14 days, from issuance. The Court will also address Defendants' concerns that the TRO constitutes a mandatory injunction.

The Court will **MODIFY** the TRO issued on October 30, 2026, to correct errors, for clarity and to make a record for the parties. The Court asks the parties to address the following questions at tomorrow's hearing in advance of the Court issuing its modified ruling:

**I. STANDING**

A. In *California Nurses Association v. Mullin*, No. 26-7139, 2026 WL 3268397, at *4 (9th Cir. Oct. 30, 2026) (citation omitted), the Ninth Circuit held that certain union plaintiffs had associational standing, as they had "clearly shown that the Federal Defendants' conduct chills citizens' election-related activities and presents 'a real and immediate threat of future injury' to their legally protected interest in participating in the election." In this action, Plaintiffs aver that election workers, including members of SEIU and AFSCME, express ongoing fear and concern about Defendants' conduct. *See, e.g.*, ECF 19-1 ¶¶ 13–14; ECF 23 ¶¶ 23, 29, 34, 38–41; ECF 29-2 ¶¶ 4, 6–7; ECF 29-4, ¶¶ 9–10.

i. **<u>To Defendants:</u>** On what basis do Defendants distinguish the Ninth Circuit's associational-standing determination in *California Nurses Association* from the circumstances presented here?

ii. **<u>To Both Parties</u>**: To the extent that associational standing exists under *California Nurses Association* in this action, does it apply to each Plaintiff independently?

iii. **<u>To Both Parties</u>**: Even if individual election workers did not personally receive a letter from Defendants, doesn't the threat of criminal prosecution chill SEIU and AFSCME members' election-related activities, such that SEIU And AFSCME have associational standing?

B. Plaintiffs also describe concerns among naturalized U.S. citizen members of NAACP and LULAC that "their names may wrongfully appear on the lists of noncitizens" or that "databases often fail to reflect that a person has been naturalized." *See* ECF 19-2 ¶ 13; ECF 19-3 ¶ 9. "[E]very NAACP member" faces the risk that election workers, "under the threat of federal prosecution, could set aside or decline to count that member's ballot," based on Defendants' assertion that the member's identifying

information matches that of a current or former noncitizen. ECF 19-3, ¶ 14. LULAC members have expressed fear and anger about the federal government's conduct. See ECF 19-2, ¶¶ 17, 21. In *Mi Familia Vota v. Fontes*, 129 F.4th 691, 708-09 (9th Cir. 2025), the Ninth Circuit held that representational standing was present, where there was a danger that "properly registered voters, who in fact are citizens, may have their voter registrations cancelled upon mere and potentially arbitrary suspicion of a county recorder, losing their constitutional right to vote."

i. **<u>To Both Parties</u>**: Is the danger that NAACP and LULAC's members will be placed on Defendants' lists of potential non-citizens in any way akin to the dangers that Promise Arizona's members faced in *Mi Familia Vota*?

C. Under *Arizona All. for Retired Americans v. Mayes*, 186 F.4th 622 (9th Cir. 2026), have NAACP and LULAC clearly shown that it is likely that Defendants' actions affect or interfere with their core activities, such that they have organizational standing?

D. **<u>To Both Parties</u>**: Does the Court's standing analysis with respect to Plaintiffs' claim under Section 11(b) apply equally to Plaintiffs' constitutional claims? If not, please discuss what additional showings are required to establish standing for Plaintiffs' Due Process claims.

## II. SECTION 11(B)

A. In *California Nurses Association v. Mullin,* No. 26-cv-10680, 2026 WL 3166149, at *7 (N.D. Cal. Oct. 21, 2026) this Court held that Section 11(b) of the Voting Rights Act creates an implied right of action for injunctive relief. Other decisions from district courts in this Circuit are consistent with *California Nurses Association*. *See Kennedy v. Meta Platforms, Inc*. No. 3:24-cv-02869, 2024 WL 4031486, at *6 (N.D. Cal. Sept. 3, 2024) ("It is well established that § 11(b) reaches beyond government actors, affording a private right of action . . . . (citation and internal quotation marks omitted)); *Krabach v. King Cnty.*, No. 2:22-cv-1252, 2023 WL 7018431, at *3 (W.D. Wash. Oct. 25, 2023) (holding that an implied right of action exists under Section 11(b) of the

Voting Rights Act); *Arizona Democratic Party v. Arizona Republican Party*, No. 16-cv-03752, 2016 WL 8669978, at *4 (D. Ariz. Nov. 4, 2016) (recognizing that Section 11(b) of the Voting Rights Act "does not exclude a private right of action for injunctive relief, as Plaintiff has brought here").

i. Is there any binding Supreme Court or Ninth Circuit authority that would require this Court to reach a different conclusion than the persuasive authorities cited above?

B. **To Defendants**: What evidence supports Defendants' assertion that it provided "credible evidence that certain ballots may be unlawful to count," given the reported "missing and jumbled information" in the voter list and Secretary Weber's stated concerns about DHS's methodology and data reliability? Identify the verification undertaken before demanding that election officials confirm citizenship or withhold ballot processing within 24 or 48 hours, and explain how the evidence supports those demands rather than further investigation. *See* ECF 19-8, Exs. 23, 31–32; ECF 19-7, Exs. 11, 21.

C. What legal and factual basis distinguishes Defendants' repeated warnings of criminal prosecution from the intimidation prohibited by Section 11(b), given the Washington Director of Elections' account of the letters, the reported pursuit of criminal subpoenas, and the court's admonition in *United States v. California* that "these threats must stop"? *United States of America v. California*, ("*California I*"), Case No. 2:26-cv-12025 (C.D. Cal. Oct. 28, 2026), ECF 19 at 7.

## III. CONSTITUTIONAL CLAIMS

A. If "Congress intends to alter the usual constitutional balance between the States and the Federal Government, it must make its intention to do so unmistakably clear in the language of the statute." *Gregory v. Ashcroft*, 501 U.S. 452, 460-61 (1991). The court in *California I* said any litigant who "believes requiring additional confirmation of citizenship is necessary for vote-by mail ballots … the appropriate audience for that suggestion, in full accord with the plain language of the Elections Clause, is Congress,



United States District Court
Northern District of California

not the Courts." United States v. California, No. 26-7070 at 13 (9th Cir. 2026) (Bennett, J., concurring) (citing Watson, 609 U.S. at 695) ("[P]olicy arguments are properly directed to legislatures, not courts."). The *California I* court went on to note that "Congress knows how to displace state election procedures with federal law." *See* National Voting Registration Act of 1993 (52 U.S.C. § 20510(a)); Help America Vote Act of 2002 (HAVA) (52 U.S.C. § 2111); Voting Rights Act of 1965 (52 U.S.C. § 10307(a)); Voting Accessibility for the Elderly and Handicapped Act of 1984 (VAEHA) (42 U.S.C. §§ 1973ee–1973ee-6).

i. **<u>To Defendants</u>**: While *California I* addressed the authority 18 U.S.C. § 611 grants the executive branch with respect to segregating and counting ballots, the rationale applies here. What statutory authority to Defendants' claim authorizes them to send letters to officials and employees in California (and other states) warning of criminal prosecution under an aiding and abetting theory against any election worker who processes ballots the Department of Justice purports to belong to unlawful voters?

B. Is *Bennett v. Yoshina*, 140 F.3d 1218, 1226-1227 (9th Cir. 1998) the most recent authority from this Circuit to support Plaintiffs' Fifth Amendment Due Process claim?

## IV. APA CLAIMS

A. The Supreme Court has "long taken" a "pragmatic approach" to the question what constitutes final agency action. *San Francisco Herring Ass'n v. Dep't of Interior*, 946 F.3d 564, 577-78 (9th Cir. 2019) (quoting *U.S. Army Corps of Engineers v. Hawkes Co.*, 578 U.S. 590, 599, (2016)). Procedurally, this case is similar to *San Francisco Herring Ass'n*. There, the Ninth Circuit found that allegations that, based on the defendant's conduct, a member of the San Francisco Herring Association "understood that if he disobeyed the [government's] orders, he would be subject to federal prosecution" were "enough to sustain [the] action" under the final agency action requirement of an APA claim. *Id.* at 577. The Ninth Circuit distinguished ordering



United States District Court
Northern District of California

United States District Court
Northern District of California

certain conduct "on pain of fines and imprisonment—backed by formal agency notices clearing up reported [jurisdictional disputes" from "mere restatements of the law," "guides containing answers to frequently asked questions," or agency letters that are "purely informational in nature." *Id.*

i. Describe the features of Defendants' letters which make Defendants' conduct more similar to or distinguishable from that conduct found to constitute final agency action in *San Francisco Herring Ass'n v. Dep't of Interior*, 946 F.3d 564 (9th Cir. 2019).

B. Explain how Defendants' conduct accords with Justice Manual § 9-85.300's instruction to "generally avoid interfering or appearing to interfere with election administration, tabulation, validation, or certification," and identify what evidence of an election official's knowledge or intent, beyond receipt of Defendants' voter list, supports the threatened aiding-and-abetting liability. *See* ECF 19-4, ¶¶ 11–12 & Ex. C; ECF 19-8, Exs. 31–32, 37, 42

## V. RELIEF

A. Federal courts may grant relief only to the extent "necessary to provide complete relief to each plaintiff with standing to sue." *Trump v. CASA, Inc.*, 606 U.S. 831, 861 (2025). However, an injunction that protects non-parties may be appropriate if necessary to afford complete relief to the parties in the case. In *CASA*, the Court gave the example of a nuisance case seeking to prevent someone from playing their music too loud. *Id*. at 851–52. Moreover, CASA declined to disrupt the general understanding that the APA authorizes federal courts to universally vacate federal agency action. *See id.* at 847 n.10.

i. **To Both Parties**: Please discuss whether either of these two exceptions to CASA's general rule prohibiting relief to non-parties applies in this case.

ii. **To Both Parties**: Discuss the implication of the Court narrowing the scope of the TRO to the Northern District of California, to the state of California, or to the states of Washington and California.

B. **To Plaintiffs**: Please identify the particularized need for the language asking the Department of Justice to inform this Court of any "pending search warrant applications, grand jury subpoenas, or other demands to access election materials," and of efforts to "compel testimony related thereto."

**C.** **To Both Parties**: Describe, procedurally, how the Court's issuance of an indicative ruling differs from this Court modifying its October 30, 2026, Temporary Restraining Order.

The Court acknowledges that the parties' briefing—particularly Plaintiffs' latest responsive brief—have addressed many of the topics raised above. The parties need not elaborate on areas they feel are adequately addressed in their briefs. However, the questions above represent the areas of the Court's focus. The parties should be prepared to discuss each of the questions above at tomorrow's hearing. Moreover, the parties are ***ordered*** to respond **in writing** to those questions specifically addressed to them in **bold and underlined**. The parties may address any other inquiries they feel have not been adequately addressed in their briefing. The parties' written responses are due by no later than **10:00 a.m. tomorrow, November 2, 2026**.

IT IS SO ORDERED.

Dated: November 1, 2026

TRINA L. THOMPSON
United States District Judge